# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Focus Products Group International, LLC; Zahner Design Group, Ltd; Hookless Systems of North America, Inc.; SF Home Decor, LLC; Sure Fit Home Decor Holdings Corp.; and Sure Fit Home Products, LLC | ) ) ) ) ) ) | |
| Plaintiffs, | ) | 1:15-CV-10154 |
| v. | ) ) | (PAE/SDA) |
| Kartri Sales Company, Inc., and Marquis Mills, International, Inc. | ) ) | |
| Defendants. | ) ) ) | |

## DEFENDANT KARTRI SALES COMPANY, INC.'S REPLY CLAIM CONSTRUCTION MEMORANDUM

Defendant Kartri Sales Company, Inc., responds as follows to Plaintiffs' Opening Claim Construction Brief.

## TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Table of Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iv

I.         Introduction .   . . . .  . . . . . . .  . . . . . . . . . . .  . . . . 1

II         Background of the Technology and Asserted Patents  . . . . . . 1

                      A.  Shower Curtains  . . . .  . . . . .. . . .  . . . . . .2

            B.  Asserted Patent 6,494,248 . . . .  . . . . . . . . .. . . 2

            C.  Asserted Patent 7,296,609 . . . .  . . . . .. . . . .  . . . 4

            D.  Asserted Patent 8,235, 088 . . . .  . . . . .. . . . .  . 6

            E.  Asserted Patent D 746,078 . . . .  . . . . .. . . . .. 7

III.       Kartri's Proposed Constructions . . . .  . . . . . . . . . .  . . . . . 8

            A.   Summary of the Relevant Law . . . .  . . . .. . . . .  8

            B.   Kartri's Proposed Claim Constructions . . . . . . . . . .10

                      1.  Item . . . .  . . . . . . . . .   . . . . . . . . . . . 10

                      2.  Ring . . . .  . . . . . . . . . . . . . . . . . . . . . 10

                      3.   Inner Circumference . . . .  . . . . . . . . . . . 12

                      4.  Outer Circumference . . . .  . . . . . . . . . . . 12

                      5.  Comprising a Top . . . .  . . . . . . . . . . . . . 13

                      6.  Approximately Horizontal Component . . . . .  13

                      7.  Said Slit Exits Said Ring at the Upper Edge of
                             the Curtain . . . .  . . . . . . . . . . . . . . . . 18

                      8.  Closed Ring  . . . .  . . . . . . . . . . . . . . . . 20

                      9.   Projecting Edge . . . .  . . . . . . . . . . . . . . . . 20

10.  Next to Said Slit . . . .  . . . . . . . . . .  . . . . . . . 22

11.  Extending Towards said Ceiling . . . .  . . . . . . 23

12.  Offset from Said Top  . . . .  . . . . . . . . . .  . . . . 23

13.  Slit Extends Through . . . .  . . . . . . . . . . . . . 24

14.  O'Clock Position . . . .  . . . . . . . . . . . . . . . 25

15.  Approximately 1 O'Clock or 2 O'Clock
      Position or Approximately 10 O'Clock
      Or 11 O'Clock Position . . . .  . . . . . . . . . . . . 25

16.  Ornamental Design . . . .  . . . . . . . . . . . . . . 26

17.  As shown and described . . . .  . . . . . . . . . ..  . . 27

Conclusion . . . .  . . . . . . . . .  . . . . . . . . . .  . . . . . . . . .  . . . . . . . . . . . . . . .  . . . . . . . . 28

## TABLE OF AUTHORITIES

*Festo Corp v Shoketsu, Inzoku KK,* 122 S.Ct 1831; 535 US 722 (2002) . . . . . . . . . . . . . . . . 19

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 1210, (2014) . . . . . . . . . . . . . . . 9, 13, 24

*Warner Jenkinson Co. v. Hilton Davis Chem. Co.,* 117 S.Ct. 1040; 520 US 17 *(1997)* . . . . 19

*Arminak and Assoc., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 314 (Fed. Cir. 2007) . . . 25

*Computer Docking Station Corp. v. Dell, Inc.,* 519 F.3d 1366 (Fed. Cir. 2008) . . . . . . . . . 9

*CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . 17

*Egyptian Goddess Inc. v. Swisa, Inc.*, 543 F3d 665 (Fed. Cir. 2008) . . . . . . . . . . . . . . . . . 25

*Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, (Fed. Cir; 2014)
(cert. denied, 136 S. Ct 59 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Liberty Ammunition, Inc. v. United States*, 835 F.3d 1388 (Fed. Cir. 2016) . . . . . . . . 8, 13, 24

*Markman v. Westview Instruments, Inc.* 52 F.3d 967 (Fed. Cir. 1995) *(en banc)* . . . . . . . . .8, 9

*OddzON Prods. Inc. v. Just Toys, Inc.* 122 F.3d 1396 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . 25

*Omega Eng'g, Inc. V. Raytek Corp.,* 334 F.3d 1314 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . 9

 *Phillips v. A.H Corp.,* 415 F.3d 1303, 1313, 1324 (Fed. Cir. 2005) (en banc) . . . . . 7, *passim*.

*Poly-Am LP v. API Indus., Inc.*, 893 F3d 1311 (Fed. Cir. 2016) . . . . . . . . . . . . . . . . . . 8, 14

*Rhenish PLC v. Marposs Societa' per Azioni* 158 F.3d 1243 (Fed. Cir. 1998) . . . . . . . . . . . 8

*Rheox, Inc. v. Entact, Inc.,* 276 F.3d 1319 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . 9

*Richardson v. Stanley Works, Inc.*, 597 F.3d 1288 (Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . .25

*Standard Oil Co., v. Am. Cyanamid Co.* 774 F.2d 448 (Fed. Cir. 1985) . . . . . . . . . . . . . . . 9

*Vitronics Corp. v. Conceptronic, Inc.* 90 F.3d 1576 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . .8

Table of Exhibits

A.      Kartri Advertising Sheet

B.      U.S. Design Patent 761,639 S

C.      Chinese Design Patent  CN 302766325 S

D.      File History of Pat. 6,494,248 (portions)

E.      File History of Pat.  7,296,609

F.      File History of Pat.  8,235,088

G.      Deposition Testimony of Inventor David Zahner (portions)

H.      File History of ReExamination of '248 patent (portions)

I.      Opposition Motion in prior proceeding,  Arcs & Angles, Inc., et al. v. Carnation Home Fashions, Inc. 09-cv-1467 (NRB), NYSD

J.      Definition of APPROXIMATE

K.      Definition of CIRCUMFERENCE

L.      Definition of HORIZONTAL

M.      Definition of NEXT TO

N.      Definition of PROJECT

## I.      Introduction

Defendant Kartri Sales Company, Inc. (Kartri) submits this brief in support of its claim construction positions for U.S. Patent Nos.6,494,248, Suspended Materials Having External Slits; 7,296,609, Hanging Products; 8,235,088, Hanging Products; and D 746,078, Shower Curtain (collectively "Asserted Patents") copies whereof are Exhibits on Plaintiffs' Opening Markman Brief. Defendant Kartri's proposed constructions are those that stay true to the claim language of the Asserted Patents when read in light of the respective specifications in connection with the relevant Drawing figures and in view of the respective prosecution histories  In addition, Kartri's constructions are also supported by extrinsic evidence including standard dictionary definitions.  Kartri also agrees with the arguments made in Defendant Marquis' claim construction brief.

## II.     Background of the Technology and the Asserted Patents

The Asserted Patents generally relate to hangers for items that can hang from a rod, to wit, shower curtains, and these items include e.g. rings, hooks, or buckles.  Defendant Kartri's accused products are shower curtains that are sold to primarily in the hospitality trade, e.g. hotels. An example of Kartri's accused product is depicted in Exhibit A hereto, which contains a photograph of Defendant Kartri's accused product, and generally follows the design of U.S. Pat. D 761,639 S, a copy whereof appears as Exhibit B hereto, and which belongs to a company that produces the product for Defendants.  Exhibit C is a copy of corresponding Chinese Design Patent No. CN 302766325 S, also illustrating the shower curtain buckle of the accused product.

### A.      Shower Curtains

As explained in the text of Plaintiff's own patents, the inventions of the asserted patents relate to an accessory for attaching and detaching materials [e.g., shower curtains] from a rod

without requiring the removal of the rod or adding additional hardware, such as hooks or the like, to the fabric. The asserted patents are claimed to be an advance over the prior art patent of the same inventor, with reference to his earlier patent, U.S. Pat. No. 5,196,232, allowing the hanging material, such as the shower curtain, to be attached to a mounting rod. The products of the asserted patents involve a series of reinforced openings and "external" slits provided between holes in the curtain and the upper hem of the curtain, thereby allowing the hanging material to be attached over the rod without the need for threading of the holes onto the rod, and without the needs for separate hooks. The claimed invention in the three asserted utility patents is intended to facilitate placing the curtain or other hanging item onto the supporting rod, incorporating an external slit that passes from the inside of the central round opening to an edge, favorably an upper edge of the curtain.

### B.    Asserted U.S. Patent No. 6,494,248

This patent asserts claims that are intended to cover the structure shown in Fig. 20 of the patent, and curtains in which the "ring" is affixed to the upper portion of the shower curtain as a reinforcement around a round opening cut into the curtain. A curved slit 232 shown in Fig. 20 and described at column 8, lines 14 to 34, has a vertical portion 232a which extends up and out the top of the curtain ring and above the top edge of the fabric of the curtain, a second portion 232b identified as an "approximately horizontal portion" that emanates from the lower end of the vertical portion 232a and arcs to the right and downward to meet a "radial portion" 232c that arcs away from the "approximately horizontal portion" to exit the ring into the opening at a position offset from the top of the opening.

The term "approximately horizontal component" appears in the specification without any

boundaries or limits to how much this component can deviate from a truly horizontal orientation and still be within whatever limits there are to be "approximately horizontal." In Plaintiff's Opening Brief (page 11, lines 1 to 3) plaintiff asserts that this term means that the "leftmost portion of [curved] component 232 (which touches [vertical] component 232a) is exactly horizontal." That may be the case, but if so the exactly horizontal component of component 232b is vanishingly small and the curve itself continues to deviate from a true horizontal until it ends at the radial component 232c. Aside from Plaintiffs' bare argument, and from points to be raised by Defendant, there is no intrinsic evidence of what the patentee meant by "approximately horizontal component" 232b, or what the person of ordinary skill would take that term to mean, except for the self-evident point of it being a curved shape that follows a general continuous curved path from the vertical component 232a to the radial component 232c, as shown in Patent Fig. 20. An argument without support is not evidence. There is other evidence in the prosecution history of this patent, which plaintiff calls attention to at page 11, line 14 to page 12, line 2 of Plaintiffs' Markman Brief, in order to overcome a rejection of then claim 61 (original claim 1 of the patent), that the "approximately horizontal component" of the slit provides a benefit in that it assists in sealing the slit at element 232b.

In re-examination, in order to overcome a rejection, the patentee added a limitation that the slit exits the ring at the upper edge of the curtain. However, Fig. 20 shows the slit in the ring continuing up *above* the upper edge of the fabric of the curtain.

### C.     Asserted U.S. Patent No. 7,296,609

The '609 patent is also intended to cover the family of shower curtain rings or similar rings for hanging articles exemplified in Figs. 18, 19, and 20. The '609 patent seems to have

been written to cover a ring and curtain, with a slit extending through the ring to a round

opening, but with the feature of "a projecting edge," the latter being an edge which projects from

the *outer circumference* of the ring and where the projecting edge is provided *next to the slit*.

      After the patent applicant filed the application that became this patent, the Examiner

instituted a restriction requirement, identifying numerous independent and distinct inventions

(Please see Exhibit E, File History of the Application Ser. No. 11/209,334, now U.S. Pat.

7,296,609, in particular 05-23-2006 Request for Restriction/Election).   In response to this, in a

paper dated July 27, 2006 (Exh E, 07-27-2006: Amendment/ Req. for Reconsideration)  the

applicant elected Species IV (the embodiments of Figs. 18, 19, and 20 – not the embodiment of

Fig. 21), and substituted a new set of claims that for the first time introduced the limitation

"wherein said ring comprises a projecting edge, and wherein said projecting edge is provided

next to said slit."  (Exh E, 07-27-2006: Applicant Arguments/Remarks, page 5)  In the

Applicant's accompanying remarks, the Applicant stated "The enclosed new claims are directed

to the projecting edge embodiment of the invention.  In accordance with the invention, instead of

using a conventional ring, a ring is provided that includes a projecting edge, i.e., a ring edge

which extends in a direction away from the hanging product and is provided next to (adjacent to)

the slit."  The applicant added "Examples of such edges are provided in Figs. 18 - 20.  The edges

of elements 206, 216, or 226 each exemplify various projecting edges of the invention . . ."

(Exh. E, *id* )  In an official action on the merits (Exh. E, 10/24/2016: Non-final Rejection) Claims

23 and 31 -37 were rejected as indefinite under 35 U.S.C. 112, and claims 22 to 37 were rejected

under obviousness-type double patenting and as patentably indistinct over earlier Zahner Patents

6,494,248 and 6,935,402.  Claims 22 - 37 were also rejected under 35 U.S.C. 102(b) and 103(a)

over a patent to Brown, Pat. No. 635,295.

Then the applicant amended the independent claims,  Claim 22 and Claim 30 (Exh. E -
04/24/2007: Amendment/Req. Reconsideration), to add that the ring has an <u>outer circumference</u>
and that the projecting edge <u>projects from the outer circumference of said ring</u>.  The dependent
claims were amended to overcome the indefiniteness rejection.  The Applicant also submitted
terminal disclaimers to overcome the rejection based on obviousness-type double patenting as to
the earlier '248 and '402 patents.  Applicant argued (Exh. E: 04-24-2007: Applicant
Arguments/Remarks) that the limitations added to the claim (i.e.,  the edge being an edge that
projects from the outer circumference of the ring and which is next to the slit) would distinguish
the claimed invention from the Brown patent which the Examiner had cited. The Examiner then
allowed the amended claims in view of the Applicant's April 27, 2007 submission.

By amending the claims to avoid prior art, the Applicant limited the invention to curtain
rings that have an "outer circumference" as that term would be understood based on its inherent
meaning when considered with the written description (specification and drawings) in connection
with Figs. 18, 19 and 20 (the term "outer circumference" is not used in connection with Fig. 21).
The term "outer circumference" is mentioned only once in the relevant part of the specification
of the '609 patent – at column 8, lines 3 - 4.  The text at col. 8, lines 3-4 states "Extensions 206,
216, 226 are projections off the ring (preferably off the ring's outer circumference) which extend
beyond the ring away from the hanging product (e.g., towards the ceiling). . . ."   The term
"circumference" in the patent is used only to identify the edge of a disk or circle, consistent with
the dictionary definition of a circumference being the perimeter of a circle or curved shape.
"Circumference" as used by the patent owner does not mean the perimeter of a different shape.
The description of the Fig. 21, D-shaped embodiment, i.e., the flat top embodiment, does not use
the term "outer circumference" but only "outer diameter" to identify the *width* of that shower

curtain ring. Also, there is nothing projecting out beyond the flat upper edge in Fig. 21 or anywhere else on the perimeter of the ring 230 of Fig. 21.

### D.   Asserted U.S. Patent No. 8,235,088

This patent asserts claims intended to cover curtain rings such as those of the Fig. 31(b) embodiment. This patent requires a projection *from the ring* at a location such that the projection can be moved to assist in widening the opening at the slit.  During patent prosecution the applicant amended the claims to add that the ring has a flat upper edge with a slit exiting the inner circumference at a location "offset from the 12 o'clock position."  The applicant also deleted the "projection" or "projecting edge" limitation from the claims (Please see Exhibit F, File History of the Application Ser. No. 11/978,532, now U.S. Pat. 8,235,088, in particular 03-16-2009 Amendment/Req. Reconsideration and 03-16-2009: Applicant Arguments/Remarks )

Then (Exh F, 03-20-10: Final Rejection) the Examiner objected that the flat upper edge limitation (not in Figs. 18, 19, 20) was in conflict with the "projection" requirement as for the claims that were then being asserted. In response (Exh F 09-07-2010: Response After Final Action and 09-07-2010: Applicant Arguments/Remarks) the applicant added that the slit was an "external" slit, and in a further amendment (Exh F 12-09-2011: Claims) the applicant again amended  claims to add back in the "projecting edge" limitation with the further limitation that the projecting edge projects beyond the "outer circumference" of the ring.

Eventually, the '088 patent was granted with the claims it now has.

Defendants filed a request for *inter partes patent review* (IPR) of the '088 patent with the U.S. Patent and Trademark Office but review of the challenged claims of the patent was denied.

### E.      Asserted U.S. Design Patent No. D 746,078

The formalistic claim for the design patent is to be interpreted as covering what is shown in the Drawing Figures, in solid line or between solid lines, with "disclaimed" portions (not part of the claimed design) being shown in broken line.        Plaintiff's claimed design generally shows a D-shaped member with a central opening, but D-shaped grommets, reinforcements and rings are commonplace in the prior art, and so it is the details of the D-shaped structure that are required elements or limitations for Plaintiff's claimed design, and which give the article what the ordinary designer or ordinary purchaser would see as its uniqueness.

Plaintiffs' claimed design includes at least two features dictated entirely by function, namely, the round central hole or opening which is necessary to accommodate the shower curtain rod, and the long flat upper edge. The flat upper edge of the claimed design is dictated by the support function, and is not itself ornamental, nor is the round opening for the shower curtain rod.  These features have almost no importance in determining what the ornamental appearance of the design consist of.

### III.     Kartri's Proposed Constructions

### A.      Summary of the relevant law

The purpose of claim construction is to determine the scope of the asserted claims from the perspective of a person of ordinary skill in the art at the time of the invention.  *See Phillips v. A.H Corp.,* 415 F.3d 1303, 1313, 1324 (Fed. Cir. 2005) (en banc).

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim

7

> language and most naturally aligns with the patent's
> description of the invention will be, in the end, the correct
> construction.

*Id.* At 1316 (quoting *Rhenish PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1250 (Fed.

Cir. 1998)) (internal citations omitted).


Well-settled cannons of claim construction guide the Court in determining the meaning of

words and phrases in the asserted claims.  Normally, claim terms "are generally given their

ordinary and customary meaning." *Phillips,* 415 F.3d at 1312 (quoting *Vitronics Corp. v.

Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  The claims themselves often "provide

substantial guidance as to the meaning of particular claim terms." *Phillips, Id.* at 1314.  The

context in which a term is used in the asserted claim is important. *Id.* (Phillips' claims referred

to "steel baffles", so a court may draw an inference, that in general, baffles can be made of non-

steel materials).  But the claims should not be considered in the abstract; claims "must be read in

view of the specification, of which they are a part." *Markman v. Westview Instruments, Inc.,* 52

F.3d 967, 979 (Fed. Cir. 1995) (*en banc*).  The patent specification is the "single best guide" for

construing the claims. *Phillips,* 415 F.3d at 1315; *Vitronics,* 90 F.3d at 1582.  The specification

may reveal, for example, whether the patentee acted as his own  lexicographer by giving a claim

term a special definition or whether the patentee intentionally disclaimed claim scope. *Phillips,*

415 F.3d at 1316.  When a patentee acts as its own lexicographer, the special definitions are

controlling and govern the claim construction analysis. *Id.* at 1316.  The court departs from

"ordinary meaning" when the patentee acts as his own lexicographer or disavows the full scope

of a claim term in the specification. *Poly-Am LP v. API Indus., Inc.*, 893 F3d 1311,1136 (Fed.

Cir. 2016).  Further, a patentee may disavow the scope of the claim by conduct during

8

prosecution. *Omega Eng'g, Inc. V. Raytek Corp.,* 334 F.3d 1314, 1323-24 (Fed. Cir. 2003) (citing *Standard Oil Co., v. Am. Cyanamid Co.,* 774 F.2d 448, 452 (Fed. Cir. 1985)). Also an amendment and/or argument made during patent prosecution to avoid art will serve as a disclaimer limiting the interpretation of the patentee's claims during claim construction. *Rheox, Inc. v. Entact, Inc.,* 276 F.3d 1319, 1327 (Fed. Cir. 2002). Similarly, statements and arguments made during the prosecution process that are "unequivocal disavow[als]" also serve as disclaimers that limit the scope of a patent's claims. *Computer Docking Station Corp. v. Dell, Inc.,* 519 F.3d 1366, 1374 (Fed. Cir. 2008). In addition, resort to extrinsic evidence in the form of dictionaries, treatises, and expert and inventor testimony may be useful to interpret claim terms that resist definition by the intrinsic evidence. Representations made by the patent owner in prior litigation involving the same patent can be evidence of what the inventor believe the invention encompasses or does not encompass. *Markman,* 52 F.3d at 980.

When a claim term is a term of degree, or fails to put an upper or lower bound on the meaning of an inexact term, either in the claim or in the specification, then the term may render the claim indefinite and invalid. The test for indefiniteness is that the claim must inform, with reasonable clarity, to those skilled in the art, about the scope of the invention. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 1210, 2125 (2014). See also *Liberty Ammunition, Inc. v. United States*, 835 F.3d 1388 (Fed. Cir. 2016), "claims having terms of degree will fail for indefiniteness unless they provide objective boundaries for those of skill in the art when read in light of the specification and prosecution history" (citing *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370-71 (Fed. Cir; 2014) (cert. denied, 136 S. Ct 59 (2015)). One such candidate for a claim term with an open-ended range is "approximately horizontal" where no limits are set in the claims, specification, or drawing for how far a slit component can deviate from a true

horizontal orientation and still find itself within the patent's legitimate coverage.

### B.  Kartri's Proposed Claim Constructions

1.  "Item"

This term can be taken to mean "curtain" and in particular a "shower curtain."  Defendant

Kartri's accused product is a shower curtain.  In re-examination of the '248 patent, Plaintiffs

have limited "item" to curtains.

2.  "Ring"

This term as it is used in the asserted patents means an annulus of generally round shape.

For purposes of the Claims of the Asserted Patents, all of the embodiments that support

the claims of the '248, '609, and '088 patents, namely Figs. 18, 19, 20, and 31b, are round rings

with some projections or fingers emanating from the round outer edge (i.e., circumference) of the

rings. A portion of the top of the ring of Fig. 31b is flattened. As for Claim 1 of the '248 patent,

the features of that claim are disclosed only in the Fig. 20 embodiment.  The D-shaped or U-

shaped "ring" or grommet of the Fig 21 embodiment is discussed only in the specification at col.

8, lines 35 and following of the '248 patent (and similarly in the other asserted utility patents),

where the flat upper edge 235 serves to provide support for the upper hem of the curtain over an

extended distance.  The length of the top edge approximately equals the width of the ring, e.g.,

the "outer diameter" of the ring 230.   Notably, Plaintiffs mention this at paragraphs 11 and 12 of

their opening claim construction brief. There is no teaching in any of the three utility patents in

suit of how to apply any projecting fingers or projecting edges at the flat top of the Fig. 21 ring,

where the slit locations are illustrated, or elsewhere on the ring 230.  Thus, it follows that the

patent applicant did not contemplate placing any sort of projecting edge on the ring 230 of Fig. 21, and there is no evidence in the patent that he knew where any sort of projection should be placed if used on that ring, or how a "projecting edge" could project away from its "outer circumference."

All the examples in the specification that support the claims being asserted in this action show the "circumference" being the circular perimeter or outer boundary of the ring, with protruding members extending upward from the outer boundary of the ring, e.g., items 206, 216, 226 in the asserted patents. This is consistent with the dictionary definition of the term "circumference" as "perimeter of a circle" (See Exhibit K)

Moreover, the term "outer" plainly means that the "circumference", if it is the perimeter of the "ring", cannot be within the ring, radially inside of the boundary or margin of the circular shape of the ring, which as aforesaid is disclosed only as a "circumference" or perimeter of circular shape in the patents' supporting embodiments (Figs. 18 – 20 and 31b).  The person of ordinary skill would not see the outer circumference as being somewhere inside an outer boundary of any other shape.

Because the Plaintiff, then patent applicant, elected only Species IV (Figs. 18, 19, and 20), leaving the species of Fig. 21 non-elected, the Examiner did not consider the D-shaped version of the ring when examining the claims for this patent.   All the claims under consideration and examined were directed to the curtain rings with a round outer boundary. (Exh E, 07-27-2006: Amendment/ Req. for Reconsideration).

Moreover the outer boundary of the D-shaped ring of Fig. 21 would be best identified by the person of skill as a "perimeter", not a "circumference" as the latter is specific to overall round shapes. The person of ordinary skill would not see the outer boundary of Fig. 21 as being a

"circumference".

### 3. "Inner Circumference"

The inner circumference is the round edge of the opening for the curtain rod.  This does not seem to be in contention.

### 4. "Outer Circumference"

The outer circumference as the term is used in the asserted patents is the round boundary or outside edge of the generally round ring.  Defendant Kartri has discussed this term at length in connection with "Ring" in numbered section 3 just above. Note that the outer edge of Plaintiffs' Fig. 21 D-shaped reinforcement is not a "circumference." See definition in Exhibit K.

### 5. "Comprising a top"

The top is the upper portion of the inner circumference, i.e., the top of the round opening, where the item or ring rests on the shower curtain bar.  The parties do not appear to be disagreeing on this point, although there is some disagreement about what is meant by "12 O'clock" position in the Plaintiffs' suggested terminology. That position would be the very top center of the ring opening, or perhaps within a degree or two, as discussed later concerning "O-clock position."

### 6. "Approximately Horizontal Component"

This term refers to the curved or wavy component 232b of Fig. 20.

As discussed earlier, terms of degree or range, where there is no bound or limit to the

amount of deviation, e.g., from "horizontal," is permitted, render the claim indefinite and invalid

under *Nautilus* and *Liberty Ammunition*, discussed *supra*.  "Approximately" is a broadening term

that removes any realistic limits about how far the slope of the "approximately horizontal

component" of the slit can deviate from a true horizontal orientation, i.e., parallel to the horizon

or perpendicular to a vertical of plumb line. Thus, if the term "approximately horizontal

component" is to be given any definite meaning, it would have to be a meaning that would be

what is assumed by a person of ordinary skill when reading the claims in view of the

specification and drawings.  The dictionary definition of "Horizontal" is "parallel to, in the plane

of, or operating in a plane parallel to the horizon or to a baseline, level" (See Exhibit L) and the

dictionary definition of "Approximate" is "nearly correct or exact, close in value or amount but

not precise" (See Exhibit J).  Perhaps "approximately horizontal" may mean "nearly, but not

precisely level" or  "approximately horizontal within manufacturing tolerances for the article." In

this case the person of skill would have to guess at what portion of the curved slit 232 of Fig. 20

is meant, where reference number 232b identifies a curved portion of that curved slit as being, or

having, a portion that is approximately horizontal. This leaves the term's meaning open to

conjecture.

     (A) Plaintiff's discussion of the curved slit 232, in Plaintiff's opening brief at the

paragraph bridging pages 10 and 11, points out that the curved slit 232 has a vertical component

232a and the so-called approximately horizontal component 232b, that meet at a 90-degree

corner, and that the left-most portion of the component 232b, where it leaves off from the vertical

component 232a, is said [by Plaintiffs] to be "exactly horizontal".  From there, the slit 232b arcs

downward until it reaches the so-called radial component 232c.  Neither the Drawing Figure 20

nor any portion of the text shows or describes the "approximately horizontal component" as

being "level or tilted at a gradual incline" as Plaintiffs propose.  This notion of Plaintiffs is

nowhere discussed in any of the asserted patents, and Defendants urge that this argument of

Plaintiffs is mere sophistry.

 If the term "approximately horizontal component" , according to Plaintiffs' own

explanation (Plaintiffs' Opening Markman Brief, pages 10-11), is meant to refer to the small,

incremental length of the slit immediately adjacent the corner joining it with the vertical slit

portion 232a, then there might have been some justification for that if it had ever been mentioned

as such in the patent's specification, but it was not.  In any event, the Plaintiffs' explanation of

the left end of the slit 232b being "exactly horizontal" would exclude any slit component that

extends in a continuous straight line that is not horizontal but at a noticeable angle, and continues

to the inside of the round opening of the ring or buckle. The term "approximately horizontal

component" cannot possibly cover a slit component that slopes at a steady angle noticeably

above or below a true horizontal.

 (B) Because Plaintiff is employing the term "approximately horizontal component" to a

slit or line that is plainly identified in the text of the patent as being a "curved slit", Plaintiff

patent owner Zahner is acting as his own lexicographer (*Phillips, supra* at 1316; *Poly-Am LP* ,

*supra*).  The particular arcing curved shape of the slit 232b apparently lacks any clear, accepted

nomenclature in the trade, that is, any  term which is well known by persons skilled in this art.

Mr. Zahner went ahead and created his own term for that specific curvy shape, namely,

"approximately horizontal component", as an attempt to differentiate it from the term

"horizontal" as used in connection with the horizontal slit 12 in Fig. 1 of the asserted patents, or

the horizontal oval design for the ring 70 of Fig. 4B. Patent Owner is entitled to create his own

terminology, but when he does so he is bound by that choice.  The term "approximately

horizontal" cannot mean something entirely different from the only example in the specification, and cannot mean a level or gradually sloping straight slit.

© File wrapper estoppel exists as to the plaintiffs term "approximately horizontal component" as the term was added to the independent claim (now patent claim 1) in order to avoid a prior-art rejection, and Plaintiff Patent Owner's specific argument made to the patent examiner details the benefit that the patent owner said was attributable to the slit having an "approximately horizontal component."  Some important clues to the meaning of this term can come from the Plaintiff Patent Owner's own remarks and positions taken during the examination process that eventuated in the grant of the '248 patent. Here, please consider Exhibit D, portions of the prosecution history of Appln. Ser. No. 09/617,402.

In the initial prosecution of Pat. Appln. 09/617,402 that led to this patent, a restriction requirement (Exh D, 2001-06-08 :Requirement for Election/Restriction ) resulted in applicant electing the species IV, Figs 18 to 20. (Exh D, 2001-08-13: Amendment/Req. Reconsideration) This election was made without traverse.  On November 1, 2001, (Exh. D, 2001-11-01: Non-final Rejection)  the patent examiner issued an official action that rejected the claims that were then being asserted (with the claims not drawn to the Species IV having been withdrawn from consideration).  In that official action, the claims still under consideration were rejected as being anticipated by a prior patent to White or as being anticipated by a prior patent to Radler.  In reply to this rejection, Plaintiff, then applicant, submitted a response filed April 15, 2002 (Exh D, 2002-04-15: Applicant Amendment/ Req. and Applicant Argument/Remarks) , amending the claims to overcome the rejections.  Then-claim 61, now Claim 1 of the '248 patent, was amended to add features "said item comprising an opening for suspending said item from a rod, said item comprising a ring attached to said opening such that said opening is reinforced by said ring" and

"said item comprising an upper edge, said item comprising a slit extending from said upper edge

through said ring to said opening" and "said slit further comprising an approximately horizontal

component when said item is hanging from the rod." (amendatory language indicated in

underline).  In support of the amended Claim 61, Applicant Zahner argued for allowance of that

claim which is now patent claim 1.  At page 6 of the Remarks of that amendment, Applicant

presented an argument about the importance of the portion or component of the slit being

"approximately horizontal" with the part of the slit that enters the inner circumference the top

(what Mr. Zahner refers to elsewhere as the 12 O'Clock position).   The Applicant Mr Zahner

made the argument of how the amended language in the claims would distinguish his invention

over the cited art:

> "The offset position of the slit away from the top of the ring also makes it more
> difficult for the hanging item to be accidentally pulled off the rod, since the stress
> of the pull will be focused on the top portion of the ring where the slit is not
> located.  Furthermore, the slit is provided with an approximately horizontal
> component, that component making it even more difficult for the hanging item to
> be pulled off of the rod, since the weight of the hanging item on the ring will close
> the slit. In Fig. 20, for example, the hanging item on the rod very effectively seals
> the slit at element 232b under the burden of the hanging item's own weight.  This
> strongly reduces the likelihood of accidentally pulling the hanging item off of the
> rod. . . ." Amd., page 6, line 11 to 18.

This does not clarify whether the "approximately horizontal portion" of slit 232b refers to

the entire curve of the slit or only to a small portion that is actually momentarily horizontal

before the slit curves down too much.  In any event, it means something that would have to have

been disclosed in the specification and drawing, and something that achieves what Mr. Zahner

says he wants it to achieve.

In a sworn deposition taken of the inventor, Mr. Zahner taken on August 14, 2017,

(Exhibit G) Mr. Zahner was asked to identify the ring, opening, and slit of Fig. 20 of the '248

patent which he did (pages 50 and following of Exh. G).  Mr. Zahner discussed the purpose of

the "approximately horizontal component" of the slit at transcript pages 51 to 53 and he was

asked about the official action of November 21, 2001, and the response to it.  Mr. Zahner was

asked if he agreed with the statements made in support of the then-amended Claim 61 (pages 56

to 61 of Exhibit G) and Mr. Zahner agreed that the statements made in that argument were

accurate.

Considering these points, the "approximately horizontal component" of the slit has to be

so configured that the weight of the curtain, when hanging from the curtain rod, will pull the slit

closed, rather than open it.  This only occurs in Plaintiff's example of Fig. 20 because of the way

the [curved] slit 232 extends out away from the center part of the ring towards the side of the ring

to a point displaced from the center before the slit enters the round opening. Because Plaintiff

Patent Owner made this specific argument to obtain an allowance of the claim, the term

"approximately horizontal component" would not cover other arrangements where the weight of

the curtain does *not* pull the slit closed when it is hanging on a rod. The problem solved by an

invention is intrinsic evidence and is relevant to claim construction. *CVI/Beta Ventures, Inc. v.*

*Tura LP*, 112 F.3d 1146 (Fed. Cir. 1997)


7.  "Said slit exits said ring at the upper edge of the curtain"

This limitation was added to Claim 1 during the reexamination of the '248 patent in order

to overcome the Final Rejection of Claim 1.  That language was actually proposed by the

Reexamination Examiner, not by the patent owner.  The Patent Owner had proposed amending the

Finally Rejected Claim 1 by inserting language "and wherein said slit simultaneously exits said

ring and said upper edge of said curtain".  (See Exhibit H, 2017-05-08: ReExam Response)   In a

17

subsequent Ex Parte ReExamination Advisory Action (Exh H, 2017-05-18: ReExam Proceeding

Advisory Action) the Examiner refused entry of the proposed amendment, at least because it

introduced new matter, as the subject '248 patent did not describe the slit 232 as exiting the ring

and the upper edge of the curtain "simultaneously."  The Examiner also stated, at page 2 of the

Advisory Action that Figure 21 does not correspond to the invention set forth in claim 1.   The

Examiner in the same communication proposed amendatory language to be added at the end of

Claim 1, namely, "and wherein said slit exits said ring at said upper edge of said curtain."   In a

subsequent amendment, Patent Owner adopted that proposed amendatory language, which

eventuated in granting of the ReExamination Certificate with the now-amended Claim 1, as well

as new dependent claims.

Defendant Kartri urges, based on the clear terms of this amendatory limitation, that the

slit in the curtain fabric has to exit the curtain at the same place where the slit in the curtain ring

exits the top of the curtain ring.   The only way this can occur is if the upper end of the slit in the

ring is in the same location as the upper end of the slit in the curtain, i.e., the top hem of the

curtain.  This limitation does not relate to a shower curtain where the slit in the ring and the slit

in the curtain end at different places.

Defendant Kartri also points out that in the Fig. 20 embodiment (the only embodiment to

support Claim 1 of the '248 patent), the slit in the ring exits the ring at a position somewhat

above the top edge of the curtain. This is clear enough from the drawing, but is also supported by

the inventors own testimony.   See deposition of Zahner (Exhibit G, pages 61 to 65 and its

incorporated deposition exhibit AE). The witness was shown the exhibit in which a line

representing the top edge of the shower curtain was extended across the top part of ring 220 and

across the vertical component 232a of the slit in the ring.  The witness was asked about the top

part of the slit in the ring. The witness testified that the upper end of the vertical slit 232a was slightly above the line (that represents the top edge of the curtain). The witness further testified that the end of the slit where the diverging edges 224a and 224b begin could be higher than that (Exhibit G, page 65).

Also, because Claim 1 was amended in ReExamination by adding the subject limitation, that limitation can only be interpreted literally, and is not subject to the doctrine of equivalents. There are no reasons or evidence presented that the amendment in reexamination does not involve File History Estoppel, and giving due deference to the role of the claims in defining the invention, and in the role of the USPTO in ensuring that the claims only cover patentable subject matter, the amended language added to Claim 1 limits the doctrine of equivalents as to this claim, and forecloses application of the patent claim to shower curtains where the slit does not actually exit the ring at the place where it exits the curtain. *Festo Corp v Shoketsu, Inzoku KK,* 122 S.Ct 1831; 535 US 722 (2002); and *Warner Jenkinson Co. v. Hilton Davis Chem. Co.,* 117 S.Ct. 1040; 520 US 17 *(1997).*

8. "Closed Ring"

This term is defined in the specification of the '248 patent, col 4, lines 7 - 10 and a corresponding example of an "open ring" is also provided at col. 4, lines 19 - 31. A closed ring is one where the slit has the two edges pressed against one another. This term does not appear to be in contention.

9. "Projecting Edge"

A projecting edge must be an edge of a structural member that itself projects out from the

outer boundary of the ring or buckle. The dictionary definition of "project" (as an intransitive verb, which fits this circumstance) is to jut out or protrude. (Exhibit N)  This is also a common-sense observation based upon the specification and drawings, in particular Fig. 31b, and in view of what the person of ordinary skill would understand when reading the claims in view of the specification and drawing figures.  On the other hand, Plaintiffs seem to take an absurd position that the projecting edge as such is simply an "edge" that is distinct and independent of any structure and can somehow exist without regard for any finger, projection or other structure.  Any such proposed projection-less projecting edges are not enabled by the patents' disclosure and moreover they are not even considered in the specifications of the Asserted Patents.

In the patent disclosures of the Asserted Patents, the terms "edges", "fingers" and "projections" are used interchangeably when referenced to the patent drawings, and are all used as nomenclature for the same structure in the patents, to wit, "fingers" 206, 216 and 226.  In these examples in Figs. 18, 19, and 20 the inside edges, e.g. 214a and 214b of Fig. 19 are identified as the relevant edges of these fingers, and these are the edges that extend alongside the slit (in Fig. 19) or from the end of the slit (Figs. 18 and 20).  The outside edges of the fingers 206, 216, 226 are on the wrong side of the finger, spaced away from the corresponding slit.

The embodiment of Fig. 31b of the '609 and '088 patents includes a "left radial edge" 402a and a "right radial edge" 402b, each as part of the ring but with the edge 402b being part of a generally triangular extension 408, i.e., finger or protuberance, that extends out or juts out and away from the arcuate outside curve of the circular ring 400.  In contrast, the left radial edge 402a arcs inward, and away from flat top edge 404 and away from the arcuate outside curve of the ring 400 towards the interior of the ring.

There is nothing in the text or drawings of any of these patents to indicate or suggest to

20

the person of skill in the art where a "projecting edge" or pair of projecting edges could be incorporated into the D-shaped embodiment of Fig. 21, adjacent to the indicated vertical slits 233a or 233b in Fig. 21, with a suitable projecting finger or other structural element that projects off any arcuate portion of the outside perimeter of the D-shaped ring 230.

Moreover, in previous litigation in this District involving Plaintiff Zahner Design Group, and Plaintiff Focus's predecessor Arcs and Angles, namely, Arcs & Angles, Inc., et al. v. Carnation Home Fashions, Inc. 09-cv-1467 (NRB), the plaintiffs filed a Memorandum of Law in Opposition to then-Defendant (Carnation)'s motion for summary judgment. A true copy of that Memorandum of Law is attached as Exhibit I. That document is a public document available for unrestricted viewing in the Court's PACER system. On page 3, the Plaintiffs clearly urged that the Fig. 21 embodiment of the subject '609 patent is not the same as the product that Plaintiff's there accused of infringement, pointing out that the Fig. 21 ring, with the slit formed at the flat top side of the ring, would not have projecting figures or edges, as opposed to the accused product illustrated next to it, with the slot extending diagonally to a corner of the ring. This is clear admission that the patent owner actually limited the term "projecting edge" to curtain rings where their slit does not go up through a flat top edge, stating it would not create projecting edges or fingers at that location. There has to be something that protrudes, i.e., juts out, from what Patent Owner is calling the "outer circumference".

### 10. "Next to Said Slit"

The ordinary dictionary meaning of "next to" is "immediately following" or "adjacent to" (Exhibit M); which is consistent with the embodiments of Figs. 18, 19 and 20 that clearly show the inside edges of the fingers 206, 216, and 226 being either directly alongside the relevant slit

or else extending out from the end of the slit.  The opposite edges, i.e., outer edges of the projections of fingers 206, 216, 226 are spaced *away* from the respective slits, and are not adjacent or alongside the slits.  Plaintiffs attempt to show otherwise with Plaintiff's Exhibit 16 that accompanies Plaintiffs' opening brief.  There, the slit is shown on the *left* side of the finger and the edge that Plaintiffs identify as the "projecting edge" is on the opposite, or *right* side, and away from the slit.  Plaintiff's Exhibit 16 is deliberately misleading.  The evidence regarding "next to" supports Defendant's position, which remains consistent with the patent's own description and drawing figures.

### 11. "Extending Toward Said Ceiling"

This term simply means that the edge that projects away from the curtain ring extends out from the edge of the ring or buckle, and upward in a generally vertical direction.  Presumably, the drawings of the Asserted Patents show the claimed shower curtain rings in the orientation where the ceiling would be towards the top of the page.  Here, all the illustrated embodiments that have fingers or projections have them projecting out away from the ring in a vertical or nearly vertical orientation.  This term would be understood by persons skilled in the relevant art to exclude any shower curtain rings that do not have a projecting member that extends out beyond the outside edge of the ring or buckle, and generally upwards and away from the rest of the shower curtain ring.

### 12. "Offset from Said Top"

The affected claims (claim 5 and claim 13 of Pat. No. 7,296,609) do not specify that the "top" is part of the "inner circumference" but those claims introduce these two terms to identify

two separate features of the ring.  In the specification of the '609 patent, specifically at Column 8 line 12, the Patent Owner has used "top" to mean "top of the product" whereas when top of the opening or cut out is meant, the Patent Owner has specified "top of the inner circumference" of the ring (col. 8, line 54).  The curtain rings to which the claims of the '609 patent are directed are those of round shape in Figs. 18, 19 and 20.   Where a different shape ring is discussed, e.g., Fig. 21, no top is identified. (Col. 9, lines 25 - 53).  In Fig. 21, the "top of the product" is termed "flat upper edge" 235, which extends the entire width of the item. Whenever it is not clear which "top" is intended, the claim becomes indefinite, and in the case of a D-shaped ring or buckle as in Fig. 21, it is entirely unclear what it would mean for a slit to be offset from the top of the product, i.e., flat upper edge 235, which extends the entire width of the product.  If Patent Owner had meant that the slit is offset from the top of the *inner circumference*, Patent Owner should have so specified in the claim but did not.  As it stands, the affected claims are indefinite.

13.  "Slit Extends Through"

This limitation is introduced in dependent claims 17 and 18 of the '609 patent.  These claims include all the limitations of their parent claim (Claim 1) and therefore are directed only to the "projecting edge" curtain rings.  As such Plaintiff's reference to Fig. 30 and its slits 344 and 344a seems inappropriate, as that embodiment is one without any projection, finger or other "projecting edge" and thus is excluded from parent claim 1 of the '609 patent.  The discussion about Figs. 18, 19, 20 and 21, e.g., at column 7, line 65 to column 9, line 53, does not use the phrase "slit extends through".  The only clear examples of rings that comprise a projecting edge, and where the slit appears to extend through the ring, are Figs. 18, 19, and 31b, which have a slit that extends straight through.

14. "O'Clock Position"

This term is apparently intended to employ clock's hour-hand positions for particular angular relationship of the place where the slit enters the round opening of the ring with the orientation of the ring on the curtain.

The hour positions on a clock are thirty-degrees apart, with One O'Clock and Eleven O'Clock being thirty degrees from a vertical plumb line passing through the spindle of the clock hands, and Two O'Clock and Ten O'Clock being angled sixty degrees relative to the vertical plumb line.

15. "Approximately the 1 O'Clock or 2 O'Clock positions" and "Approximately the 10 O'Clock or 11 O'Clock positions"

The term or word "approximately" in the patent owner's chosen claim term subjects the claim to being indefinite and invalid under the Supreme Court's *Nautilus* decision and the Federal Circuit's *Liberty Ammunition* decision, as discussed earlier. The word "approximately" without any indicated limits or boundaries in the written description fails to place a limit or bound on how far any particular angular position may deviate from 30 degrees or 60 degrees. Plaintiff's brief on this point more or less admits that the angular position can be "anywhere in between" 30 and 60 degrees (although this is never spelled out in the written description). This "limitation" fails to limit the claims and does not inform nor provide notice to the person of ordinary skill of what actual "clock face" or "O-Clock" position of the slit would constitute an infringement and what would not.

16. "Ornamental Design"

An ornamental design is the arrangement of the non-functional elements on an article of manufacture, in this case a shower curtain ring or buckle.

An analysis of what the actual claimed design is, and how it would be understood by an ordinary observer, can be understood by referring to the leading authorities on design patents, namely, *Egyptian Goddess Inc. v. Swisa, Inc.*, 543 F3d 665 (Fed. Cir. 2008); *OddzON Prods. Inc. v. Just Toys, Inc.* 122 F.3d 1396 (Fed. Cir. 1997), *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288 (Fed. Cir. 2010), and *Arminak and Assoc., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 314 (Fed. Cir. 2007).

For infringement purposes, the claimed design must be viewed through the eyes of the "ordinary observer," which in the case of a product sold in the hospitality market to hotels and institutions, would be the person who is the business of buying, in quantity and on a daily basis, linens, towels, and shower curtains from a large number of hospitality-trade suppliers. Such a person would pay careful attention to the non-functional ornamental aspects of shower curtain buckles and rings, and would not be deceived into thinking that the patented design and the design of the defendant's shower curtain buckle were the same design. *Arminak, supra*.

*Egyptian Goddess* retains the ordinary observer test but requires the design to be evaluated as a whole, rather than require the court to look for some point of novelty. The ordinary observer would be presumed to be familiar with the relevant prior art, but comparison with the prior art is not necessary where the patented and accused designs are plainly dissimilar.

*OddzON* and *Stanley Works* make it clear that the design patent analysis should be limited to the ornamental features of the claimed design and should not extend to features that are dictated by function.

17  "As shown and described"

The formalistic claim for the design patent is to be interpreted as covering what is shown in the Drawing Figures, in solid line or between solid lines, with "disclaimed" portions (not part of the claimed design) being shown in broken line.

Plaintiff's design is for an article of manufacture in the form of a D-shaped member e.g. grommet with a central opening, but D-shaped grommets, reinforcements and rings are commonplace in the prior art, so it is the details of the D-shaped structure that are required elements or limitations for Plaintiffs claimed design, and which give the article what the ordinary designer or ordinary purchaser would see as its uniqueness.

In the present case, the claimed design includes at least two features dictated entirely by function, namely, the round central hole or opening which is necessary to accommodate the shower curtain rod, and the long flat upper edge.  These have almost no importance in determining what the ornamental portions of the design consist of.        The flat upper edge of the claimed design is dictated by the support function, and is not itself ornamental, nor is the round opening for the shower curtain rod, that is dictated by the need to place the ring or buckle on the shower curtain rod.

The ornamental aspects of the '078 patent claimed design would include the sharp corners at the top left and right, the sharp edges or dihedrals where the flat or planar front surface meets the side edges and the cylindrical inner side edge of the opening, the lack of any contour on the front face, and the lack of any tapering or rounding at the side, top or inner edges. This design requires sharp 90° corners where the flat top edge meets the vertical side edges; a uniform thickness from top to bottom and from left edge to right edge; sharp 90° edges where the flat

front surface meets the U-shaped side and bottom, and where the flat front side meets the cylindrical wall of the central opening.  The top edge of the curtain itself is also part of the claimed design, shown in solid line in Figs. 2 and 6 of the design patent.  The top hem of the curtain has a particular shape that is partly straight line and partly curved, where it extends from one curtain ring to the next.  The design patent also shows, as part of the claimed design, a straight upper hem to the curtain, without a sewn seam near it.   All these parts of the design are shown in solid line or defined between solid lines, and are necessary elements of the claimed design. All of these features would be considered by the ordinary purchaser of these products.

CONCLUSION

In view of the foregoing arguments and evidence presented, Defendant Kartri urges this Honorable Court to adopt Defendant Kartri's interpretations and constructions of the above-listed claim terms for the patents in suit.

Respectfully,

/s/BMolldrem
Bernhard P. Molldrem, Jr.
BM1960
Counsel for Defendant

Law Office of Bernhard Molldrem
224 Harrison Street
Syracuse NY 13202
(315) 422-4323

## CERTIFICATE OF SERVICE

The undersigned duly certifies that a copy of the annexed **DEFENDANT KARTRI'S REPLY CLAIM CONSTRUCTION MEMORANDUM,  together with Exhibits and Attorney Declaration,**  has been served electronically by ECF, upon Counsel for Plaintiffs, at the address(es) indicated below:

Morris E. Cohen and Limor Wigder, Goldberg Cohen LLP, 1350 Avenue of the Americas, 3d Floor,  New York NY 10019, email: MCohen@GoldbergCohen.com; LWigder@GoldbergCohen.com  Service is made by also by ECF to Counsel for Defendant Marquis Mills, International, Inc., Donald J. Cox, Esq., Law Offices of Donald Cox, 300 Carnegie Center, Suite 102, Princeton NJ 08540, coxd@iplawonline.com

Dated this January 22, 2018                                    ____/s/BMolldrem___

                                                              Bernhard P. Molldrem, Jr.

28