UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| FOCUS PRODUCTS GROUP INTERNATIONAL, LLC, ZAHNER DESIGN GROUP LTD., HOOKLESS SYSTEMS OF NORTH AMERICA, INC., SURE FIT HOME PRODUCTS, LLC, SURE FITE HOME DÉCOR HOLDINGS CORP., and SF HOME DÉCOR, LLC, | 15 Civ. 10154 (PAE) |
| | |
| Plaintiffs, | OPINION & ORDER |
| -v- | |
| KARTRI SALES COMPANY, INC., and MARQUIS MILLS, INTERNATIONAL, INC., | |
| Defendants. | |

PAUL A. ENGELMAYER, District Judge:

Plaintiffs Focus Products Group International, LLC ("Focus"), Zahner Design Group,

Ltd. ("ZDG"), Hookless Systems of North America, Inc. ("HSNA"), SF Home Décor, LLC, Sure

Fit Home Décor Holdings Corp., and Sure Fit Home Products, LLC (together, "Focus" or

"plaintiffs") bring this action against defendants Kartri Sales Company, Inc. ("Kartri") and

Marquis Mills, International, Inc. ("Marquis," and together with Kartri, "defendants") alleging:

infringement of three utility patents and a related design patent, in violation of 35 U.S.C. § 271;

infringement of a registered and an unregistered trademark and infringement of unregistered

trade dress, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and unfair

competition, in violation of New York common law.  Defendants together bring 13

counterclaims, many but not all of which correspond to Focus's affirmative claims.  The parties

have cross-moved for summary judgment on a subset of these claims.  For the following reasons,

the Court grants in part and denies in part each side's motions.

## I.      Background

### A.      Factual Background[1]

---

[1] The Court draws its account of the underlying facts from the parties' respective, albeit at points confusingly organized, submissions on the cross-motions for summary judgment, including: the first declaration of Morris E. Cohen, Esq., (oddly included as Exhibit 44) and attached exhibits in support of Focus's motion, Dkt. 243 ("Pl. Ex."); the first declaration of Donald J. Cox, Esq., (unhelpfully hidden at the end of defendants' 56.1 statement, Dkt. 255-1, a separate ECF filing) and the exhibits attached to defendants' memorandum of law in support of their cross-motion, Dkt. 254 ("Def. Ex."); the second declaration of Morris E. Cohen, Esq., (unhelpfully included as Exhibit 25) and attached exhibits, in support of Focus's opposition to defendants' cross motion, Dkt. 273 ("Pl. Opp'n Ex."); and the second declaration of Donald J. Cox, Esq. (included as an unnumbered exhibit *after* the exhibits it attaches) and attached exhibits in support of defendants' reply, Dkt. 288 ("Def. Reply Ex.").  For background only, the Court refers to the Fourth Amended Complaint, Dkt. 148 ("FAC"), and the counterclaims of defendants Kartri, Dkt. 150 ("Kartri Answer"), and Marquis, Dkt. 151 ("Marquis Answer").

Both parties also submitted Local Rule 56.1 statements: Dkt. 244 ("Pl. 56.1"); Dkt. 255 ("Def. 56.1 and Response"); Dkt. 272 ("Pl. 56.1 Response").  Citations to a party's 56.1 statement incorporate the evidentiary materials cited therein.  When facts stated in a party's 56.1 statement are supported by testimonial, video, or documentary evidence and are not denied by the other party, or are denied by a party without citation to conflicting admissible evidence, the Court finds such facts to be true.  *See* S.D.N.Y. Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in statement required to be served by the opposing party."); *id.* Rule 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

Notwithstanding their submission of a 56.1 statement, plaintiffs largely cite directly to the record.  Consequently, the Court does as well.  As for defendants, as plaintiffs correctly note, *see* Dkt. 269, their Rule 56.1 statement and response persistently fails to conform to the local rules and regularly lacks citations to the record.  *See* Local Civil Rule 56.1.  Factual propositions declared by the defense for which defense counsel has not submitted admissible evidentiary support have not been credited by the Court.  The defense's 56.1 statement is a striking replica of defendants' memoranda of law, suggesting a lack of appreciation of the purpose of such a statement.  This, along with the 56.1 statement's sometimes maddeningly incomprehensible formatting, makes it particularly unhelpful to the Court.  *See House v. Wackenhut Servs., Inc.*, No. 10 Civ. 9476 (CM), 2012 WL 4017334, at *2 (S.D.N.Y. Aug. 20, 2012) ("[C]ounsel has broken just about every relevant rule (individual, local, and common sense) concerning how facts should be presented in moving papers."); *cf. Albrechtsen v. Bd. of Regents of Univ. of Wis. Sys.*, 309 F.3d 433, 435 (7th Cir. 2002) ("Instead of summarizing the record so that we could learn what inferences in [appellee]'s favor the evidence fairly supports, [its] 'statement of facts'

### 1.    The Parties

Plaintiff ZDG owns, as relevant here, one design patent and three utility patents relating to shower curtains with integrated shower rings.  ZDG granted an exclusive license for these patents to its affiliate, plaintiff HSNA.  HSNA, in turn, granted an exclusive license for these patents to plaintiff Focus.[2]

Defendant Marquis makes, imports, and sells furniture and other home accessories, including shower curtains, in the United States.  Defendant Kartri distributes furniture and other home accessories, including shower curtains, in the United States.  Marquis supplies Kartri with the allegedly infringing shower curtains that are at issue in this lawsuit.

Non-party Carnation Home Fashions, Inc. ("Carnation"), is a sub-licensee of Focus.

### 2.    Plaintiffs' Intellectual Property

ZDG develops and commercializes designs and inventions for, *inter alia*, shower curtains.  It owns the four patents at issue in this lawsuit: (1) Design Patent No. D746,078, entitled "Shower Curtain," ("'078 patent" or the "Design Patent"), FAC ¶ 23; *id.*, Ex. 1; (2) Utility Patent No. 6494,248, entitled "Suspended Materials Having External Slits," ("'248 patent"), Pl. 56.1 ¶¶ 6–7; (3) Utility Patent No. 7296,609, entitled "Hanging Products," ("'609

---

is a tendentious recap of the defense case.  No opportunity to disparage [its opponent's] position is missed, and facts that might support [that] position do not see the light of day."); *id.* at 436 ("Courts are entitled to assistance from counsel, and an invitation to search [the appellate record] without guidance is no more useful than a litigant's request to a district court at the summary judgment stage to paw through the assembled discovery material.  Judges are not like pigs, hunting for truffles buried in the record." (internal quotation marks omitted)).

[2] Focus subsequently underwent a name change to Sure Fit Home Décor, LLC, also a plaintiff in this action.  Thereafter, Sure Fit Home Décor, LLC (formerly known as Focus) sold all of the intellectual property that is at issue in this case to plaintiff SF Home Décor, LLC.  Plaintiff Sure Fit Home Décor Holdings Corp. is the parent company of plaintiff SF Home Décor, LLC, which, in turn, is the parent company of plaintiff Sure Fit Home Products, LLC.

patent"), FAC ¶ 32; Pl. Ex. 9; and (4) Utility Patent No. 8235,088, entitled "Hanging Products," ("'088 patent," and together with the '248 patent and the '609 patent, the "utility patents"), FAC ¶ 33; Pl. Ex. 10.  ZDG, through its affiliate HSNA, has exclusively licensed each of these patents to Focus.  *See* Pl. Ex. 31; Pl. Ex. 42.  Focus sells shower curtains incorporating the patented inventions in the hospitality industry throughout the United States.  FAC ¶¶ 114, 120.

Plaintiffs have trademark rights in the registered mark HOOKLESS®.  Pl. Exs. 33–36. Plaintiffs also claim to have common law trademark rights in the unregistered "EZ ON" mark, which they allege has been used on shower curtains sold throughout the United States, including through their sub-licensee Carnation.  FAC ¶ 82.

Finally, plaintiffs claim to have trade dress rights in the visual appearance of shower curtains sold under their HOOKLESS® brand.  *Id.* ¶ 104.  As described by plaintiffs, these shower curtains lack hooks protruding above the upper edge of the curtain.  *Id.*  Instead, they have a row of rings along the upper portion of the curtain.  *Id.*  These are coplanar with the curtain's material, fixed in place, and include a slit or gap, creating, as alleged, an "organized and symmetrical repeating visual pattern along the top width of the shower curtain."  *Id.*  The effect of this combination and arrangement of design elements, plaintiffs allege, is to give the "visual appearance of an essentially 'neat' and 'orderly'" shower curtain.  *Id.*

Plaintiffs claim that they have extensively marketed, promoted, and sold their shower curtains, including their associated trademarks and trade dress, throughout the United States, and that their shower curtain design has become the "leading shower curtain in the hospitality industry."  *Id.* ¶¶ 113–20.

### 3.      The Dispute

Plaintiffs claim that defendants have willfully infringed, and continue to willfully infringe, plaintiffs' patents by manufacturing, selling, using, and/or importing shower curtains

4

embodying the design of the '078 patent and the inventions of the '248, '609, and '088 patents. *Id.* ¶¶ 157–65.  They claim that defendants have also infringed (1) plaintiffs' HOOKLESS® trademark; (2) plaintiffs' unregistered EZ ON trademark, by using the mark "EZY HANG" on the accused shower curtains; and (3) plaintiffs' trade dress, by copying the visual appearance of the shower curtains sold under plaintiffs' HOOKLESS® brand.  *Id.* ¶¶ 166–74.  Plaintiffs claim that in making and selling the accused products, defendants have acted in bad faith, deliberately seeking to "trade off of the goodwill, secondary meaning, and success" that plaintiffs' trademark and trade dress have accrued in the marketplace.  *Id.* ¶ 131.  Finally, plaintiffs claim that defendants' use of the EZY HANG mark and imitation of plaintiffs' trade dress is likely to cause confusion and to mislead consumers to believe that their goods originate from, are sponsored by, or are affiliated with plaintiffs.  *Id.* ¶ 132.

Defendants deny these allegations.  They contend that their products do not infringe on plaintiffs' patents, trademarks, or trade dress or, in the alternative, that such patents, trademarks, and trade dress are invalid for a variety of reasons.  *See* Kartri Answer; Marquis Answer.  Ten of defendants' counterclaims dispute plaintiffs' claims.  Marquis Answer pp. 22–33, 36–40.  Their remaining two counterclaims allege tortious interference, monopolization, and patent misuse by plaintiffs.  *Id.* pp. 33–36; Kartri Answer pp. 18–21.

### 4.     The Cross-Motions for Summary Judgment

The parties have brought cross-motions for summary judgment on a subset of the claims in this litigation.  Focus has moved for summary judgment on these claims: (1) that defendants have infringed the '248, '609, and '088 utility patents as a matter of law; (2) that defendants have

infringed plaintiffs' trade dress; and (3) certain damages theories.[3]  Focus also opposes all of defendants' counterclaims, either cross-moving for summary judgment or contending that genuine disputes of material fact preclude their resolution at this time.

Defendants purport to oppose each claim for which Focus seeks summary judgment, although, as discussed below, the Court finds that defendants have abandoned certain counterclaims by failing to defend them in their briefing.

### B.      Procedural History[4]

#### 1.      The Initial Phase of Litigation

On June 30, 2015, Focus filed a complaint against Kartri in a related action, No. 15 Civ. 5108, bringing claims for infringement of the three utility patents, for trademark infringement, and for common law unfair competition.  No. 15 Civ. 5108, Dkt. 1.  On December 30, 2015, Focus filed the original complaint in this action against Kartri.  No. 15 Civ. 10154, Dkt. 1.  Focus brought claims for design patent infringement, trademark and trade dress infringement, and common law unfair competition.  On February 4, 2016, Kartri filed a third-party complaint against Marquis.  Dkt. 11.

On February 9, 2016, Kartri moved to dismiss the complaint, Dkt. 15, and the Court granted Focus leave to amend, Dkt. 16.  On March 1, 2016, Focus filed the First Amended Complaint, which amended its claims against Kartri and added Marquis as a defendant.  Dkt. 20. The amended complaint brought claims against Marquis for utility patent infringement that mirrored Focus's claims against Kartri in the related action.  On April 11, 2016, Kartri dismissed

---

[3] Focus does not, however, seek summary judgment on its claims of design patent infringement, infringement of the HOOKLESS® trademark, infringement of the EZ ON trademark, its New York unfair competition claim, or other theories of damages.

[4] Unless otherwise specified, all references to the docket refer to the lead case in this litigation, No. 15 Civ. 10154.

its third-party complaint against Marquis.  Dkt. 32.  That day, Marquis moved to dismiss the amended complaint, Dkt. 35, and the Court granted Focus leave to amend its complaint as to Marquis, Dkt. 37.  On July 14, 2016, the Court denied the motions to dismiss in a bench decision.  Dkt. 63; Dkt. 71 ("MTD Tr.").[5]  On July 25, 2016, the Court formally consolidated the two cases, Dkt. 67, and approved a case management plan, Dkt. 65.  On September 29, 2017, following the close of fact discovery, Focus submitted its Fourth Amended Complaint, Dkt. 148 (FAC), which is the operative complaint in this litigation.  On October 13, 2017, Marquis and Kartri submitted their respective answers to the FAC.  Kartri Answer; Marquis Answer.[6]

On October 12, 2017, Kartri filed a new motion to dismiss on the basis of improper venue.  Dkt. 149. On November 22, 2017, the Court issued an order denying the motion, Dkt. 164, and on December 21, 2017, explained its reasons in a bench opinion, Dkt. 171 (transcript of bench opinion).

## 2.    The *Markman* Hearing and Ruling[7]

On July 7, 2017, the parties filed their original joint claim terms chart.  Dkt. 124.  On November 22, 2017, the parties filed an amended joint claim terms chart.  Dkt. 162.  On December 22, 2017, Focus filed its opening *Markman* brief.  Dkt. 169.  On January 22, 2018,

---

[5] Also during this period, on March 24, 2016, Kartri moved to dismiss the amended complaint and/or to strike certain allegations in it.  Dkt. 27.  On May 5, 2016, plaintiffs filed an Amended Complaint as to Marquis.  Dkt. 47.  On May 26, 2016, Marquis moved to dismiss that complaint. Dkt. 55.

[6] Also during this period, on July 26, 2016, Focus filed its Third Amended Complaint.  Dkt. 68. On July 28, 2016, Kartri and Marquis filed their respective answers and counterclaims against Focus.  Dkts. 69, 70.  On August 17, 2016, Focus filed its answers to the counterclaims. Dkts. 75, 76.

[7] The Supreme Court, in *Markman v. Westview Instruments, Inc.*, held "that the construction of a patent, including terms of art within its claim, is exclusively within the province of the court." 517 U.S. 370, 372 (1996).

Kartri and Marquis each filed responsive *Markman* briefs.  Dkts. 173, 174.  On February 5, 2018, Focus filed two reply briefs.  Dkts. 177, 179.  On February 9, 2018, Marquis filed a letter motion seeking leave to file an attached sur-reply.  Dkt. 181.  On February 14, 2018, Focus filed a letter consenting to Marquis' application on the condition that the Court also consider Focus's responsive letter brief.  Dkt. 182.

On July 26, 2018, the Court held a *Markman* hearing.  See Dkt. 193 (transcript of hearing).  On August 9, 2018, the Court issued its *Markman* ruling, in which it construed 16 disputed claim terms relevant to the utility patents.  Dkt. 198 ("*Markman* Op.").  The Court's construction of those terms governs its findings as to the utility patents in this decision.

### 3.     The Instant Summary Judgment Litigation

On March 5, 2019, the Court held a pre-motion conference, Dkt. 241 ("Pre-motion Tr."), and set a briefing schedule for the cross-motions for summary judgment, Dkt. 230.  On March 26, 2019, Focus filed a memorandum of law in support of its motion ("Pl. Mem."), Dkt. 243; the first Cohen Declaration and attached exhibits ("Pl. Ex."), *id.*; and a Rule 56.1 statement, Pl. 56.1.  On April 17, 2019, defendants filed a memorandum of law in support of their cross-motion for summary judgment and in opposition to Focus's motion ("Def. Mem."), Dkt. 253; the first Cox Declaration with accompanying exhibits ("Def. Ex."), *id.*; and a counter 56.1 statement, Def. 56.1 and Response.  On May 7, 2019, Focus filed its combined opposition to defendants' cross-motion for summary judgment and reply in support of its own motion with an accompanying memorandum of law ("Pl. Opp'n Mem."), Dkt. 273; the second Cohen Declaration, with attached exhibits ("Pl. Opp'n Ex."), *id.*; and its response to defendants' 56.1 statement, Pl. 56.1 Response.  On May 21, 2019, defendants filed a reply memorandum of law in support of their cross-motion for summary judgment ("Def Reply Mem."), Dkt. 288; and the second Cox Declaration, with attached exhibits ("Def. Reply Ex."), *id.*  Because defendants have

submitted joint briefing on summary judgment, the Court treats their claims collectively except where otherwise specified.

During summary judgment briefing, Focus moved to strike defendants' 56.1 statement on the basis of widespread asserted deficiencies, including defendants' failure to support factual propositions with record evidence.  Dkt. 269.  Defendants opposed this motion.  Dkt. 270.  The Court denied the motion to strike but notified the parties that "the Court will be mindful of plaintiffs' claim that deficiencies in defendants' Rule 56.1 Statements require, *inter alia*, that certain of defendants' factual assertions be discounted or disregarded altogether."  Dkt. 279.  The Court has followed this approach in resolving the parties' cross-motions.  *See also supra* note 1.

Finally, the Court, prompted by Focus's motion, solicited separate briefing on whether it should preclude defendants from relying on revenue and cost data, and expert materials based on the same, that were allegedly not produced to Focus until after the close of fact discovery.  *See* Dkt. 230 (briefing schedule); Pre-motion Tr.  The parties submitted briefs in support of and in opposition to Focus's motion to preclude in parallel with their summary judgment briefs.  *See* Dkt. 246 (Focus's motion to preclude); Dkt. 254 (defendants' opposition); Dkts. 274 & 275 (Focus's reply).  The Court discusses (but does not resolve) that motion in its discussion regarding damages, *infra*.

## II.    Legal Standards Governing Motions for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of demonstrating the absence of a question of material fact.  In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party.  *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

## III. Discussion

The Court first addresses the claims and counterclaims regarding the utility patents. It then turns to the claims and counterclaims regarding the HOOKLESS® mark, the EZ ON mark, and plaintiffs' trade dress. It then addresses defendants' remaining counterclaims. Finally, the Court addresses Focus's summary judgment motion relating to certain damages claims.

### A. Claims Related to the Utility Patents

The Court first addresses Focus's claims that defendants have infringed on the three utility patents, and defendants' counterclaims that they have not so infringed. "An infringement analysis is a two-step process in which the court first determines, as a matter of law, the correct claim scope, and then compares the properly-construed claim to the accused device to determine,

as a matter of fact, whether all of the claim limitations are present, either literally or by a substantial equivalent, in the accused device." *Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 988 (Fed. Cir. 1999).  If, however, the "parties do not dispute any relevant facts regarding the accused product but disagree over which of two possible meanings of [a given claim is correct], the question of literal infringement collapses to one of claim construction and is thus amenable to summary judgment."  *Athletic Alts., Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed. Cir. 1996).

### 1.    Infringement of the '248 Patent

Focus's motion for summary judgment as to infringement of the '248 patent is limited to one aspect of Claim 1: defendants' alleged inclusion, in their integrated shower curtain ring, of an "*approximately horizontal component* when [the shower curtain] is hanging from the [curtain] rod."  Pl. Ex. 7 at 13 (emphasis added).  In its *Markman* ruling, the Court construed the term "approximately horizontal component" as "a component that is either level or nearly so."  *Markman* Op. at 20.  The Court has no reason to revisit this definition now.

Focus contends that "[t]he sole dispute on infringement is whether the slit component in Defendants' product is 'approximately horizontal.'"  Pl Opp'n Mem. at 5; *see also* Pl. Mem. at 2–3.  Defendants argue that "[n]o reasonable person could find that Defendants' diagonal slits are 'approximately horizontal.'"  Def. Mem. at 11.  The Court disagrees.

The approximately horizontal component of Focus's design is labeled 232b in the below diagram:

| The '248 Patent | Defendants' Design |
|---|---|
|  | |

Focus's expert measured the angle of the horizontal component of each design.  He determined that Focus's "approximately horizontal component" has an angle of 26˚, while the horizontal component of defendants' design has an angle of 22˚.  Pl. Ex. 6.  In other words, the horizontal component of defendants' design is even closer to horizontal, *i.e.* 0˚, than Focus's design.  Because the Court has construed the term "approximately horizontal component" as "a component that is either level or nearly so," *Markman* Op. at 20, this is powerful evidence that defendants' design infringes this aspect of Claim 1 of the '248 patent.

Defendants offer no direct rebuttal to Focus's evidence.  Nor do they take issue with the measurements proffered by Focus's expert.  Instead, they argue that an angle of 22˚ cannot possibly be considered "approximately horizontal."  Def. Mem. at 10–11.  For at least two reasons, this argument is unpersuasive.  First, as Focus points out, the '248 patent describes this component of Focus's design—which has an angle of 26˚—as "approximately horizontal."  Whether defendants would have labeled it as such is beside the point.  *See, e.g.*, *Dig. Biometrics,*

*Inc. v. Identix, Inc.*, 149 F.3d 1335, 1343–44 (Fed. Cir. 1998).  And because the "approximately

horizontal" component of Focus's design is 26° off horizontal, defendants' design, at 22°, is at

least as "approximately horizontal" as Focus's is.  Nor can defendants argue that the 26° angle of

Focus's "approximately horizontal" component is inconsistent with the Court's *Markman*

construction that an "approximately horizontal component" is "a component that is either level

or nearly so."  *Markman* Op. at 20.  The Court was construing the term "approximately

horizontal" as used by Focus to describe this aspect of the product design.  For the Court's

construction to exclude Focus's own design would be nonsensical.  *See Vitronics Corp. v.

Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (a claim construction that excludes the

preferred embodiment "is rarely, if ever, correct and would require highly persuasive evidentiary

support, which is wholly absent in this case"); *see also Duncan Parking Techs., Inc. v. IPS Grp.,

Inc.*, 914 F.3d 1347, 1364 (Fed. Cir. 2019).[8]

   For these reasons, the Court concludes that defendants have failed to raise a triable issue

of fact as to whether their design includes an "approximately horizontal" component; it does.

Defendants have therefore infringed on this aspect of the '248 utility patent.  The Court grants

Focus's motion for summary judgment as to this discrete issue, and denies Marquis's first

counterclaim for a declaratory judgment that there is no such infringement.

---

[8] Defendants also attempt to argue that an angle of 22° cannot be found to be "approximately
horizontal" because such an angle, according to defendants, has a *grade* of 40%.  Defendants
then proffer examples of, *inter alia*, notably steep roadways with a lesser grade.  This argument
is unavailing.  First, defendants fail to offer any admissible evidence in support of it.  Second,
defendants seek to compare apples to oranges:  A grade is not the same as an angle.  Grade is
measured by dividing rise over run; thus, crucial to determining the grade of an incline is the
distance over which it increases in elevation.

### 2. Infringement of the '609 and '088 Patents

Focus's motion for summary judgment as to infringement of the '609 patent is again limited. Focus seeks a ruling on whether defendants' shower curtain ring tracks two aspects of Claim 1 of the '609 patent: first, whether defendants' ring includes "*a projecting edge*, said projecting edge being an edge which projects from [the] outer circumference of" the shower curtain ring; and, second, whether, on defendants' ring, the "projecting edge . . . [is] provided *next to said slit*," *i.e.*, the opening that allows the ring to be attached to the shower curtain rod. Pl. Ex. 9 at 15 (emphasis added).

Similarly, Focus's motion for summary judgment as to infringement of the '088 patent is limited to one aspect of Claim 1 of that patent: whether defendants' shower curtain ring includes "*a projecting edge*, said projecting edge being an edge which projects from [the] outer circumference of" the shower curtain ring. Pl. Ex. 10 at 15 (emphasis added).

In its *Markman* ruling, the Court construed "projecting edge"—relevant to both the '609 and '088 patents—as "an edge that projects from the outer circumference of the ring." *Markman* Op. at 24. The Court construed "next to said slit"—relevant to the '609 patent only— as "adjacent to the slit." *Id.* at 25. Defendants contend that their design does not contain these components of the '609 patent or the '088 patent. Def Mem. at 13, 19. The Court disagrees.

First, as to whether defendants' design includes a "projecting edge," the Court agrees with Focus that it does. Notably, defendants' only argument against such a finding is that "where [p]laintiffs have proposed an 'edge projecting from' [d]efendants' ring there [sic] not a discernable structure to show something 'projecting from' [sic] outer circumference of the ring." Def. Mem. at 16. This argument is foreclosed by the Court's *Markman* ruling, in which the Court explicitly rejected defendants' contention that a "projecting edge" requires something that protrudes or juts out from the outer circumference. *Markman* Op. at 24. Moreover, as with the

14

'248 patent, the fact that defendants would have chosen a different term than "projecting edge" to describe this component of the '609 and '088 patents is irrelevant.  *See, e.g.*, *Dig. Biometrics, Inc.*, 149 F.3d at 1343–44.  The Court therefore concludes that defendants' design includes a projecting edge as described in Claim 1 of the '609 and '088 patents.

Second, having found that defendants' design includes a projecting edge, the Court has no trouble finding that, relevant to the '609 patent, the projecting edge is "next to said slit."  This is readily apparent from a photograph of defendants' design, as shown below.

Defendants' Design (adapted from Pl. Ex. 4)



The Court therefore concludes that no reasonable juror could find that defendants' design does *not* include a "projecting edge," and, as to the '609 patent, that the projecting edge is *not* "next to" the slit.  Defendants have therefore infringed on these aspects of Claim 1 of the '609 patent and Claim 1 of the '088 patent.  The Court grants Focus's motion for summary judgment as to these discrete issues, and denies Marquis's first counterclaim for a declaratory judgment that there is no such infringement.

###### 3.     Defendants' Counterclaims of Patent Invalidity as to the Utility Patents

Defendant Marquis's fourth, fifth, and sixth counterclaims challenge the validity of the three utility patents.  An issued patent "shall be presumed valid," and "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."  35 U.S.C. § 282(a).  "The reason for this is plain.  The United States Patent Office is staffed by expert and experienced personnel uniquely qualified to determine questions of patentability."  *Howes v. Great Lakes Press Corp.*, 679 F.2d 1023, 1028 (2d Cir. 1982).  When raising a claim of patent invalidity in litigation, the moving party "must prove the facts to establish invalidity of each claim by clear and convincing evidence."  *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988); *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).

Focus contends that defendants' failure to adduce expert testimony in support of its allegations of patent invalidity is fatal to their claims.  The cases cited by Focus, however, do not support such a bright-line rule.[9]  Rather, they are cases where the party with the burden of proof failed to adduce any plausible evidence, including but not limited to expert evidence, to support a claim of patent invalidity.  The Court therefore considers defendants' arguments as to the alleged invalidity of each of the utility patents.

###### a.     The '248 Patent

Defendants contend that the '248 patent is invalid for two reasons.  First, defendants allege that the '248 patent is invalid for indefiniteness.  Def. Mem. at 12–13; *see* 35 U.S.C. § 112(b) ("The specification shall conclude with one or more claims particularly pointing out and

---

[9] *Howes*, 679 F.2d at 1028; *Astrazeneca AB v. Mylan Labs., Inc.*, 490 F. Supp. 2d 381, 535 (S.D.N.Y. 2007); *Plastic Contact Lens Co. v. W.R.S. Contact Lens Labs., Inc.*, 330 F. Supp. 441, 443 (S.D.N.Y. 1970)

distinctly claiming the subject matter which the inventor or a joint inventor regards as the

invention.").  The Supreme Court has offered the following guidance on the definiteness inquiry:

> First, definiteness is to be evaluated from the perspective of someone skilled in
> the relevant art.  Second, in assessing definiteness, claims are to be read in light of
> the patent's specification and prosecution history.  Third, definiteness is measured
> from the viewpoint of a person skilled in the art at the time the patent was filed.

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 908 (2014) (internal citations, quotation

marks, and alterations omitted).

Here, defendants argue that,

> [i]f Claim 1 is construed to literally or under the Doctrine of Equivalents cover
> Defendants' ring where the slit extends from outer circumference of the ring to
> the inner circumference of the ring because of the reexam amendment where the
> Markman Order held "said slit exits said ring at or near said upper edge of said
> curtain" (Dkt. 198 at 21) the claim must be held to be indefinite as such a
> determination would be in conflict with the limitation that the slit extends "from
> said upper edge through said ring to said opening."

Def. Mem. at 12.  The Court agrees with Focus that defendants have failed to engage in, or

provide the Court with the relevant information, *e.g.*, admissible evidence, to engage in the

*Nautilus* analysis.  Defendants have therefore failed to establish that the '248 patent is invalid for

indefiniteness, let alone by clear and convincing evidence.

Defendants next contend that the '248 patent is invalid because it was anticipated by prior

art.  35 U.S.C. § 102(a).  Specifically, defendants contend that the '248 patent is anticipated by

one Jacob Lishman's 1958 design for "drapery support."  *See* Patent 2,831,538 ("Lishman").

The Federal Circuit has long held that "[a]nticipation under 35 U.S.C. § 102 requires the

presence in a single prior art disclosure of each and every element of a claimed invention."

*Lewmar Marine, Inc. v. Barient, Inc.*, 827 F.2d 744, 747 (Fed. Cir. 1987); *see also Schering*

*Corp. v. Geneva Pharm.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003).  Focus responds to defendants'

claim by arguing that the '248 patent is not anticipated by Lishman as a matter of law because

17

Lishman's design does not contain a slit with "an approximately horizontal component."  The

Court agrees.  Defendants have therefore failed to prove, by clear and convincing evidence, that

the '248 patent is invalid by virtue of anticipation.

> b.      The '609 Patent

As to the '609 patent, defendants allege that Claim 1 of this patent is invalid for failure to

satisfy the written description requirement.  Def. Mem. at 17–18.  Found in the first paragraph of

35 U.S.C. § 112, the written description requirement provides that:

> The specification shall contain a written description of the invention, and of the
> manner and process of making and using it, in such full, clear, concise, and exact
> terms as to enable any person skilled in the art to which it pertains, or with which
> it is most nearly connected, to make and use the same, and shall set forth the best
> mode contemplated by the inventor or joint inventor of carrying out the invention.

35 U.S.C. § 112(a).  "The purpose of the 'written description' requirement is broader than to

merely explain how to 'make and use'; the applicant must also convey with reasonable clarity to

those skilled in the art that, as of the filing date sought, he or she was in possession of *the*

*invention*."  *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563–64 (Fed. Cir. 1991) (emphasis in

original).  "[T]he test for sufficiency" of the written description is whether it "reasonably

conveys to the artisan that the inventor had possession at that time of the later claimed subject

matter."  *Id.* at 1563 (quoting *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1575

(Fed. Cir. 1985)).

Defendants argue that the '609 patent is invalid because the written description fails to

support Claim 1, and specifically its reference to a "projecting edge."  Def. Mem. at 17–18.

Defendants do not cite any admissible evidence in support of this argument.  And defendants fail

to show at all, beyond declaring the point, how the written description in the patent fails to

provide a "person skilled in the art to which [the patent] pertains, or with which it is most nearly

connected, to make and use the same."  35 U.S.C. § 112.  Because defendants fall far short of

18

establishing the invalidity of the '609 patent by clear and convincing evidence, *Microsoft Corp.*, 564 U.S. at 95, the court denies defendants' motion for summary judgment on this point.

<em>c.   The '088 Patent</em>

Finally, defendants contend that the '088 patent is invalid, for two reasons.  First, defendants argue that "[f]or the same reasons given . . . for the '609 patent, the definition of 'Projecting Edge' recited in Claims 1 and 8 is not supported by the written description of the '088 patent."  Having rejected this argument as to the '609 patent, the Court rejects it as to the '088 patent as well.  Second, defendants argue that the '088 patent is invalid for "double patenting."  Focus, while contesting the argument as "meritless," reports that it has filed terminal disclaimers to obviate any double patenting issue.  *See* Pl. Opp'n Ex. 8.  Defendants' double patenting claim is therefore denied as moot.  *See* 37 C.F.R. § 1.321(c); *Quad Envtl. Techs. Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 874 (Fed. Cir. 1991) ("In legal principle, the filing of a terminal disclaimer simply serves the statutory function of removing the rejection of double patenting, and raises neither presumption nor estoppel on the merits of the rejection.").

**B.    Claims Related to Trademark and Trade Dress**

**1.    Defendants' Counterclaim That the HOOKLESS® Trademark Is Invalid**

In support of Marquis's tenth counterclaim, defendants argue that the HOOKLESS® mark is invalid because it has become generic.  "Generic marks, consisting of words that identify the type or species of goods or services to which they apply, are totally lacking in distinctive quality; they are not entitled to any protection against infringement, even if they have become famous as marks, because according such protection would deprive competitors of the right to refer to their goods by name."  *TCPIP Holding Co. v. Haar Commc'ns, Inc.*, 244 F.3d 88, 93 (2d Cir. 2001).  In essence, defendants assert that "[p]laintiffs do not show that Kartri is misusing

19

plaintiffs' registered trademark, but rather that customers have come to use 'hookless' as a generic word for the type of shower curtain that [p]laintiffs sell under their Hookless® mark." Def. Mem. at 42.

Focus first notes that it has not accused Marquis of infringing the HOOKLESS® mark, and so contends that Marquis has no standing to pursue this counterclaim. Focus then argues that Kartri, the sole defendant that Focus has accused of infringement, FAC ¶¶ 91–93, 95, has waived the affirmative defense of genericness, because Kartri neither asserted the alleged invalidity of the HOOKLESS® mark—on any basis—as an affirmative defense nor included it as a counterclaim. Focus is correct. "Failure to plead an affirmative defense ordinarily results in forfeiture of that defense." *Foster v. Lee*, 93 F. Supp. 3d 223, 229 (S.D.N.Y. 2015); *see also Wood v. Milyard*, 566 U.S. 463, 470 (2012) ("An affirmative defense, once forfeited, is excluded from the case." (internal quotation marks and alterations omitted)); Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense[.]"); 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1278 (3d ed.) ("It is a frequently stated proposition of virtually universal acceptance by the federal courts that a failure to plead an affirmative defense as required by Federal Rule 8(c) results in the waiver of that defense and its exclusion from the case."). Marquis's tenth counterclaim is therefore dismissed.[10]

---

[10] The Court thus does not need to reach Focus's merits arguments, including that "hookless" has not become a generic term for "shower curtain," that defendants have failed to support their position with the required evidence, and that registration of the HOOKLESS® mark gives it a presumption of validity that defendants have not overcome. Pl. Opp'n Mem. at 30–34.

### 2.     Infringement of the EZ ON Trademark

#### a.     *Defendants' claim of affirmative non-infringement*

Defendants next move for summary judgment on Marquis's second counterclaim.  They

ask the Court to find, as a matter of law, that defendants' use of the "EZY HANG" mark does

not infringe Focus's mark "EZ ON."  Def. Mem. at 37–39.  Focus opposes this motion on the

ground that disputed material facts preclude summary judgment.

"A plaintiff's trademark is protected by federal law against infringement by use of

colorable imitations of the mark which are 'likely to cause confusion, or to cause mistake, or to

deceive.'"  *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 502 (2d Cir. 1996)

(quoting 15 U.S.C. § 1114(1)).  "In determining whether there is a likelihood of consumer

confusion for trademark infringement," courts in the Second Circuit "apply the eight-factor

balancing test set forth in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492

(2d Cir. 1961)."  *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*,

823 F.3d 153, 160 (2d Cir. 2016).  The factors are:

> (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the
> products and their competitiveness with one another; (4) evidence that the senior
> user may "bridge the gap" by developing a product for sale in the market of the
> alleged infringer's product; (5) evidence of actual consumer confusion; (6)
> evidence that the imitative mark was adopted in bad faith; (7) respective quality
> of the products; and (8) sophistication of consumers in the relevant market.

*Id.* (quoting *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009)).

"The application of the *Polaroid* test is not mechanical, but rather, focuses on the ultimate

question of whether, looking at the products in their totality, consumers are likely to be

confused."  *Id.* (quoting *Kelly-Brown v. Winfrey*, 717 F.3d 295, 307 (2d Cir. 2013) (internal

quotation marks omitted)).

Here, defendants argue that consumer confusion is unlikely, and that Focus and defendants sell their respective EZ ON and EZ HANG products to different segments of the market.  "No single [*Polaroid*] factor is dispositive," however, and defendants have failed to address the remaining six.  *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 400 (2d Cir. 1995).  Nor have they demonstrated why the remaining "factor[s] [are] irrelevant to the facts at hand."  *Id.*  Moreover, as to the factors defendants do address, they do not cite any evidence in support of their position.  On the basis of this showing, the Court has no difficulty concluding that defendants have failed to meet their burden on summary judgment.  The Court is unable to conclude, as a matter of law, that no reasonable juror could find infringement by defendants' EZ HANG mark.  Defendants' motion for summary judgment on this issue is therefore denied.

> b.   *Defendants' claim that Focus lacks standing to allege infringement of the EZ ON mark*

Marquis's ninth counterclaim asserts that defendants cannot be found to have infringed the EZ ON mark as a matter of law because Focus does not own the mark and therefore lacks standing to bring this claim.  This argument is premised on the fact that Carnation, a sub-licensee of Focus, Pl. Opp'n Ex. 11 ("Sublicense Agreement"), registered a trademark for EZ ON in its own name after signing a sub-license agreement with Focus, *see* Pl. Opp'n Ex. 12, but has not assigned its rights to that mark to Focus, Pl. Opp'n Mem. at 28.

Focus, while pointing to the Carnation sublicense agreement as evidence that Carnation's actions do not impact its ownership of the EZ ON mark, Sublicense Agreement, concedes that there is a factual dispute on this issue and therefore does not cross-move for summary judgment.

Section 5.3 of the Sublicense Agreement requires that Carnation assign, *inter alia*, "any . . . trademark application . . . filed [by Carnation] during the term of th[e] agreement" when

such an application "fall[s] within the scope of" the sublicense.  Whether non-party Carnation's trademark application for the EZ ON mark falls within the scope of the Sublicense Agreement is a collateral dispute not before the Court.  A reasonable juror could so find, however—and therefore find that Focus owns the EZ ON mark—by looking, for example, to the inclusion of the EZ ON mark on the packaging of products that are indisputably covered by the sublicense agreement.  *See* Sublicense Agreement § 4.2 ("As part of said sublicense, [Focus] hereby grants sub-licensee the right to use the following trademark on the Licensed Products: 'EZ ON Shower Curtain[.]'"); *see also* Pl. Opp'n Ex. 22 (photo of the EZ ON Shower Curtain packaging).  The Court therefore denies defendants' motion for summary judgment on this question a result of disputed material facts.

### 3.      Trade Dress Infringement

Focus next claims that defendants have infringed on its trade dress, in violation of Section 43(a) of the Lanham Act.  15 U.S.C. § 1125(a).  "In addition to protecting registered marks, the Lanham Act, in § 43(a), gives a producer a cause of action for the use by any person of 'any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods . . . ."  *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209 (2000) (quoting 15 U.S.C. § 1125(a)).  As originally conceived,

> "trade dress" referred only to the manner in which a product was "dressed up" to go to market with a label, package, display card, and similar packaging elements. However, "trade dress" has taken on a more expansive meaning and includes the design and appearance of the product as well as that of the container and all elements making up the total visual image by which the product is presented to customers.  Thus, trade dress is essentially a product's total image and overall appearance as defined by its overall composition and design, including size, shape, color, texture, and graphics.

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31 (2d Cir. 1995) (internal citations, quotation marks, and brackets omitted).

Courts "exercise particular caution when extending protection to product designs." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114 (2d Cir. 2001) (internal quotation marks omitted). That is because trade dress claims, particularly as applied to product design, "raise a potent risk that relief will impermissibly afford a level of 'protection that would hamper efforts to market competitive goods.' While most trademarks only create a monopoly in a word, a phrase, or a symbol, 'granting trade dress protection to an ordinary product design would create a monopoly in the goods themselves.'" *Id.* at 115 (quoting *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 379–80 (2d Cir. 1997)). "Although the Lanham Act protects marks that consumers are likely to rely upon in distinguishing goods," *id.* at 114, "almost invariably, even the most unusual of product designs—such as a cocktail shaker shaped like a penguin—is intended not to identify the *source* of the product, but to render the product itself more useful or more appealing," *Samara Bros.*, 529 U.S. at 213 (emphasis added).

Thus, "just as copyright law does not protect ideas but only their concrete expression, neither does trade dress law protect an idea, a concept, or a generalized type of appearance." *Jeffrey Milstein, Inc.*, 58 F.3d at 32. In "[d]rawing the line between 'ideas' or 'concepts' on the one hand and 'concrete expressions' on the other," the Second Circuit instructs that a "helpful consideration will be the purpose of trade dress law: to protect an owner of a dress in informing the public of the source of its products, without permitting the owner to exclude competition from functionally similar products." *Id.* at 33.

Here, Focus asserts trade dress rights in the visual appearance of its shower curtains, which, *inter alia*: (1) lack hooks; and (2) have a row of rings, possessing slits or gaps, fixed in

place along the upper portion of the curtain that is "essentially co-planar with the material of the shower curtain." FAC ¶ 104.  It alleges that the combination of these elements gives rise to the appearance of a "neat" and "orderly" upper edge.  *Id.*  To succeed on a claim of trade dress infringement involving the appearance of a product, Focus must show that "(1) the claimed trade dress is non-functional; (2) the claimed trade dress has secondary meaning; and (3) there is a likelihood of confusion between the plaintiff's good and the defendant's."  *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 F. App'x 389, 391 (2d Cir 2003) (citing *Yurman Design, Inc.*, 262 F.3d at 115–16).  Focus must also offer "a precise expression of the character and scope of the claimed trade dress."  *Landscape Forms, Inc.*, 113 F.3d at 381.  As to this final requirement, the Court has already found that Focus has "recite[d] in specific detail the geometric and aesthetic characteristics" of its trade dress in a manner that is "sufficiently precise."  MTD Tr. at 28.  The Court has no reason to revisit this finding now.  The Court therefore considers the remaining elements of trade dress infringement.

### a.    *Secondary Meaning*

Focus has the burden to show that its trade dress has acquired secondary meaning.  A product has secondary meaning, also known as acquired distinctiveness, when "in the minds of the public, the primary significance of [the trade dress] is to identify the *source* of the product rather than the product itself."  *Yurman Design, Inc.*, 262 F.3d at 115 (emphasis added) (quoting *Samara Bros.*, 529 U.S. at 211).  The Court considers six factors to determine whether secondary meaning has attached: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use."  *Mana Prod., Inc. v. Columbia Cosmetics Mfg., Inc.*, 65 F.3d 1063, 1071 (2d Cir. 1995).

"[A] showing of secondary meaning," however, "is insufficient to protect product designs that are overbroad or 'generic'—'those that refer to the genus of which the particular product is a species.'" *Yurman Design, Inc.*, 262 F.3d at 115 (quoting *Jeffrey Milstein*, 58 F.3d at 32, 33); *see also Two Pesos, Inc.*, 505 U.S. at 768–69. Because "granting trade dress protection to an ordinary product design would create a monopoly in the goods themselves," courts "accord protection to [trade dress that] consumers are likely to rely upon in distinguishing goods, while denying protection that would hamper efforts to market competitive goods." *Landscape Forms, Inc.*, 113 F.3d at 380.

In this litigation, Focus has asserted trade dress rights solely in its product design: shower curtains, which, *inter alia*: (1) lack hooks; and (2) have a row of rings, possessing slits or gaps, fixed in place along the upper portion of the curtain that is "essentially co-planar with the material of the shower curtain." FAC ¶ 104. It alleges that the combination of these elements gives rise to the appearance of a "neat" and "orderly" upper edge. *Id.* The Court finds that this specific trade dress—unlike, say, the packaging in which the shower curtains are sold, or the various word marks and branding connected to the shower curtains—is generic. "Despite its initial novelty within the [hospitality] industry," Focus's "trade dress cannot qualify for trade dress protection because [Focus] is effectively seeking protection for an idea or concept—[hookless shower curtains]. It is clear that the first manufacturer to create a [shower curtain with hooks] could not have claimed trade dress protection for all [such shower curtains], since a trade dress described as consisting solely of [shower curtains with hooks] would simply refer to the genus of which the particular product is a species." *Jeffrey Milstein, Inc.*, 58 F.3d at 33 (internal quotation marks and alteration omitted).

Focus is of course free to develop, and receive protection for, trade dress that helps consumers associate the hookless shower curtains it manufactures with its brand—as, for example, Tide has done with its "squat, brightly decorated plastic bottles for its liquid laundry detergent," *Samara Bros.*, 529 U.S. at 212—and to assert patent protection for the shower curtains themselves, as it has already done. But to afford trade dress protection to Focus's product design would unduly risk "stifl[ing] competitors' efforts to market similar goods"— indeed, nearly any other hookless shower curtain—"to consumers." *Landscape Forms, Inc.*, 113 F.3d at 380.

Because generic trade dress is ineligible for protection, *Yurman Design, Inc.*, 262 F.3d at 115, the Court need not reach the remaining elements of trade dress infringement. The Court denies Focus's motion for summary judgment and grants defendants' corresponding counterclaims (Marquis's second and eleventh counterclaims) insofar as they relate to Focus's claimed trade dress for its product design only.

### C.   Defendants' Other Counterclaims

Next, the Court addresses defendants' remaining counterclaims.

#### 1.   Kartri's First Counterclaim for Tortious Interference and Monopoly

Kartri brings a single counterclaim against Focus that, read generously, raises both a claim of tortious interference and a claim of monopoly. Kartri Answer ¶¶ 204–17. Focus moves for summary judgment on this counterclaim on the basis that defendants have failed to adduce any evidence to support a *prima facie* case for either theory. The Court need not reach the merits of this argument, however, because defendants have failed to address this counterclaim in their summary judgment briefs. The Court therefore deems this counterclaim abandoned and dismisses it.

### 2.      Marquis's Eighth Counterclaim for Patent Misuse

Marquis's eighth counterclaim alleges that Focus committed patent misuse.  "[P]atent

misuse [is] the patentee's act of impermissibly broadening the physical or temporal scope of the

patent grant with anticompetitive effect.  When the patentee has used restrictive conditions on

licenses or sales to broaden the scope of the patent grant, [courts] have held that an accused

infringer may invoke the doctrine of patent misuse to defeat the patentee's claim." *Princo Corp.*

*v. Int'l Trade Comm'n*, 616 F.3d 1318, 1328 (Fed. Cir. 2010) (internal quotation marks, citations,

and alterations omitted).  Defendants' memorandum of law explains their basis for this

counterclaim thusly:

> Plaintiffs misused the patents in filing for a lawsuit that contravened the scope of
> the patents surrendered in overcoming the '088 patent double patenting rejection
> and in fraudulently asserting to fake claims for common law trademark
> infringement that they covered up in bad faith by submitting a redacted license
> and subsequently marketing a product under EZ ON to obscure the court from
> their misdeeds.   If Defendants prevail on the infringement claims above,
> Defendants request leave of the Court to conduct limited discovery on
> communications between Plaintiffs and their counsel to determine the extent to
> which Plaintiffs' counsel directed the inclusion of the common law claims.

Def. Mem. at 44.

Defendants, however, do not point to any evidence in their brief, or in their 56.1

statement, in support of this counterclaim.  The Court therefore finds that, on this record, no

reasonable juror could find that Focus committed patent misuse.  The Court therefore grants

summary judgment to plaintiffs on this counterclaim.

### 3.      Marquis's Third Counterclaim for Lack of Inventorship

In their memorandum of law in support of their cross-motion for summary judgment,

defendants voluntarily dismissed Marquis's third counterclaim, which alleged a lack of

inventorship.  Def. Mem. at 44; *see also* Marquis Answer ¶¶ 39–53.  This counterclaim is

therefore dismissed on consent.

**D.      Focus's Motion for Summary Judgment on Certain Damages Claims**

**1.      Focus's Ability To Seek Damages for Infringement of the Patents**

Focus next moves for a ruling that, as the exclusive licensee of the patents at issue in this case (for use on shower curtains), it will be entitled to pursue damages for any infringement found by defendants.  Pl. Mem. at 12.  Focus makes this argument in response to a contention to the contrary by defendants' damages expert Graham Rogers.  Def. Ex. 32 ("Rogers Report") ¶¶ 65–66.  Defendants do not make any attempt to defend this position in their briefs, however, other than to make the blanket assertion that it is premature for the court to consider damages. Def. Mem. at 43–44.  The cited paragraphs of the Rogers Report, as its author all but admits, *see* Rogers Report ¶ 67, are bald legal argument and entitled to no deference.  Nevertheless, to avoid follow-on litigation on this issue, the Court addresses it here.  Focus's position is clearly correct.

"[A]n exclusive licensee may sue on a patent, if the patent owner is joined as a party." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 956 (Fed. Cir. 2006); *see also, e.g.*, *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1367–68 (Fed. Cir. 2008), *mandate recalled and modified to include additional instructions on remand*, 557 F.3d 1377 (Fed. Cir. 2009); *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005); *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1202–03 (Fed. Cir. 2005); *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1031 (Fed. Cir. 1995).  "To be an exclusive licensee for standing purposes, a party must have received[] not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well."  *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995) (citing *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 468–69 (1926)).  By contrast, "[i]f the party has not received an express or implied promise of exclusivity under the patent, *i.e.*, the right to exclude others from making, using, or selling the

patented invention, the party has a 'bare license,' and has received only the patentee's promise that that party will not be sued for infringement." *Id.*; *Mars, Inc.*, 527 F.3d at 1368.

Here, patent holder ZDG has given an exclusive license to the relevant intellectual property to HSNA, which has in turn given an exclusive license to Focus. *See* Pl. Ex. 31 at 9–10; Pl. Ex. 42 ¶ 3; FAC ¶ 45. Focus is an exclusive licensee as described in *Rite-Hite Corp.*, 56 F.3d at 1552, and all three entities—ZDG, HSNA, and Focus—are parties to this lawsuit. Focus is therefore entitled to seek damages for any violations of the patents found by this Court.

### 2.    Focus's Remaining Summary Judgment Damages Claims

Finally, Focus moves for summary judgment on some, but not all, of its damages claims. It is the Court's considered judgment that such an exploration of damages is premature. Liability is far from resolved. In addition to the several issues identified in this Opinion as presenting disputes of material fact, there exist additional claims and counterclaims for which neither party has sought summary judgment.

For substantially similar reasons, the Court also holds Focus's motion to preclude—a motion focused solely on damages evidence—in abeyance. The Court is hopeful that the guidance in this Opinion will provide a basis for renewed settlement talks between the parties. And even if such discussions are ultimately unsuccessful, it is nevertheless prudent to resolve all issues of liability before turning time and attention to damages disputes, and to address all issues concerning damages at one time.

### CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the parties' cross-motions for summary judgment, as follows:

- Plaintiffs' First Cause of Action:
  - Alleged infringement of the '248 utility patent: Summary judgment granted as to "approximately horizontal" component of Claim 1;

  - Alleged infringement of the '609 utility patent: Summary judgment granted as to "projecting edge" and "next to said slit" components of Claim 1;

  - Alleged infringement of the '088 utility patent: Summary judgment granted as to "projecting edge" component of Claim 1;

  - Alleged infringement of the Design Patent: Not before the Court;

- Plaintiffs' Second Cause of Action:
  - Alleged infringement of the HOOKLESS® trademark: Not before the Court;

  - Alleged infringement of the EZ ON trademark: Not before the Court;

  - Alleged infringement of plaintiffs' trade dress, as specified in this Opinion: Summary judgment denied;

- Plaintiffs' Third Cause of Action: Not before the Court;

- Plaintiffs' motion for partial summary judgment on damages: Denied without prejudice;

- Defendant Kartri's First Counterclaim alleging tortious interference and monopolization: Dismissed;

- Defendant Marquis's First Counterclaim alleging non-infringement of the '248, '609, and '088 utility patents: Summary judgment denied;

- Defendant Marquis's First Counterclaim alleging non-infringement of the '078 design patent: Not before the Court;

- Defendant Marquis's Second Counterclaim alleging non-infringement of the HOOKLESS® trademark: Not before the Court;

- Defendant Marquis's Second Counterclaim alleging non-infringement of the EZ ON trademark: Summary judgment denied;

- Defendant Marquis's Second Counterclaim alleging non-infringement of plaintiffs' trade dress, as specified in this Opinion: Summary judgment granted;

- Defendant Marquis's Third Counterclaim alleging patent invalidity for alleged lack of inventorship: Dismissed on consent;

- Defendant Marquis's Fourth Counterclaim alleging invalidity of the '248 utility patent: Dismissed;

- Defendant Marquis's Fifth Counterclaim alleging invalidity of the '609 utility patent: Dismissed;

- Defendant Marquis's Sixth Counterclaim alleging invalidity of the '088 utility patent: Dismissed;

- Defendant Marquis's Seventh Counterclaim alleging invalidity of the '078 design patent: Not before the Court;

- Defendant Marquis's Eighth Counterclaim for patent misuse: Dismissed;

- Defendant Marquis's Ninth Counterclaim alleging invalidity of the EZ ON trademark: Summary judgment denied;

- Defendant Marquis's Tenth Counterclaim alleging invalidity of the HOOKLESS® trademark: Dismissed; and

- Defendant Marquis's Eleventh Counterclaim alleging invalidity of plaintiffs' trade dress, as specified in this Opinion: Summary judgment granted.

Barring settlement, this case will now proceed towards trial on the remaining claims. The Court is also today issuing an order referring this case, for settlement purposes only, to the Honorable Stewart D. Aaron, United States Magistrate Judge. The Court directs counsel, promptly, to jointly contact Judge Aaron's chambers to arrange for a settlement conference. Within two weeks of the completion of the settlement conference, the parties are directed to file a letter notifying the Court of the same and, if necessary, outlining the remaining issues to be decided. If necessary, the Court will then set a schedule requiring submissions of a Joint Pretrial Order and the other required pretrial filings set forth in the Court's Individual Rules.

The Court respectfully directs the Clerk of Court to terminate the motion pending at docket 243.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: April 16, 2020
New York, New York