# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Focus Products Group International, LLC; | ) | |
| Zahner Design Group, Ltd; Hookless Systems of | ) | |
| North America, Inc.; SF Home Decor, LLC; Sure | ) | |
| Fit Home Decor Holdings Corp.; and Sure Fit | ) | |
| Home Products, LLC | ) | |
| | ) | |
| Plaintiffs, | ) | 1:15-CV-10154 |
| v. | ) | |
| | ) | (PAE/SDA) |
| Kartri Sales Company, Inc., and | ) | |
| Marquis Mills, International, Inc. | ) | |
| | ) | |
| Defendants. | ) | |

# DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR

# PARTIAL RECONSIDERATION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ii

INTRODUCTION ...................................................................................................... 1

ARUGMENTS.............................................................................................................3

   I.      LEGAL STANDARDS FOR RECONSIDERATION  ................................3

   II.     SUMMARY JUDGMENT WAS GRANTED FOR DISCRETE ELEMENTS OF PLAINTIFFS' PATENTS ONLY ................................................................4

   III.    RECONSIDERATION OF THE TRADE DRESS RULING SHOULD BE DENIED ...........................................................................................................6

       A.   Defendants Argued that Plaintiffs' Trade Dress is Generic...........................6

       B.   Court did not render a sua sponte decision ...................................................7

       C.   Plaintiff failed to show lack of a generic trade dress  ...................................7

   IV.   THERE ARE NO FACTUAL INQUIRIES REGARDING GENERICISM OF PLAINTIFFS' TRADE DRESS ...................................................................9

   V.    DEFENDANTS PRODUCED ADMISSIBLE EVIDENCE OF GENERICSM ...........................................................................................................11

   VI.   GENERICISM IS FOUND IN THE RECORD ...........................................11

   VII.  GENERICISM WAS PROPERLY DECIDED BY THE COURT ...............12

   VIII. EVIDENCE OF RECORD SHOW PLAINTIFFS' TRADE DRESS IS GENERIC ...........................................................................................................15

   IX.   ALL TRADE DRESS ISSUES HAVE BEE ADDRESSED AND DECIDED ..17

   *X.*     CONCLUSION............................................................................................*17*

## Cases

*Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1569, 40 USPQ2d 1481, 1485 (Fed.Cir.1996) ............................................................................2

*Astrazeneca AB v. Mylan Labs., Inc.*, 490 F. Supp. 2d 381, 535 (S.D.N.Y. 2007) ..........2

*Athletic Alts., Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed. Cir. 1996)..................5

*Baker v. Dorfman*, 239 F.3d 415, 427 (2d Cir. 2000)........................................................3

*Coventry Capital US LLC v. EEA Life Settlements Inc.*, No. 17 Civ. 7417 (VM), 2020 WL 638524, at *4 (S.D.N.Y. Feb. 11, 2020) ...............................................................3

*Defiance Button Machine Co. v. C.C. Metal Prods. Corp.*, 759 F.2d 1053, 1059 (2d Cir. 1985) ....................................................................................................................................9

*Evolution Fast Food Gen. P'ship v. HVFG, LLC, No. 15 Civ. 6624 (DAB), 2018 WL 1779377, at *2 (S.D.N.Y. Mar. 28, 2018)* ...................................................................3

*Howes v. Great Lakes Corp.*, 679 F.2d 1023 (2nd Cir. 1982) ...........................................2

*In re Pishevar*, No. 19 Misc. 503 (JGK) (SDA), 2020 WL 1862586 ................................3

*In re GE Sec. Litig., 856 F. Supp. 2d 645, 651–52 (S.D.N.Y. 2012)* ...........................8, 10

*Jeffrey Milstein, Inc., v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 33 (2d Cir. 1995)........8, 10

*Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 988 (Fed. Cir. 1999)...........5

*King Cty. v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 317, 319–20 (S.D.N.Y. 2012) .........................................................................................................................3

*Landscape Forms, Inc. v. Columbia Cascade Co., 113 F.3d 373, 382-83 (2d Cir. 1997)* ........................................................................................................8, 9, 11

*LeSportsac, Inc, v. K-Mart Corp.* 754 F.2d 71, 77 (2d Cir. 1985) ...................................13

*Lichtenberg v. Besicorp Grp. Inc.*, 28 F. App'x. 73, 75 (2d Cir. 2002) .........................4

*LVL XIII BRANDS v. Louis Vuitton Malletier SA*, 209 F. Supp. 3d 612 (S.D.N.Y. 2016) .........................................................................................................14

*Mana Prod., Inc. v. Columbia Cosmetics Mfg., Inc.*, 65 F.3d 1063, 1071

2d Cir. 1995) ................................................................................................9

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736 (2d. 1998) .................9

*Plastic Contact Lens Co. v. W.R.S. Contact Lens Labs., Inc.*, 330 F. Supp. 441,
443 (S.D.N.Y. 1970) .......................................................................................2

*Sherwood 48 Assocs.v. Sony Corp. of Am.*, 76 F. App'x 389, 391 (2d Cir. 2003) ...........7

*Superior Fireplace Co. v. Majestic Products Co.*, 270 F. 3d 1358 (Fed. Cir. 2001)........2

*Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 820 F. Supp. 2d 558, 560
 (S.D.N.Y. 2011) ...........................................................................................3

*Two Pesos, Inc. v. Taco Cabana, Inc. - 505 U.S. 763 (1992)*............................................8

*Valu Engineering Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1276 (Fed. Cir. 2012)............13, 16

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) ...3

*Wal-Mart v. Samara Bros.*, 529 US 205 (2000) ...............................................9

*Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 116 (2d Cir. 2001)* .............................7, 8, 9, 11

**Statutes**

F.R.C.P. Rule 56 ...........................................................................................7

**Local Rules**

Local Rule 6.3 ..............................................................................................3

**INTRODUCTION**

Defendants respectfully request the Court to deny Plaintiffs' motion for reconsideration and/or affirm the Court's order granting summary judgment for noninfringement of Plaintiffs' trade dress claim. In an attempt to get a second bite at the apple, Plaintiffs assert this Court rendered a *sua sponte* decision - Defendants disagree.  Instead, this Court carefully applied the correct standards for trade dress infringement and rendered a correct decision.

Defendants also ask the Court to confirm its order granting partial summary judgment regarding discrete aspects of Plaintiffs claim I for infringement of Plaintiffs' '248, '088 and '609 patents.

Further, Defendants ask whether the Court intended to merely deny Defendants' motion for summary judgment for its counterclaims for invalidity of Plaintiffs' '248, '088 and '609 patents or dismiss Defendants counterclaims for invalidity entirely.  In its analysis, the Court stated Defendants motion for summary judgment was denied because Defendants failed to prove, by clear and convincing evidence, that the '248 patent is invalid by virtue of anticipation (Dkt 297 at 17); that the '609 patent is invalid for failure to satisfy the written description requirement (Dkt 297 at 18); and that the '088 patent is invalid for failure to satisfy the written description requirement and violation of double patenting. (Dkt 297 at 19). However, in the conclusion section of the decision, the Court states Defendant Marquis' fourth, fifth and sixth counterclaims alleging invalidity of the '248, '609 and '088 patents, respectively are dismissed. (Dkt. 297 at 32).

1

Based on the Court's rejection of Plaintiffs' proffered cases as being noncontrolling, it appears the Court meant to only deny Defendants' motion for summary judgment for invalidity.[1] (Dkt. 297 at 16). Plaintiffs' sole motion on patent invalidity was to assert that expert testimony is required to assert invalidity, the Court denied Plaintiffs' legal assertion and considered and denied Defendants' invalidity claims.  While a patent enjoys a statutory presumption of validity, "[t]he presumption of validity and the clear and convincing evidence standard were crafted, in part, because we recognized that we cannot know exactly what occurred during prosecution, and we appropriately assume that the PTO has done its job properly, absent clear and convincing evidence to the contrary. *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1569, 40 USPQ2d 1481, 1485 (Fed.Cir.1996) ("The presumption of validity is based on the presumption of administrative correctness of actions of the agency charged with examination of patentability."), cert. denied, 520 U.S. 1230, 117 S.Ct. 1822, 137 L.Ed.2d 1381*1381 1030 (1997)." *Superior Fireplace Co. v. Majestic Products Co.*, 270 F. 3d 1358 (Fed. Cir. 2001).

Further, because Plaintiffs did not move for declaratory judgment or any motion on validity of their patents '248, '088 or '609 patents, only Defendants' motion can be denied. Plaintiffs have requested the court deny further invalidity contentions; however, there are many invalidity issues that remain for trial.  Thus, because the Court rejected both Plaintiffs and Defendants arguments, this suggests that invalidity of the '248, '088 and '609 patents remain in the case.

---

[1] *Howes v. Great Lakes Corp.*, 679 F.2d 1023 (2nd Cir. 1982) at 1028; *Astrazeneca AB v. Mylan Labs., Inc.*, 490 F. Supp. 2d 381, 535 (S.D.N.Y. 2007); *Plastic Contact Lens Co. v. W.R.S. Contact Lens Labs., Inc.*, 330 F. Supp. 441, 443 (S.D.N.Y. 1970)

# SECTION I

## LEGAL STANDARD FOR RECONSIDERATION

District courts "ha[ve] broad discretion in determining whether to grant a motion [for reconsideration]." *Baker v. Dorfman*, 239 F.3d 415, 427 (2d Cir. 2000). "Reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources. Accordingly, the Second Circuit has held that the standard for granting a motion to reconsider 'is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Coventry Capital US LLC v. EEA Life Settlements Inc.*, No. 17 Civ. 7417.

The major grounds for justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *In re Pishevar*, No. 19 Misc. 503 (JGK) (SDA), 2020 WL 1862586, at *2 (S.D.N.Y. Apr. 14, 2020) (quoting *Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 820 F. Supp. 2d 558, 560 (S.D.N.Y. 2011)); *see also Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992); *King Cty. v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 317, 319–20 (S.D.N.Y. 2012). "A [m]otion to [r]econsider, therefore, is not a motion in which a movant may reargue those issues already considered when a party does not like the way the original motion was resolved . . . . Local Rule 6.3 should be narrowly construed and strictly applied to avoid repetitive arguments already submitted to the Court." *Evolution Fast Food Gen. P'ship v. HVFG, LLC*, No. 15 Civ. 6624 (DAB), 2018 WL 1779377, at *2 (S.D.N.Y. Mar. 28,

2018) (internal quotation marks and citations omitted); *see also Lichtenberg v. Besicorp Grp. Inc.*, 28 F. App'x. 73, 75 (2d Cir. 2002); *In re GE Sec. Litig.*, 856 F. Supp. 2d.

For the following reasons, Plaintiffs' motion should be denied.

## SECTION II

## SUMMARY JUDGEMENT WAS GRANTED FOR DISCRETE ELEMENTS OF PLAINTIFFS' PATENTS ONLY

Plaintiffs have requested clarity on the patent infringement issues. The Court's Opinion and Order are clear and no additional clarity is needed. Specifically, Plaintiffs' motion requested summary judgment for discrete elements of Claim 1 of their '248, '088 and '609 patents.  As such, the Court addressed these discrete issues motioned by Plaintiffs and made its ruling based on these discrete issues presented before the Court.  The Plaintiffs were granted summary judgment on discrete issues in each of its patents presented to the Court.  Moreover, Defendants responded in opposition to these discrete issues presented by the Plaintiffs. Accordingly, only these discrete components decided by the Court are deemed infringed; however, the entire patent claims of the '248, 088 and '609 were not deemed infringed by the Court.

On July 26, 2018, the Court held a *Markman* hearing. See Dkt. 193 (transcript of hearing). On August 9, 2018, the Court issued its *Markman* ruling, in which it construed 16 disputed claim terms relevant to the utility patents. Dkt. 198 ("*Markman* Op."). The Court's construction of those terms governed its findings as to the utility patents in is decision. Dkt. 297 at 8.

"An infringement analysis is a two-step process in which the court first determines, as a matter of law, the correct claim scope, and then compares the properly-construed claim to the accused device to determine, as a matter of fact, whether all of the claim limitations are present, either literally or by a substantial equivalent, in the accused device." *Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 988 (Fed. Cir. 1999). If, however, the "parties do not dispute any relevant facts regarding the accused product but disagree over which of two possible meanings of [a given claim is correct], the question of literal infringement collapses to one of claim construction and is thus amenable to summary judgment." *Athletic Alts., Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed. Cir. 1996).

The Court noted that Plaintiffs motioned for summary judgment as to infringement of the '248 patent was limited to one aspect of Claim 1: defendants' alleged inclusion, in their integrated shower curtain ring, of an "*approximately horizontal component* when [the shower curtain] is hanging from the [curtain] rod." Dkt. 297 at 11 (emphasis added by the Court). Relying on its *Markman* ruling that the term "approximately horizontal component" as "a component that is either level or nearly so," the Court granted Plaintiffs' summary judgement to the "approximately horizontal" component of Claim 1. Dkt. 297 at 13 and 31.

Similarly, the Court noted again that Plaintiffs' motion for summary judgment as to infringement of the '609 patent was also limited.  Specifically, Plaintiffs sought a ruling on whether defendants' shower curtain ring tracks two aspects of Claim 1 of the '609 patent. First, whether defendants' ring includes "*a projecting edge*, said projecting edge being an edge which projects from [the] outer circumference of" the shower curtain ring. Second, whether, on defendants' ring, the "projecting edge . . . [is] provided *next to said slit*," *i.e.*, the opening that allows the ring to be attached to the shower curtain rod. Dkt. 297 at 14 (emphasis added by the

Court). The Court granted Plaintiffs' motion for summary judgment to these discrete issues. Specifically, the Court granted summary judgment as to "projecting edge" and "next to said slit" components of Claim 1. Dkt. 297 at 15 and 31.

Finally, Plaintiffs' motion for summary judgment as to infringement of the '088 patent was limited to <u>one aspect</u> of Claim 1 of the '088 patent.  Plaintiffs motioned the Court to address whether defendants' shower curtain ring includes "*a projecting edge*, said projecting edge being an edge which projects from [the] outer circumference of" the shower curtain ring. Dkt. 297 at 14 (emphasis added by the Court). The Court concluded that defendants' design had a projecting edge and granted Plaintiffs' motion for summary judgment as to the "projecting edge" component of Claim 1. Dkt. 297 at 15 and 31.

Because the Court ruled on only discrete components of the '248, '088 and '609 patents, Plaintiffs' allegations for patent infringement for the remaining components of the '248, '088 and '609 patents are still in this case. In essence, because in order to infringe, a product must contain every single element in at least one claim of the patent and if even one element of the claim is missing from the product, it does not infringe. Accordingly, Plaintiffs' infringement claims as a whole are still in this case.


## SECTION III

## RECONSIDERATION OF THE TRADE DRESS RULING SHOULD BE DENIED

### A.  The Defendants Argued That Plaintiffs' Trade Dress Is Generic

Plaintiffs assert that Defendants never argued that Plaintiffs' trade dress is generic.  To the contrary, Defendants demonstrated that Plaintiffs' trade is overly broad, functional, non-

distinctive and lacks secondary meaning.  Dkt. 253 at 39 to 41 and Dkt. 288 at 10 to 13.  An

unregistered product-configuration trade dress cannot be inherently distinctive, so one would

need to prove that the dress has a secondary meaning. However, if the dress is overly broad,

and/or functional, it is protectable upon a showing of secondary meaning; but if it is generic.

Where the claimed trade dress covers an entire genus of products, it is overbroad and generic,

and it is not entitled to protection. Defendants submit Plaintiffs' claimed trade dress is functional,

non-distinctive and overly broad – to wit, generic.

**B.  The Court Did Not Render A *Sua Sponte* Decision**

Plaintiffs moved for summary judgement for trade dress infringement alleging that the

trade dress issues are not materially in dispute, and could be resolved under Rule 56. Dkt. 243 at

8.  Defendants agreed and also moved for summary judgment. The Court granted summary

judgment for Defendants and now, Plaintiffs argue their trade dress infringement claim is a

factual dispute for the jury.  Plaintiffs also argue that the Court rendered its decision *sua sponte*

in violation of Rule 56(f). To the contrary, the Court properly applied the proper standards for

trade dress infringement and correctly rendered summary judgment in favor of Defendants.

**C.  Plaintiffs Failed To Show Lack Of A Generic Trade Dress**

In its analysis, the Court held in order to succeed on a of trade dress infringement

involving the appearance of a product, Plaintiffs must show that "(1) the claimed trade dress is

non-functional; (2) the claimed trade dress has secondary meaning; and (3) there is a likelihood

of confusion between the plaintiff's good and the defendant's." *Sherwood 48 Assocs.v. Sony

Corp. of Am.*, 76 F. App'x 389, 391 (2d Cir. 2003) (citing *Yurman Design, Inc.*, 262 F.3d at 115–

16). Dkt 297 at 25.

Turning to its analysis of secondary meaning, the Court held "[a] showing of secondary meaning," however, "is insufficient to protect product designs that are overbroad or 'generic' 'those that refer to the genus of which the particular product is a species.'" *Yurman Design, Inc.*, 262 F.3d at 115 (quoting *Jeffrey Milstein*, 58 F.3d at 32, 33); *see also Two Pesos, Inc.*, 505 U.S. at 768–69. Dkt. 297 at 26. The Court noted that "granting trade dress protection to an ordinary product design would create a monopoly in the goods themselves," courts "accord protection to [trade dress that] consumers are likely to rely upon in distinguishing goods, while denying protection that would hamper efforts to market competitive goods." *Landscape Forms, Inc.*, 113 F.3d at 380.

Plaintiffs submit their trade dress rights solely in its product design: shower curtains, which, *inter alia*: (1) lack hooks; and (2) have a row of rings, possessing slits or gaps, fixed in place along the upper portion of the curtain that is "essentially co-planar with the material of the shower curtain." FAC ¶ 104.  Plaintiffs also submit that the combination of these elements gives rise to the appearance of a "neat" and "orderly" upper edge. *Id.*  Accordingly, the Court correctly held that Plaintiffs' trade dress—unlike, say, the packaging in which the shower curtains are sold, or the various word marks and branding connected to the shower curtains—is generic. Dkt. 297 at 26.

Thus, because overbroad, generic trade dress is ineligible for protection, the Court's analysis ended and the Court did need not to reach the remaining elements of trade dress infringement. Dkt. 297 at 27. In sum, the Court did not render a *sua sponte* decision; rather, the Court carefully analyzed that Plaintiffs' alleged trade dress infringement claim and that claim failed as generic.

# SECTION IV

## THERE ARE NO FACTUAL INQUIRIES REGARDING GENERICISM  OF PLAINTIFFS' TRADE DRESS

Plaintiffs had the burden to show that its trade dress has acquired secondary meaning which it failed. A product has secondary meaning, also known as acquired distinctiveness, when "in the minds of the public, the primary significance of [the trade dress] is to identify the *source* of the product rather than the product itself." *Yurman Design, Inc.*, 262 F.3d at 115 (emphasis added) (quoting *Wal-Mart v. Samara Bros., 529 US 205 at 211 (2000)*). The Court considers six factors to determine whether secondary meaning has attached: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use." *Mana Prod., Inc. v. Columbia Cosmetics Mfg., Inc.*, 65 F.3d 1063, 1071 (2d Cir. 1995)

Because "granting trade dress protection to an ordinary product design would create a monopoly in the goods themselves," courts "accord protection to [trade dress that] consumers are likely to rely upon in distinguishing goods, while denying protection that would hamper efforts to market competitive goods." *Landscape Forms, Inc.*, 113 F.3d at 380. Accordingly, because generic trade dress is ineligible for protection, *Yurman Design, Inc.*, 262 F.3d at 115, the Court need not reach the remaining elements of trade dress infringement and there are (were) no factual inquiries forwarded to the Court by Plaintiffs to consider.

Competitors are free to use an owner's trade dress if it has become generic over time even if it was originally distinctive. *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc*., 164 F.3d 736 (2d. 1998) (citing *Defiance Button Machine Co. v. C.C. Metal Prods. Corp*., 759 F.2d 1053, 1059 (2d Cir. 1985)).

Plaintiff argues that whether their trade dress is generic must be determined at the time an infringer began selling the accused product. Because Plaintiffs' trade was always generic, the Court does not need to look at any other date than Plaintiffs' pleadings. Plaintiffs has asserted trade dress rights solely in its product design: shower curtains, which, *inter alia*: (1) lack hooks; and (2) have a row of rings, possessing slits or gaps, fixed in place along the upper portion of the curtain that is "essentially co-planar with the material of the shower curtain." FAC ¶ 104. Plaintiffs allege that the combination of these elements gives rise to the appearance of a "neat" and "orderly" upper edge. *Id.*

Unlike Nora Beverages, Plaintiffs' trade dress was never distinctive and became generic nor had Plaintiffs' trade dress acquired secondary meaning. Moreover, Plaintiff has not demonstrated that their trade dress was ever distinctive or nonfunctional. Rather, like Nora Beverages, Plaintiffs' trade dress is generic. In sum, "unlike, say, the packaging in which the shower curtains are sold, or the various word marks and branding connected to the shower curtains, Plaintiff's trade dress is generic. Dkt. 297 at 26.

Importantly, the Court held "despite its initial novelty within the hospitality industry," Focus's "trade dress cannot qualify for trade dress protection because Plaintiffs are effectively seeking protection for an idea or concept— hookless shower curtains. The Court noted that it is clear that the first manufacturer to create a shower curtain with hooks could not have claimed trade dress protection for all such shower curtains, since a trade dress described as consisting solely of shower curtains with hooks would simply refer to the genus of which the particular product is a species." Jeffrey Milstein, Inc., v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 33 (2d Cir. 1995). Dkt. 297 at 26.

## SECTION V

## DEFENDANTS PRODUCED ADMISSIBLE EVIDENCE OF GENERICSM

Despite Plaintiff's assertions, Defendants did submit admissible evidence of the generic nature of their trade dress with discovery documents. (Dkt. 253, Exhibits 25, Marquis' bates stamped 001279 to 001303 and 001307 to 001315). These documents disclose examples of shower curtains with attached rings similar to Plaintiffs' curtains and sold in stores such as Walmart as generic (unbranded) curtains. Importantly, it is Plaintiffs' burden, not Defendants', to proffer evidence that the product configuration is indicative of the source of the product. Further, it is Plaintiffs' burden to show that the product configuration is not generic as concluded by this Court. (Dkt. 297 at 26).

## SECTION VI

## GENERICISM IS FOUND IN THE RECORD.

Plaintiffs allege that Defendants never produced evidence with their summary judgment motion papers about the genericism issue. On the contrary, Defendants produced evidence showing the generic nature of Plaintiffs' trade dress. In particular, Defendants provided WalMart web pages showing similar shower curtains to Plaintiffs' HOOKLESS curtains; Lishman and Sharp patents with similar designs to Plaintiffs; and another Walmart web site showing generic (i.e., no-brand) hookless' shower curtains. (Dkt. 253, Exhibits 25, 26, 31).

Other evidence of record was discussed in Defendants' reply brief including Plaintiffs' expired utility patent 5,186,232 that concerned Plaintiffs' major shower curtain product. (Dkt. 288 at 9 to 10).

Again, any consumer surveys and the like are the burden of the Plaintiffs to provide to support their trade dress claim, a requirement clearly set out in *Yurman, Landscape* and other

11

leading cases from this judicial circuit. According, the burden to produce evidence of non-functionality and secondary meaning is on the Plaintiffs as well.

## SECTION VII

## GENERICISM WAS PROPERLY DECIDED BY THE COURT

Contrary to Plaintiffs' contentions, that because the Court found that Plaintiffs' recited in specific detail the geometric and aesthetic characteristics of its trade dress in a manner that is sufficiently precise, thar their trade dress could not be generic.  The Court concluded that the claimed product design is too broad and was unable to apply secondary to the claimed product design.  In sum, the Court failed to find in Plaintiffs' claim what had acquired any distinctiveness. The Court then looked for secondary meaning in Plaintiffs' trade dress.

Looking at the overly broadness of the trade dress, the Court noted that Plaintiffs' trade dress is merely a reference to a genus that the trade dress species belongs.  Specifically, the Court found that the first manufacturer to create a shower curtain with hooks could not have claimed trade dress protection for all such shower curtains. Rather, a trade dress described as consisting solely of shower curtains with hooks would simply refer to the genus of which the particular product is a species. (Dkt. 297 at 25).

Plaintiffs argue that the possibility of alternative designs for no hook type shower curtains obviates the need for Plaintiffs to prove their claimed trade dress is non-functional (or is not generic). Interesting, Plaintiffs offer examples of patents or proposed shower curtains, with no evidence that these are or have ever been in the market. (Dkt. 303 at 15).

Plaintiffs' examples are shower curtains from Fields, Giumarra, Brown and InterDesign; Pierce; and Zenna. (Dkt. 303, Plaintiffs' Exhibits 1 through 7). The articles shown in these exhibits are of unusual or bizarre shapes and designs, and Plaintiffs have presented no evidence

whether any of these are, or have ever been, commercially successful.  An alternative product is not really available if there is no customer interest in it and if the Defendant would never be able to sell products of such design.  Moreover, this evidence does not achieve Plaintiff's burden of proof on this point. For example, Plaintiffs' exhibit 10 merely demonstrates the simplicity of installing and removing its own Hookless shower curtain from the shower rod and telling customers of its significant (functional) advantage in the hospitality and hotel trade. This is strong evidence of functionality, if not of genericness.

Plaintiffs further maintain only that their trade dress (as they claim it) does not bar competitors from selling shower curtains (that require hooks).  Plaintiffs cite a *LeSportsac* decision that "presence of alternatives means that the design is non-functional" *LeSportsac, Inc, v. K-Mart Corp.* 754 F.2d 71, 77 (2d Cir. 1985).  However, the more recent law is that if a design is *de jure* functional, then alternative designs do not make it non-functional, and the presence of alternatives is not relevant.  *Valu Engineering Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1276 (Fed. Cir. 2012). Of course, if the trade dress is too broadly claimed, the presence of alternatives won't save the day for the Plaintiffs.  The fact that other trade dress owners have been successful in proving their design had some branding value, perhaps only means that those other owners had pleaded their trade dress with sufficient particularity.  Plaintiffs here clearly have not done so.

Oddly, Plaintiffs attempt to use "generic" similar to how the term is used regarding word marks, where they can be fanciful, arbitrary, suggestive, descriptive, or generic.  In this trade dress question the genericness arises from something else, identifying the trade dress far too broadly.  Unlike a product name like aspirin or nylon, a product configuration does not start out arbitrary and become generic.  Here, Plaintiffs' trade dress genericness arguments are misplaced. Product recognition and business success can come about for many reasons, but if it is because

13

of a distinctive product look, the person claiming trade dress rights has the burden of proving that their trade dress is protectable. The evidence offered here by Plaintiffs does not do so.

Next, Plaintiffs refer to comments and remarks by Defendant Kartri's principal, Mrs. Kubus and Defendants' expert Paul Hatch.  Neither of these individuals bear trademark significance of Plaintiffs' product configuration.  Rather, Mr. Hatch's trade dress rebuttal only concerns examples of Plaintiffs' and Defendants' shower curtain rings or buckles, for the purpose of showing how different they are.  Actually, Plaintiffs' shower curtain is shown as having simple, plain circular rings.  This does not tie any market recognition of Plaintiffs' product to their product design. Regarding Mrs. Kubus's remarks, they are also not directed to a special look of the Plaintiffs' shower curtain. Moreover, Mrs. Kubus is not in the position of a customer but rather a seller and is not a person who is a prospective purchaser of Plaintiffs' shower curtains.

Plaintiffs' arguments are that their registration of the HOOKLESS word mark should transfer some level of trademark value to the product design.  That is not the case, however. Promotional materials that are not specifically directed to the claimed trade dress cannot be assumed to generate customer recognition of that trade dress.

Advertising and promotional materials that use a word mark with a product do not establish secondary meaning in the product's trade dress.  Plaintiffs do not have any examples of advertising featuring the trade dress per se, and of course they do not have a federal registration for it. Rather where the promotional materials do not use the design alone, but instead use the design with other marks, the promotional materials would not support secondary meaning in the product design. *LVL XIII Brands v. Louis Vuitton Mailletier SA,* 209 F. Supp. 62, 656 (S.D.N.Y. 2016), aff'd 70 Fed. App'x 24 (2d Cir. 2017).  Plaintiffs also proffer no customer surveys

concerning their product design, nor do they offer examples of advertising featuring their claimed trade dress.

Plaintiffs' assert that secondary meaning evidence is helpful in establishing non-genericism, that is, that proof of secondary meaning is also proof the trade dress is not generic. In particular, Plaintiffs assert that their HOOKLESS word mark had developed secondary meaning, but they offer no reasons for how any secondary meaning on that word trademark transfers to Plaintiffs' overbroad definition of product design.  (Dkt. 303 at 22; Dkt. 243 at 17-18; Dkt. 273 at 28-30). The law is clear and teaches the opposite.  Notably, advertising and promotional materials that use a word mark with a product do not establish secondary meaning in the product's trade dress.

## SECTION VIII

## EVIDENCE OF RECORD SHOWS PLAINTIFFS TRADE DRESS IS GENERIC

In an attempt to confuse the Court, Plaintiffs' reference back to various parts of its reconsideration brief. Yet, Plaintiffs' alleged support discussed in those subsections does not erase the generic nature of the Plaintiffs' claimed product configuration or trade dress.

 First, Plaintiffs take the position that the possibility of alternative designs for no-hook type shower curtains obviates the need for Plaintiffs to prove their claimed trade dress is non-functional. However, the examples proffered by Plaintiffs concern shower curtain designs from Fields, Giumarra, Brown and InterDesign. (Dkt. 303, Exhibits 1 through 4).  Plaintiff also submitted a design from Pierce, a Zenna design; and an exhibit showing traditional hooks.  (Dkt. 303, Exhibits 5, 7, 8). Plaintiffs also submitted a promotional item for their own Hookless shower curtain.   (Dkt. 303, Exhibit 10). The articles shown in these exhibits are of unusual or

bizarre shapes and designs; yet, Plaintiffs have presented no evidence whether any of these exhibits are, or have ever been, commercially successful.  An alternative product is not really available if there is no customer interest in it and if the Defendants or any competitor would never be able to sell products of such design.  More specifically, Fields incorporates a window shade roller into a shower curtain instead of a shower rod, Giumarra has a saddle at the top of a multiple shower curtain, and appears to require traditional shower curtain rings 26 to hang the saddle from the rod.  Brown has a row of shower rings sewn onto the top of the curtain, and the InterDesign curtain is similar to Brown.  Pierce has incorporated clips integral with the upper edge of the shower curtain.  Zenna's shower curtain liner has "Flex-fit" hooks at the top edge (and is also indicated to be unavailable).

As far as these alternative designs are concerned, these would not make it easy to compete in the market with Plaintiffs' Hookless products.  A product design such as Plaintiffs assert cannot serve as a trademark where doing so will put a competitor at a significant disadvantage because the design feature(s) is or are essential to the use or purpose of the article or affect its cost or its quality.  *19*.  The product designs of the Plaintiffs' exhibits are not evidence that Defendants or any competitor could adopt a product design that would erase the advantages of a product similar to Plaintiffs' product.  Trademark protection for Plaintiffs' Hookless product design would put competitors at a very significant disadvantage.   On this point, Plaintiffs offer no proof to the contrary.  Moreover, the presence of alternative designs does not convert a functional trade dress into a non-functional design.  *Valu Engineering Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1276 (Fed. Cir. 2012).  Alternative designs do not make a functional design into a non-functional one. Likewise, alternative designs, even if commercially viable, would not make Plaintiffs' overbroad claimed trade dress any less generic.

**SECTION IX**

**ALL TRADE DRESS ISSUES HAVE BEEN ADDRESSED AND DECIDED**

The Court correctly ruled that Plaintiffs' trade dress is overbroad, and hence generic. (Dkt. 297 at 297).  Despite, Plaintiffs current arguments in its motion for reconsideration, Plaintiffs' trade dress remains generic and unprotectable.  Plaintiff failed to establish that its trade dress is not generic. Accordingly, the Court does not need to address the likelihood of confusion or other elements of trade dress infringement.

**CONCLUSION**

For the reasons stated above, the Court must affirm its ruling granting Defendants' motion for summary for noninfringement of Plaintiffs' trade dress. Further, the Court must affirm that Plaintiffs' claims for infringement of the '248, '088 and '609 patents are still alive. Finally, Defendants ask the Court to clarify and affirm that although the motion for summary judgement for invalidity of the '238, '088 and '609 patents was denied, the invalidity counter-claims of these patents is still alive.

Respectfully submitted,                                 Dated: <u>April 30, 2020</u>

By: <u>*/s/ BMolldrem*</u>                                   By: <u>*/s/ Donald J. Cox, Jr.*</u>
    Bernhard P. Molldrem, Jr. (BM1960)            Donald J. Cox, Jr. (Pro Hac Vice )
    Law Office of Bernhard Molldrem               Law Offices of Donald Cox
    224 Harrison Street                           103 Carnegie Center, Suite 300
    Syracuse NY 13202                             Princeton, NJ 08540
    (315) 422-4323                                (609) 921-0477 (phone)

17

Counsel for Defendant                           Attorney for Defendant
Kartri Sales Company, Inc.                      Marquis Mills, International, Inc.

By: /s/A. Foster
    Angela Foster (3911534)
    Law Office of Angela Foster
    2906 Birchwood
    North Brunswick, NJ 08902
    732-821-9363
    Attorney for Defendant Kartri

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the forgoing Notice of Motion for Reconsideration and accompanying Memorandum was filed and served electronically, and is available for viewing and downloading through the Court's ECF system.

Date: <u>May 26, 2020</u>                    By:  <u>/s/ Donald J. Cox</u>

Donald J. Cox, Jr. (Pro Hac Vice )