UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FOCUS PRODUCTS GROUP INTERNATIONAL, LLC,
ZAHNER DESIGN GROUP LTD., HOOKLESS
SYSTEMS OF NORTH AMERICA, INC., SURE FIT
HOME PRODUCTS, LLC, SURE FITE HOME DÉCOR
HOLDINGS CORP., and SF HOME DÉCOR, LLC,

                                 Plaintiffs,

             -v-

KARTRI SALES COMPANY, INC., and MARQUIS
MILLS, INTERNATIONAL, INC.,

                                Defendants.

15 Civ. 10154 (PAE)

<u>OPINION & ORDER</u>

---

PAUL A. ENGELMAYER, District Judge:

      Plaintiffs have moved, *see* Dkt. 303 ("MTR"), for clarification and partial reconsideration

of the Court's April 16, 2020 summary judgment decision, *see* Dkt. 297 ("MSJ Op."). The Court

assumes familiarity with that decision and the broader history of this litigation. Plaintiffs'

motion addresses two discrete points.

      First, plaintiffs seek clarification that the Court's rulings equate to a finding that summary

judgment is merited for them as to their claims of infringement of the three utility patents. That

is correct. The Court held that defendants' products had infringed on these patents—the '248,

'609, and '88 patents—as a matter of law, and denied the defendants' mirror-image

counterclaims for declaratory relief. MSJ Op. at 10–15. The Court also denied defendants'

motion for summary judgment on these claims, based on the defense that the patents were

invalid, finding that defense meritless. *Id.* at 16, 30, 32. There are no remaining matters to be

resolved related to the claims of infringement of the utility patents. Plaintiffs are thus correct

that these patents were infringed as a matter of law, and are entitled to summary judgment on those claims.

Second, as discussed in the body of this decision, plaintiffs seek reconsideration of the Court's decision *sua sponte* to enter summary judgment for defendants on plaintiff's trade dress infringement claim.  Plaintiffs claimed to have trade dress rights in the visual appearance of shower curtains sold under their Hookless® brand, and that defendants had infringed their trade dress by copying the visual appearance of those shower curtains.  MSJ Op. at 4–5.  They thus moved for summary judgment on these claims.  *Id.*  The Court, however, noting that product designs that are generic—*i.e.*, "those that refer to the genus of which the particular product is a species"—are ineligible for protection, found plaintiffs' trade dress generic.  *Id.* at 26–27 (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115 (2d Cir. 2001)).  It accordingly entered summary judgment against plaintiffs' trade dress infringement claim.  *Id.*  In seeking reconsideration, plaintiffs note that defendants did not raise the defense of genericism, and that reconsideration on that point would enable the plaintiffs to be heard on that claim.

For the reasons that follow, plaintiffs are correct that reconsideration of this ruling is in order.  On reconsideration, the Court is persuaded that it has not been established that plaintiffs' trade dress is generic.  However, the Court cannot find that plaintiffs are entitled to summary judgment motion on their claims for trade dress infringement.  That claim is instead properly left to resolution at trial.

## I.    Motion to Reconsider

Plaintiffs' motion for reconsideration is governed by Federal Rule of Civil Procedure 59(e) and S.D.N.Y. Local Civil Rule 6.3.  District courts "ha[ve] broad discretion in determining whether to grant a motion [for reconsideration]."  *Baker v. Dorfman*, 239 F.3d 415, 427

(2d Cir. 2000).  A motion to reconsider "is not a motion in which a movant may reargue those issues already considered when a party does not like the way the original motion was resolved." *Evolution Fast Food Gen. P'ship v. HVFG, LLC*, No. 15 Civ. 6624 (DAB), 2018 WL 1779377, at *2 (S.D.N.Y. Mar. 28, 2018) (internal quotation marks omitted).  "The major grounds for justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *In re Pishevar*, No. 19 Misc. 503 (JGK) (SDA), 2020 WL 1862586, at *2 (S.D.N.Y. Apr. 14, 2020) (quoting *Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 820 F. Supp. 2d 558, 560 (S.D.N.Y. 2011)).

Here, plaintiffs argued at summary judgment that defendants had infringed both their trademark and trade dress.  The Court held that plaintiffs' trade dress was generic and thus ineligible for protection.  MSJ Op. at 27.  The Court therefore did not reach plaintiffs' claims that their trade dress was infringed.  As plaintiffs note in pursuing reconsideration, although the defendants argued that the trademark Hookless® was generic, they did not argue that plaintiffs' trade dress was generic.  Because the defendants never raised trade dress genericism in their summary judgment arguments, the plaintiffs never had occasion to respond on that point.  That supplies good cause for reconsideration.  "While a district court may grant a motion for summary judgment 'on grounds not raised by a party,' it must first 'giv[e] notice and a reasonable time to respond.'"  *Lawson v. Homenuk*, 710 F. App'x 460, 466 (2d Cir. 2017) (summary order) (alteration in original) (quoting Fed. R. Civ. P. 56(f)).  The Court did not give plaintiffs such notice.  Accordingly, reconsideration of its ruling on genericism is merited.  The Court therefore vacates that holding.  *See ING Bank N.V. v. M/V Temara*, 892 F.3d 511, 523 (2d Cir. 2018) ("The Supreme Court has emphasized that prior notice is a prerequisite to a *sua sponte* grant of summary judgment.").  And the Court considers anew plaintiffs' motion for summary judgment

on their claim of trade dress infringement, and whether defendants merit summary judgment on that claim based on the alleged genericism of plaintiffs' trade dress.

## II.    Legal Standards Governing Motions for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quotation omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

### III.    Trade Dress Infringement

Plaintiffs claimed to have trade dress rights in the visual appearance of shower curtains sold under their Hookless® brand, and that the defendants infringed on this trade dress in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  MSJ Op. at 4.  "Trade dress" includes the "design and appearance of the product . . . and all elements making up the total visual image by which the product is presented to customers." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31 (2d Cir. 1995).  "In addition to protecting registered marks, the Lanham Act, in § 43(a), gives a producer a cause of action for the use by any person of 'any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods.'"  *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209 (2000) (alterations in original) (quoting 15 U.S.C. § 1125(a)).

In determining whether a particular trade dress is protectable, the Second Circuit instructs that a "helpful consideration will be the purpose of trade dress law: to protect an owner of a dress in informing the public of the source of its products, without permitting the owner to exclude competition from functionally similar products." *Jeffrey Milstein, Inc.*, 58 F.3d at 32–33. However, "[t]here is no question that trade dress may protect the 'overall look' of a product." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381–82 (2d Cir. 1997).  The "use of a product or package design that is so similar to that of another producer that it is likely to confuse purchasers as to the product's source may constitute 'false designation of origin.'"  *Id.* (quoting *Inwood Lab'ys., Inc. v. Ives Lab'ys., Inc.*, 456 U.S. 844, 863 (1982) (White, J., concurring)).

To succeed on a claim of trade dress infringement involving the appearance of a product, a plaintiff must (1) offer a "precise expression of the character and scope of the claimed trade dress," and establish that: (2) the claimed trade dress is nonfunctional; (3) the claimed trade dress has acquired secondary meaning; and (4) there is a likelihood of confusion between the plaintiffs' and the defendant's products. *Urban Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. 12 Civ. 3599 (RWS), 2012 WL 3240442, at *3 (S.D.N.Y. Aug. 7, 2012); *Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 F. App'x 389, 391 (2d Cir. 2003) (summary order).

As to the first element, plaintiffs have asserted trade dress rights solely in its product design: to wit, shower curtains which, *inter alia*: (1) lack hooks; and (2) have a row of rings, possessing slits or gaps, fixed in place along the upper portion of the curtain that is "essentially co-planar with the material of the shower curtain." Dkt. 148 (Fourth Amended Complaint, "FAC") ¶ 104; MSJ Op. at 26. Plaintiffs argue that the combination of these elements gives rise to the "visual appearance of an essentially 'neat' and 'orderly'" shower curtain. MSJ Op. at 4 (quoting FAC ¶ 104). The Court has found that this specification of the elements of plaintiffs' trade dress supplies the required "precise expression." *See* Dkt. 71 ("MTD Tr.") at 27; MSJ Op. at 25 (holding plaintiff had "'recite[d] in specific detail the geometric and aesthetic characteristics' of its trade dress in a manner that is 'sufficiently precise'" (quoting MTD. Tr. at 28)). The Court does not have good reason to revisit that holding now.

The Court thus turns to the remaining three factors. Importantly, even where a plaintiff makes a showing of these factors, such a showing is "insufficient to protect product designs that are overbroad or 'generic.'" *Yurman Design, Inc.*, 262 F.3d at 115. The Court thus examines first whether plaintiffs have established these three factors, and then whether they have shown that their trade dress is not generic.

A.     **Nonfunctional**

As to the nonfunctionality element, "[i]n general terms, a product feature is functional, and cannot serve as a trademark, if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001) (alteration in original) (quotations omitted).  The Second Circuit has stated that "[t]rade dress is functional, and thus not protectable, when it is 'essential to the use or purpose of the article.'"  *Cartier, Inc. v. Scardell Jewelry, Inc.*, 294 F. App'x 615, 620 (2d Cir. 2008) (summary order) (quoting *Yurman Design*, 262 F.3d at 116).  However, even where a design "operate[s] to perform a function, the trade dress is not 'functional' [if] there are many alternative designs that could perform the same function."  *Id.* at 621.

Here, as the Court found at the motion to dismiss stage, "a neat and orderly appearance is in no way essential to the functional purpose[s] of [a] shower curtain: protecting privacy and preventing water from spraying outside the shower area.  An alternative design—*e.g.*, one involving hooks—could certainly perform the same functions."  MTD Tr. at 18 (alterations in original) (quotations and citations omitted).  Plaintiffs have since demonstrated the availability of alternative designs to theirs, thus showing that protection of their hookless trade dress would not bar competitors from using hooked curtains, or all possible alternative hook-free designs.  *See, e.g.*, Dkt. 243 ("Pl. MSJ"), Ex. 22 ¶ 69 ("[A]ternative designs, such as one involving hooks, could certainly perform the same functions").  Nothing in defendants' summary judgment materials has indicated the contrary: either that a shower curtain has a different "functional purpose" or that there is no alternative design that could perform the same function.

In response, defendants instead argue that trade dress can also be functional "if the right to use it exclusively would put competitors at a significant non-reputation-related disadvantage."

Dkt. 253 ("Def. MSJ Mem.") at 33, 40 & n.12 (citing *Yurman Design*, 262 F.3d at 116).  But defendants have not shown that exclusive use of the trade dress would put competitors at a significant non-reputation-related disadvantage, such as because the trade dress "is essential to the use or purpose of the device or when it affects the cost or quality of the device," *TrafFix Devices*, 532 U.S. at 33.  Defendants have not pointed to any admissible evidence demonstrating this claimed "disadvantage."  Accordingly, because plaintiffs have adduced sufficient evidence to establish this element, and defendants have failed to "come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment," *Jaramillo*, 536 F.3d at 145, plaintiffs have established this element of trade dress infringement.

## B.    Secondary Meaning

To protect their trade dress, plaintiffs must also show that the dress has a secondary meaning, also known as acquired distinctiveness.  A product has secondary meaning when, "in the minds of the public, the primary significance of [the trade dress] is to identify the source of the product rather than the product itself."  *Yurman Design, Inc.*, 262 F.3d at 115 (quoting *Samara Bros.*, 529 U.S. at 211).  The Court considers six factors to determine whether secondary meaning has attached: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use."  *Mana Prod., Inc. v. Columbia Cosmetics Mfg., Inc.*, 65 F.3d 1063, 1071 (2d Cir. 1995).

Here, plaintiffs have adduced admissible evidence, including through expert testimony, of a number of these factors.  As to the first, they have persuasively shown their substantial advertising expenditures.  *See, e.g.*, Pl. MSJ, Ex. 23 ¶ 31 ("[O]ver more than twenty years, Plaintiffs, directly or through their licensee(s) and/or predecessors, have expended at least

hundreds of thousands, or millions of dollars in advertising their products and their associated

trade dress, including, but not limited to, marketing and advertising their products at trade shows

throughout the country, extensive marketing on QVC, internet marketing on YouTube . . . .").

As to the third, they have adduced evidence that their "trade dress has also been the subject of

industry awards, including, for example, awards on QVC for Best New Product, and awards at

trade shows." *Id.* ¶ 34.  As to the fourth, plaintiffs have demonstrated that they have achieved

substantial sales success in selling their product for a number of years.  *See id.* ¶ 36.  ("Plaintiffs

have had sales of many millions of dollars in shower curtain products bearing Plaintiffs' trade

dress and trademark."); *id.* ¶ 41 ("[P]laintiffs have for a period of over twenty years,

continuously, exclusively, and extensively, used their trade dress in interstate commerce.").  And

as to the fifth, plaintiffs have presented expert testimony that their trade dress has "been the

subject of numerous attempts by third parties to plagiarize the same."  *Id.* ¶ 38.  Defendants do

not contest the evidence as to these factors.  *See* Dkt. 288 ("Def. MSJ Reply") at 50–51.

Defendants instead oppose a finding of secondary meaning on two grounds.  First, they

argue that "[a]dvertising may not support secondary meaning where the promotional material

does not use the design alone, but instead [does so] with other marks."  *Id.* at 12–13 (citing *LVL

XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 656 (S.D.N.Y. 2016),

*aff'd*, 720 F. App'x. 24 (2d Cir. 2017) (summary order)).  But this case is easily distinguished

from the case, before this Court, from which that proposition is derived.  At issue in *LVL XIII

Brands* were luxury sneakers.  The plaintiff pursuing a finding of secondary meaning had "not

established that any of its promotional materials called attention *to the [metal toe plate

characteristic of its sneaker]* as an indication of source."  *LVL XIII Brands*, 209 F. Supp. 3d 612

at 655 (citations omitted).  "To the contrary," the Court found, LVL XIII failed to identify a

single article that discussed the toe plate or distinguished it from other elements of the sneaker design, such as the "LVL XIII" inscription.  *Id*. at 656.  Thus, the plaintiff had relied on promotional materials to support its claim that the metal toe plate feature had acquired a secondary meaning, but those materials were not focused at all on the toe plate component of the design at issue.  This case is quite different.  Although plaintiffs use the trade dress and Hookless® mark together, the word mark is descriptive of the very trade dress in the pictures. Unlike in *LVL XIII*, plaintiffs are not attempting to capitalize on attention paid to their product that is independent of the feature over which they claim trade dress.

Second, defendants dispute plaintiffs' showing of secondary meaning on the ground that plaintiffs have not presented consumer surveys linking the trade dress to a particular source. Def. MSJ Reply at 13; Dkt. 305 ("MTR Opp'n") at 14–15.  That argument has more traction as a basis for denying plaintiffs' motion for summary judgment.  Although no one factor is necessary to establish secondary meaning, evidence of consumer perceptions linking the mark to their source is indeed often an important, if not a decisive, means by which secondary meaning is established.  *See Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208, 217 (2d Cir. 1985) ("In assessing the existence of secondary meaning, no 'single factor is determinative,' and every element need not be proved." (citation omitted)).  The Second Circuit has emphasized that to prove secondary meaning, a plaintiff must show "that in the minds of the public, the primary significance of the mark is to identify the source of the product rather than the product itself."  *Cartier, Inc.*, 294 F. App'x at 617 (quoting *Yurman Design, Inc.*, 262 F.3d at 115).  To do this, "consumer surveys have been consistently cited as the most persuasive evidence of secondary meaning.  And, in a borderline case where it is not at all obvious that [a] designation has been used as a mark, survey evidence may be necessary to prove trademark perception."

10

*LVL XIII Brands*, 209 F. Supp. 3d 612 (alteration in original) (quotations and citations omitted); *see also Chum Ltd. v. Lisowski*, 198 F. Supp. 2d 530, 534–35 (S.D.N.Y. 2002) (where the plaintiff "chose not to offer into evidence[] any consumer surveys . . . demonstrating the requisite link in the minds of consumers," despite three other factors weighing in plaintiffs' favor, the court was "most persuaded by the evidence it has not seen: direct survey evidence," and therefore found that the plaintiff failed to meet "its burden of demonstrating by a preponderance of the evidence" that the marks acquired a secondary meaning).

Plaintiffs here elected not to come forth with evidence of any consumer surveys. But they argue that they have other evidence of how consumers perceive their trade dress. They point, largely, to the deposition testimony of Patricia Kubus, Vice President and President of Sales of defendant Kartri Sales Company, Inc. ("Kartri"), admitting that buyers seek "hookless-style shower curtains," and often do so by pointing to pictures from Focus' own website. Pl. MSJ at 11 (citing *id.*, Ex. 29 at 4–6). Kubus's testimony, plaintiffs argue, evinces consumer recognition of the acquired meaning associated with plaintiffs' hookless shower curtains.

The Court agrees that plaintiffs have adduced sufficient evidence on which a finder of fact could find secondary meaning. But this evidence is far from conclusive on the point. A reasonable juror could also discount Kubus's non-expert testimony as non-systematic, isolated, and personal—and thus far less reliable and probative than a well-drawn survey. Accordingly, with the record lacking more solid evidence that, as to the trade dress at issue, the "public [views] the primary significance of the mark [as] to identify the source of the product rather than the product itself," *Cartier, Inc.*, 294 F. App'x at 617 (quotations omitted), the Court finds that a reasonable factfinder could resolve this element either way. Viewing the evidence "in the light most favorable" to defendants, *Holcomb*, 521 F.3d at 132, there is a genuine dispute whether

plaintiffs' trade dress carries a secondary meaning.  Plaintiffs therefore are not entitled to summary judgment on that claim.

### C.      Likelihood of Confusion

The final factor, "likelihood of confusion," in the context of trade dress, "is determined by the multi-factor test set out in *Polaroid Corp. v. Polarad Elecs. Corp.*"  *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 119 (2d Cir. 2001) (citing 287 F.2d 492, 495 (2d Cir. 1961)).  These factors include:

> the strength of [the prior owner's] mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap [between the two products], actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers.

*Id.* (alterations in original) (quoting *Polaroid Corp.*, 287 F.2d at 495).  In denying defendants' motion to dismiss, the Court found that the plaintiffs had adequately pled a likelihood of confusion as to their trade dress in alleging that: (1) there is successful use of their trade dress in commerce; (2) there is a high degree of similarity between plaintiffs' trade dress and defendants' infringing trade dress; (3) there is no gap between plaintiffs' and defendants' products because they both market shower curtains; and (4) defendants acted in bad faith in adopting the infringing trade dress.  MTD Tr. at 26–27.

In moving for summary judgment, plaintiffs pointed to evidence supporting each of these points.  To show the use of their trade dress in commerce, plaintiffs adduced evidence of sales of "many millions of dollars in shower curtain products bearing Plaintiffs' trade dress."  Pl. MSJ, Ex. 23 ¶¶ 35–37 ("Plaintiffs' shower curtain products . . . [are] the leading shower curtain in the hospitality industry (*e.g.*, hotels and motels) throughout the U.S.").  To show the high degree of similarity between plaintiffs' trade dress and defendants' alleged infringing dress, plaintiffs'

12

expert pointed to examples, including the product that plaintiffs license to Carnation.  *See*, *id.*
¶¶ 52–56 (comparison of Defendants' accused design to Carnation product).  Plaintiffs also
adduced evidence that defendants' products are within the scope of plaintiffs' trade dress, as both
products are "sold by the same distributors . . . at comparable price-points (approximately $12–$35),
and to largely the same target markets (hospitality buyers, distributors, retailers, and/or online)."
*Id.* ¶ 60.  Finally, plaintiffs have adduced evidence that, on several occasions, defendant Kartri's
employees have recommended their Ezy-Hang shower curtains to customers who ask about
plaintiffs' Hookless® shower curtain.  *Id.* ¶¶ 63–64, 69–72; Pl. MSJ at 11.

   This assembled proof is certainly sufficient to establish that defendants' products pose a
likelihood of confusion with plaintiffs' trade dress.  However, on plaintiffs' motion for summary
judgment, the evidence must be viewed in the light most favorable to the defendants.  So viewing
plaintiffs' evidence, the Court cannot find it conclusive as to likelihood of confusion.  A jury
could find plaintiffs' evidence, which lacks survey support or numerous examples of confusion,
too episodic and limited to carry the day.  And there are also, at a minimum, genuine issues of
material fact as to whether defendants acted in bad faith in adopting their trade dress.  Resolution
at trial is therefore necessary on this claim.  *See Akiro LLC v. House of Cheatham, Inc.*, 946 F.
Supp. 2d 324, 340 (S.D.N.Y. 2013) (concluding that case must proceed to trial as to likelihood of
consumer confusion element, and noting that "issues of good faith are generally ill-suited for
disposition on summary judgment" (quoting *Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 583 (2d
Cir. 1991))); *see also Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 964 (2d Cir. 1996)
(noting that although survey evidence is not strictly required, "the absence of surveys is evidence
that actual confusion cannot be shown").

Accordingly, the Court denies plaintiffs' motion for summary judgment on its claim of trade dress infringement.

### D.     Genericism

In arguing that the Court should decline to revisit its grant of summary judgment on grounds of genericism, defendants note that even if plaintiffs had proven that the dress had a secondary meaning, "a showing of secondary meaning is insufficient to protect product designs that are overbroad or 'generic'—'those that refe[r] to the genus of which the particular product is a species.'" *Yurman Design, Inc.*, 262 F.3d at 115 (alteration in original) (quoting *Jeffrey Milstein*, 58 F.3d at 32, 33); *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768–69 (1992); MTR Opp'n at 8–9.  That is correct.  But, on considered review, defendants have not established that plaintiffs' hookless curtains are generic, so as to entitle defendants to summary judgment on plaintiffs' trade dress infringement claims.  This issue, too, requires resolution by the trier of fact.

The governing principles are important to articulate.  Because "granting trade dress protection to an ordinary product design would create a monopoly in the goods themselves," courts "accord protection to [trade dress that] consumers are likely to rely upon in distinguishing goods, while denying protection that would hamper efforts to market competitive goods." *Landscape Forms, Inc.*, 113 F.3d at 380.  Courts "exercise particular caution when extending protection to product designs." *Yurman Design, Inc.*, 262 F.3d at 114 (quotations omitted).  Thus, "just as copyright law does not protect ideas but only their concrete expression, neither does trade dress law protect an idea, a concept, or a generalized type of appearance." *Jeffrey Milstein, Inc.*, 58 F.3d at 32; *see also Samara Bros.*, 529 U.S. at 213 ("[A]lmost invariably, even the most unusual of product designs—such as a cocktail shaker shaped like a penguin—is

intended not to identify the source, but to render the product itself more useful or more appealing."). In "[d]rawing the line between 'ideas' or 'concepts' on the one hand and 'concrete expressions' on the other," the Second Circuit instructs that a "helpful consideration will be the purpose of trade dress law: to protect an owner of a dress in informing the public of the source of its products, without permitting the owner to exclude competition from functionally similar products." *Jeffrey Milstein, Inc.*, 58 F.3d at 33; *see, e.g.*, *Hartford House Ltd. v. Hallmark Cards Inc.*, 846 F.2d 1268, 1274 (10th Cir. 1988) ("Blue Mountain has not been granted exclusive rights in an artistic style or in some concept, idea, or theme of expression. Rather, it is Blue Mountain's specific artistic expression, in combination with other features to produce an overall Blue Mountain look, that is being protected." (footnote omitted)).

Here, to demonstrate that plaintiffs' trade dress is generic, defendants must show that plaintiffs' trade dress became generic by the time defendants entered the market. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 744 (2d Cir. 1998). One way defendants could so establish would be through evidence that another product that included the features of plaintiffs' trade dress was being sold as of the date when defendants began their alleged infringement. Defendants argue that they have done so here, via evidence of a generic shower curtain that was then for sale. *See, e.g.*, MTR Opp'n at 11 (citing Def. MSJ Mem., Exs. 25, 31 (showing that shower curtains with attached rings similar to plaintiffs' were sold in Walmart as generic, *i.e.*, unbranded, curtains)). But the exhibits to which defendants point fall short because they do not show that these generic shower curtains were sold as of the date defendants began their infringement. The only date displayed on the exhibit is April 16, 2019, some four years into this litigation. Defendants also point to other exhibits that do not establish,

either, that such goods were sold before the date of infringement. *See* Def. MSJ Mem., Ex. 26. Defendants' proof falls far short of establishing the lack of material fact as to genericism.

There may, however, be a sufficient basis on which a jury could find genericism. "[T]rade dress cannot qualify for trade dress protection [when a plaintiff] is effectively seeking protection for an idea or concept." *Jeffrey Milstein, Inc.*, 58 F.3d at 33. And, as the Court explained in its decision, the first manufacturer to create a shower curtain with hooks could not have claimed trade dress protection for all such shower curtains. Rather, a trade dress described as consisting solely of shower curtains with hooks would simply refer to the genus of which the particular product is a species. MSJ Op. at 25 (citing *Yurman Design, Inc.*, 262 F.3d at 115). Plaintiffs, in their motion to reconsider, do not clearly show why the parallel as to hookless shower curtains is not also true. In the Court's judgment, neither side has made a convincing and secure showing on this issue sufficient to merit summary judgment.

In so holding, the Court is unpersuaded by plaintiffs' argument that hookless shower curtains are by nature incapable of being found generic. Plaintiffs admit that "overextension of trade dress protection can undermine restrictions in copyright and patent law that are designed to avoid monopolization of products and ideas." MTR at 17 (quoting *Landscape Forms*, 113 F.3d at 380). But, they argue, protecting their hookless-shower-curtain trade dress will not "risk . . . stifling competitors' efforts to market similar goods" because there are potential alternative designs for no-hook-type shower curtains. *Id.* at 17–19; *id.*, Exs. 1–7. While the Court found that evidence persuasive in finding that plaintiff's trade dress was nonfunctional, *see supra* p. 7, that evidence does not necessarily denote plaintiffs' hookless shower curtain as not generic. *See Jeffrey Milstein, Inc.*, 58 F.3d at 32 ("[N]either does trade dress law protect an idea, a concept, or a generalized type of appearance."). Most of the patents and proposed alternative

16

hookless shower curtains to which plaintiffs point do not appear to have ever been sold; and as to the one such product which demonstrably has been on the market, plaintiffs admit that it is a "factual question" whether that product has been a "success."  Dkt. 308 ("MTR Reply") at 7.  On the sparse record at hand, neither party has convincingly established whether plaintiffs' hookless shower curtain is or is not generic.  That issue, too, will be resolved at trial.

### CONCLUSION

For the foregoing reasons, the Court denies plaintiffs' and defendants' summary judgment motions on trade dress infringement.  The Court does, however, clarify that, based on the rulings in its April 16, 2020 decision, plaintiffs are entitled to summary judgment on their claims of infringement of their three utility patents.

Barring settlement, the remaining claims in this long-running case will now proceed to trial.  The Court directs the parties to promptly meet and confer in an attempt to resolve their differences.  The Court directs counsel to submit a joint letter, due January 19, 2021, (1) stating whether they have been able to resolve this matter, and (2) if not, proposing a date no later than February 19, 2021 for the submission of the parties' joint pretrial order and the accompanying required pretrial submissions, as set out in the Court's Individual Rules.

The Clerk of Court is respectfully directed to terminate the motion pending at docket 303.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: January 4, 2021
        New York, New York

17