UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FOCUS PRODUCTS GROUP INTERNATIONAL, LLC, ZAHNER DESIGN GROUP, LTD., AND HOOKLESS SYSTEMS OF NORTH AMERICA, INC., SF HOME DÉCOR, LLC, SURE FIT HOME DÉCOR HOLDINGS CORP., and SURE FIT HOME PRODUCTS, LLC, | Civil Action No.: <br><br> 1:15-cv-10154 (PAE)(SDA) |
| Plaintiffs, | (JURY TRIAL DEMANDED) |
| v. | |
| KARTRI SALES COMPANY, INC. AND MARQUIS MILLS, INTERNATIONAL, INC. | |
| Defendants. | |

## PLAINTIFFS' [PROPOSED] JURY INSTRUCTIONS

Plaintiffs Focus Products Group International, LLC, SF Home Décor, LLC, Sure Fit Home Décor Holdings Corp., and Sure Fit Home Products, LLC (collectively, "Focus"), Zahner Design Group, Ltd. ("ZDG"), and Hookless Systems of North America, Inc. (HSNA) (collectively all "Plaintiffs") by and through their attorneys of record, in accordance with the Court's Scheduling Order and the Individual Rules of Hon. Judge Paul A. Engelmayer, hereby propose the following jury instructions in this matter.

# TABLE OF CONTENTS

1.      INSTRUCTIONS ON THE TRIAL PROCESS ...........................................................1
1.1     Duty Of Jury (Court Reads And Provides Written Instructions) ...........................................1
1.2     Duty Of Jury (Court Reads Instructions Only) ....................................................................1
1.3     Duty Of Jury (Court Reads And Provides Written Instructions At End Of Case)................2
1.4     Claims And Defenses (Preliminary Summary at Opening of Case) ....................................3
1.5     The Nature of the Action and the Parties ............................................................................3
1.6     United States Patents.........................................................................................................4
1.7     Patent Litigation.................................................................................................................5
1.8     Patent Contentions and Issues...........................................................................................5
1.9     Trademark, Trade Dress, and Unfair Competition..............................................................5
1.10    Trademark, Trade Dress, and Unfair Competition Claims and Defenses............................7
1.11    Burden Of Proof.................................................................................................................8
1.12    Burden Of Proof – Preponderance Of Evidence .................................................................8
1.13    Burden Of Proof – Clear and Convincing Evidence ...........................................................8
1.14    Two Or More Parties—Different Legal Rights ...................................................................9
1.15    What Is Evidence ...............................................................................................................9
1.16    What Is Not Evidence ........................................................................................................9
1.17    Evidence For Limited Purpose .........................................................................................10
1.18    Direct And Circumstantial Evidence ................................................................................10
1.19    Ruling On Objections........................................................................................................11
1.20    Credibility Of Witnesses ..................................................................................................11
1.21    Conduct Of The Jury ........................................................................................................12
1.22    No Transcript Available To Jury.......................................................................................13
1.23    Bench Conferences And Recesses ....................................................................................13
1.24    Outline Of Trial................................................................................................................14

2.      INSTRUCTIONS ON TYPES OF EVIDENCE.....................................................14
2.1     Stipulated Testimony (If Applicable)................................................................................14
2.2     Stipulations Of Fact (If Applicable) .................................................................................14
2.3     Judicial Notice..................................................................................................................14
2.4     Deposition In Lieu Of Live Testimony .............................................................................15
2.5     Impeachment Evidence—Witness ....................................................................................15

i

2.6     Use Of Interrogatories Of A Party ................................................................15

2.7     Expert Opinion ...........................................................................................16

2.8     Charts And Summaries Not Received In Evidence .........................................16

2.9     Charts And Summaries In Evidence ..............................................................16

2.10    Evidence In Electronic Format .....................................................................17


3.      INSTRUCTIONS CONCERNING DELIBERATIONS ....................................18

3.1     Deliberation And Verdict— Introduction ......................................................18

3.2     Duty To Deliberate .....................................................................................19

3.3     Communication With Court ..........................................................................20

3.4     Return Of Verdict .......................................................................................20

3.5     Unanimous Verdict .....................................................................................21

3.6     Court Has No Opinion .................................................................................22

3.7     Additional Instructions Of Law During Deliberations (If Applicable)................22

3.8     Deadlocked Jury During Deliberations (If Applicable) ...................................22


4.      INSTRUCTIONS CONCERNING APPLICABLE LAW ...................................23

4.1     Preliminary Instructions ..............................................................................23

4.2     Trademark Infringement and Unfair Competition – Definition of Trademarks and Trade
        Dress .........................................................................................................24

4.3     Trademark Infringement and Unfair Competition – Trademarks in Suit ............28

4.4     Trademark Claims – Federal Elements and Burden of Proof (15 U.S.C. § 1114(1)) –
        HOOKLESS® Mark .....................................................................................29

4.5     Trademark Claims – Federal Elements and Burden of Proof (15 U.S.C. § 1114(1)) – EZ-
        ON® Mark ..................................................................................................29

4.6     Trademark Claims—Federal Elements and Burden of Proof (15 U.S.C. § 1125(a)(1)) --
        Plaintiffs' Trade Dress ................................................................................30

4.7     Infringement—Elements—Presumed Validity And Ownership—Registered Trademark (15
        U.S.C. §§ 1057, 1065 and 1115) .................................................................31

4.8     Trademark Claims – State Law Standard for Violation ...................................31

4.9     Trade Dress – Secondary Meaning – Federal Law .........................................32

4.10    Trade Dress – Secondary Meaning – State Law ............................................34

4.11    Trademark Claims – Genericism of Trade Dress ...........................................35

4.12    Trademark Claims – Standard for Likelihood of Confusion ............................37

4.13    Trademark Claims – Damages – Generally ...................................................39

4.14   Patent Damages – Generally ............................................................39

4.15   Patent Damages—Kinds of Damages That May Be Recovered ...........................40

4.16   Lost Profits—Panduit Factors ....................................................40

4.17   Lost Profits—Panduit Factors—Demand ...................................42

4.18   Lost Profits—Panduit Factors—Market Share ..............................42

4.19   Lost Profits—Panduit Factors—Acceptable Non- Infringing Substitutes .......................43

4.20   Lost Profits—Panduit Factors—Capacity ...................................43

4.21   Lost Profits—Panduit Factors—Amount of Profit—Incremental Income Approach.........43

4.22   Reasonable Royalty — Generally ................................................44

4.23   Reasonable Royalty Definition—Using the "Hypothetical Negotiation" Method .............44

4.24   Reasonable Royalty—Relevant Factors Using the Hypothetical Negotiation Method .......45

4.25   Reasonable Royalty—Timing ......................................................47

4.26   Reasonable Royalty—Use of Comparable  License Agreements .....................47

4.27   Reasonable Royalty—Multiple Patents ......................................48

4.28   Reasonable Royalty—Royalty Base .........................................48

4.29   Reasonable Royalty—Smallest Salable Patent Practicing Unit and Entire Market Value Rule ..............................................................51

4.30   Doubts Resolved Against Infringer.............................................52

4.31   Trademark, Trade Dress, and Unfair Competition Damages – Proof ...............52

4.32   Trademark Damages—Plaintiff's Actual Damages (15 U.S.C. § 1117(A)) .....................53

4.33   Trademark Damages—Defendants' Profits (15 U.S.C. § 1117(a)) ..................53

4.34   Willful Infringement ..............................................................54

4.35   Punitive Damages...................................................................56

**COVER SHEET**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FOCUS PRODUCTS GROUP INTERNATIONAL, LLC, ZAHNER DESIGN GROUP, LTD., AND HOOKLESS SYSTEMS OF NORTH AMERICA, INC., SF HOME DÉCOR, LLC, SURE FIT HOME DÉCOR HOLDINGS CORP., and SURE FIT HOME PRODUCTS, LLC,<br><br>          Plaintiffs,<br><br>v.<br>KARTRI SALES COMPANY, INC. AND MARQUIS MILLS, INTERNATIONAL, INC.<br><br>          Defendants. | Civil Action No.:<br>1:15-cv-10154 (PAE)(SDA)<br><br>(JURY TRIAL DEMANDED) |

**JURY INSTRUCTIONS**

**DATED:** _____

_____
**UNITED STATES DISTRICT JUDGE**
**HON. PAUL A. ENGELMAYER**

iv

**1.     INSTRUCTIONS ON THE TRIAL PROCESS**

**1.1     Duty Of Jury (Court Reads And Provides Written Instructions)**

Ladies and gentlemen: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. You will be allowed to keep this set throughout the trial to which to refer. This set of instructions is not to be taken home and must remain in the jury room when you leave in the evenings. At the end of the trial, I will give you a final set of instructions. It is the final set of instructions which will govern your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 1.1A.

**1.2     Duty Of Jury (Court Reads Instructions Only)**

Ladies and gentlemen: You are now the jury in this case. It is my duty to instruct you on the law.

1

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 1.1B.

### 1.3    Duty Of Jury (Court Reads And Provides Written Instructions At End Of Case)

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you as to the law of the case.

[Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.]

or

[A copy of these instructions will be sent with you to the jury room when you deliberate.]

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions,

prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 1.1C.

### 1.4      Claims And Defenses (Preliminary Summary at Opening of Case)

Members of the jury:

Now that you have been sworn, I have the following preliminary instructions for your guidance on the nature of the case and on your role as jurors.

Also, to help you follow the evidence, I will give you a brief summary of the case and the positions of the parties:

### 1.5      The Nature of the Action and the Parties

This is a patent, trademark, and unfair competition case.  The issues involved in this case relate to shower curtains.

The Plaintiffs are the parties who are suing.  They are the Zahner Design Group Ltd., Hookless Systems of North America, Inc., and a group of companies known as Sure-Fit.  One of the Sure-Fit companies was previously known as Focus Products Group International, LLC, so you may here that name as well.

The Defendants are the parties who are being sued.  They are Kartri Sales Company, Inc., and Marquis Mills International, Inc.

Plaintiff Zahner Design Group, Ltd., which is also known as ZDG, is the owner of a number of patents, which are identified by the Patent Office number.  For ease of references, the

patents may be referred to as "the Plaintiffs' patents" or as the patents-in-suit. ZDG licenses the patents-in-suit to its affiliated company Hookless Systems of North America, Inc., which is also known as HSNA. HSNA has licensed the patents-in-suit to Sure-Fit, which includes the company previously known as Focus.

Kartri and Marquis have both been accused of selling shower curtains that infringe the Plaintiffs' patents. They have also been accused of infringing the Plaintiffs' trademark rights, which include a form of trademark called trade dress, and have been accused of engaging in related acts in violation of the federal and state laws of unfair competition. Kartri sells the accused shower curtains to customers in the U.S., and Marquis supplies some of the accused shower curtains, which it sells to Kartri for further resale.

### 1.6    United States Patents

Patents are granted by the United States Patent and Trademark Office (sometimes called the "PTO" or "USPTO"). A patent gives the owner the right to exclude others from making, using, offering to sell, or selling the claimed invention within the United States or importing it into the United States. During the trial, the parties may offer testimony to familiarize you with how one obtains a patent from the PTO, but I will give you a general background here.

To obtain a patent, an application for a patent must be filed with the PTO by an applicant. The application includes a specification, which has a written description of the invention, how it works, and how to make and use it so as to enable others skilled in the art to do so. The specification concludes with one or more numbered sentences or paragraphs. These are called the "claims" of the patent. The purpose of the claims is to define the scope of the patent owner's exclusive rights, in other words, what the patent owner can stop others from making. If

the claims are issued by the Patent Office, as was the case here, then the patent owner can enforce the claims in federal court.

### 1.7     Patent Litigation

Someone is said to be infringing a claim of a patent when they import, make, use, offer to sell, or sell the product defined by the claims, without permission from the patent owner.  A patent owner who believes someone is infringing the exclusive rights of a patent may bring a lawsuit, like this one, to attempt to stop the alleged infringing acts or to recover damages, which generally means money paid by the infringer to the patent owner to compensate for the harm caused by the infringement.  The patent owner must prove infringement of the claims of the patent. The patent owner must also prove the amount of damages the patent owner is entitled to receive from the infringer as compensation for the infringing acts.

### 1.8     Patent Contentions and Issues

In this case, it was already determined in prior proceedings that the Defendants have infringed three of the Plaintiffs' patents.  It will be for you to determine the amount of the Plaintiffs' damages due to the Defendants' infringement.  It will also be for you to determine whether the Defendants willfully infringed those patents.

### 1.9     Trademark, Trade Dress, and Unfair Competition

This case also involves issues involving trademarks and unfair competition.

The Plaintiffs in this case also assert that the Defendants have infringed the Plaintiffs' trademark rights, including their trade dress rights, and that the Defendants have engaged in acts violating the federal and state laws of unfair competition.  The defendant denies infringing any valid trademark rights or unfairly competing.  To help you understand the evidence that will be presented in this case, I will explain some of the legal terms you will hear during this trial.

5

A trademark is a word, name, symbol, or device, or any combination of these items that indicates the source of goods.  There is also a type of trademark known as trade dress.  Trade dress is a trademark in the visual appearance of a product and/or its packaging.

The owner or licensee of a trademark has the right to exclude others from using that trademark or a similar mark that is likely to cause confusion in the marketplace. The main function of a trademark is to identify and distinguish goods or services as the product of a particular manufacturer or merchant and to protect its goodwill.

A trademark may be registered with the U.S. Patent and Trademark Office, but it does not have to be registered for a party to have trademark rights.  Rights in a trademark are obtained only through commercial use of the mark.  A person acquires the right to exclude others from using the same mark or a similar mark that is likely to cause confusion in the marketplace by being the first to use it in the marketplace, or by using it before the alleged infringer.

The mark can be used in commerce by the party directly, or by its licensees, i.e., parties that it licenses the mark to.  If the mark is used by a licensee, the licensee's use creates rights in favor of the licensor.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 15.1.  *See also,* 15 U.S.C. §1055 (use of a mark by related companies shall inure to the benefit of the registrant or application); *Haw.-Pacific Apparel Grp., Inc. v. Cleveland Browns Football Co. LLC*, 418 F. Supp. 2d 501, 506 (S.D.N.Y. 2006) ("Use of the mark by a licensee to identify or distinguish goods is sufficient to create enforceable rights in favor of the licensor.  *See,* 2 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 18.46 (4th ed. 2004) ("Ownership rights in a trademark . . . can be acquired and maintained through the use of the mark by a controlled licensee even when the first and only use of the mark was made . . . by the licensee.")); *Rosehoff, Ltd. v. Truscott Terrace Holdings LLC*, No. 14-CV-277S, 2020 U.S. Dist. LEXIS 54064, at *20 (W.D.N.Y. Mar. 27, 2020) ("The use-in-commerce requirement can be met by a licensee using a mark on behalf of a licensor.")

### 1.10    Trademark, Trade Dress, and Unfair Competition Claims and Defenses

Plaintiffs own numerous trademarks to the brand HOOKLESS®.  In prior proceedings, it has already been determined that the Plaintiffs own rights to the HOOKLESS® trademark and that the trademark is valid.  Because HOOKLESS® is a trademark of the Plaintiffs, it may only be used with their authorization.

Plaintiffs also claim that they own trade dress rights to the visual appearance of shower curtains that they have created.  They also claim that the Defendants have engaged in trademark infringement and unfair infringed by selling shower curtains sufficiently similar to Plaintiffs' trade dress and trademarks to pose a likelihood of confusion in the marketplace.  Plaintiffs license one of the versions of their shower curtain rings to a company called Carnation; and Carnation sells the licensed products under the HOOKLESS® trademark and under the EZ-ON® trademark, with Plaintiffs' permission and approval.  Plaintiffs claim that Kartri has engaged in trademark infringement and unfair competition by the following acts individually and in combination.  (1) Kartri's sales of products similar to Plaintiffs' shower curtain trade dress.  (2) Kartri's representations to customers that Kartri has a HOOKLESS® brand product or a version of the HOOKLESS® product.  And, (3) Kartri's use of the name EZ-HANG on Kartri's product, which Plaintiffs alleges is meant to cause confusion with the registered EZ-ON® trademark used by Plaintiffs' licensee Carnation on Plaintiffs' licensed products.  Plaintiffs also claim that Defendant Marquis has engaged in trademark infringement and unfair competition by supplying the accused product to Kartri.

Defendants deny these allegations of trademark infringement and unfair competition.  They claim that the Plaintiffs do not have any valid trade dress rights to the appearance of Plaintiffs' HOOKLESS® products.  They claim that any use by Kartri of the trademark

HOOKLESS® is not an infringement of Plaintiffs' rights. And they claim that Kartri's use of the EZ-HANG mark does not cause any likelihood of confusion with the products sold by Plaintiffs' licensee Carnation under the EZ-ON® mark.

AUTHORITY: Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 1.2.

### 1.11    Burden Of Proof

The Plaintiffs have the burden of proving their claims, and the Defendants have the burden of proving any of their counterclaims and affirmative defenses.

AUTHORITY: Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 1.5.

### 1.12    Burden Of Proof – Preponderance Of Evidence

When a party has the burden of proof on an issue by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

 You should base your decision on all of the evidence, regardless of which party presented it.

AUTHORITY: Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 1.6.

### 1.13    Burden Of Proof – Clear and Convincing Evidence

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that the factual contentions of the claim or defense are highly and substantially more likely to be true than untrue. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 1.7; *Colorado v. New Mexico*, 467 U.S. 310 (1984).

### 1.14    Two Or More Parties—Different Legal Rights

You should decide the case as to each defendant separately. Unless otherwise stated, the instructions apply to all parties.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 1.5.

### 1.15    What Is Evidence

The evidence you are to consider in deciding what the facts are consists of:

1.  the sworn testimony of any witness;

2.  the exhibits which are received into evidence; and

3.  any facts to which the lawyers have agreed.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 1.6.

### 1.16    What Is Not Evidence

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

9

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, sometimes testimony and exhibits are received only for a limited purpose; when I [give] [have given] a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 1.7.

### 1.17   Evidence For Limited Purpose

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

[The testimony [you are about to hear] [you have just heard] may be considered only for the limited purpose of [describe purpose] and for no other purpose.]

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 1.8

### 1.18   Direct And Circumstantial Evidence

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to

either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 1.9.

### 1.19    Ruling On Objections

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 1.10.

### 1.20    Credibility Of Witnesses

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

11

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 1.11.

### 1.21   Conduct Of The Jury

I will now say a few words about your conduct as jurors.

First, you are not to discuss this case with anyone, including members of your family, people involved in the trial, or anyone else; this includes discussing the case in internet chat rooms or through internet —blogs, internet bulletin boards or e-mails. Nor are you allowed to permit others to discuss the case with you. If anyone approaches you and tries to talk to you about the case, please let me know about it immediately;

Second, do not read or listen to any news stories, articles, radio, television, or online reports about the case or about anyone who has anything to do with it;

Third, do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials, and do not make any investigation about the case on your own;

Fourth, if you need to communicate with me simply give a signed note to the bailiff to give to me; and

Fifth, do not make up your mind about what the verdict should be until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence. Keep an open mind until then.

Finally, until this case is given to you for your deliberation and verdict, you are not to discuss the case with your fellow jurors.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 1.12.

### 1.22    No Transcript Available To Jury

During deliberations, you will have to make your decision based on what you recall of the evidence. You will not have a transcript of the trial. I urge you to pay close attention to the testimony as it is given.

If at any time you cannot hear or see the testimony, evidence, questions, or arguments, let me know so that I can correct the problem.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 1.13.

### 1.23    Bench Conferences And Recesses

From time to time during the trial, it became necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury was present in the courtroom, or by calling a recess. Please understand that while you were waiting, we were working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we have done what we could to keep the number and length of these conferences to a minimum. I did not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

AUTHORITY:          Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 1.18.

### 1.24   Outline Of Trial

Trials proceed in the following way:  First, each side may make an opening statement. An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.  The plaintiff may then put on rebuttal evidence, and counsel for the defendant may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.  After that, you will go to the jury room to deliberate on your verdict.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 1.19.

## 2.   INSTRUCTIONS ON TYPES OF EVIDENCE

### 2.1   Stipulated Testimony (If Applicable)

The parties have agreed what [witness]'s testimony would be if called as a witness. You should consider that testimony in the same way as if it had been given here in court.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 2.1.

### 2.2   Stipulations Of Fact (If Applicable)

The parties have agreed to certain facts that I will read to you. You should therefore treat these facts as having been proved.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 2.2.

### 2.3   Judicial Notice

The court has decided to accept as proved the fact that [state fact], even though no evidence has been introduced on the subject. You must accept this fact as true.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 2.3.

**2.4     Deposition In Lieu Of Live Testimony**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

If testimony is read into the record, do not place any significance on the behavior or tone of voice of any person reading the questions or answers from the transcript.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 2.4.

**2.5     Impeachment Evidence—Witness**

The evidence that a witness e.g., has been convicted of a crime, lied under oath on a prior occasion, etc. may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 2.8.

**2.6     Use Of Interrogatories Of A Party**

Evidence [will now be] [was] presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers [have been] [were]

15

given in writing and under oath, before the actual trial, in response to questions that were

submitted in writing under established court procedures. You should consider the answers,

insofar as possible, in the same way as if they were made from the witness stand.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 2.10.

### 2.7     Expert Opinion

Some witnesses, because of education or experience, are permitted to state opinions and

the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or

reject it, and give it as much weight as you think it deserves, considering the witness's education

and experience, the reasons given for the opinion, and all the other evidence in the case.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 2.11; Fed. R. Evid. 602, 701–05.

### 2.8     Charts And Summaries Not Received In Evidence

Certain charts and summaries not received in evidence [may be] [have been] shown to

you in order to help explain the contents of books, records, documents, or other evidence in the

case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the

facts or figures shown by the evidence in the case, you should disregard these charts and

summaries and determine the facts from the underlying evidence.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 2.12.

### 2.9     Charts And Summaries In Evidence

Certain charts and summaries have been received into evidence to illustrate information

brought out in the trial. Charts and summaries are only as good as the underlying evidence that

supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 2.13.

### 2.10    Evidence In Electronic Format

Those exhibits capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer, and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits received in evidence. (Alternatively, you may request a paper copy of an exhibit received in evidence by sending a note through the bailiff.) If you need additional equipment or supplies, you may make a request by sending a note.

In the event of any technical problem, or if you have questions about how to operate the computer or other equipment, you may send a note to the bailiff, signed by your foreperson or by one or more members of the jury. Be as brief as possible in describing the problem and do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room [with [the clerk] [the bailiff] [me] present for the sole purpose of assuring that the only matter that is discussed is the technical problem.] When the court technician or any non-juror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any non-juror other than to describe the technical problem or to seek information about operation of equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to make sure that the computer does not permit access to the Internet or to any —outside‖ website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform me immediately and refrain from viewing such materials. Do not remove the computer or any electronic data [disk] from the jury room, and do not copy any such data.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 2.14.

## 3.     INSTRUCTIONS CONCERNING DELIBERATIONS

### 3.1     Deliberation And Verdict— Introduction

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is juror No. 1.

One more thing about messages. Do not ever write down or tell anyone outside the jury how you stand on your votes. For example, do not write down or tell anyone outside the jury that

you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

AUTHORITY:        Uniform Jury Instructions For Patent Cases in the United States District Court for the District of Delaware, March 1993, Instruction 7.1.

### 3.2    Duty To Deliberate

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.

Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that -- your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds. Listen carefully to what the other jurors have to say, and then decide for yourself.

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court. You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 3.1.

### 3.3     Communication With Court

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 3.2.

### 3.4     Return Of Verdict

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign, and date it, and advise the court that you are ready to return to the courtroom.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 3.3.

### 3.5     Unanimous Verdict

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges -- judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form. You will then return to the courtroom and your foreperson will give your verdict.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

AUTHORITY: Uniform Jury Instructions For Patent Cases in the United States District Court for the District of Delaware, March 1993, Instruction 7.2.

### 3.6   Court Has No Opinion

Let me finish up by repeating something that I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way.

You must decide the case yourselves based on the evidence presented.

AUTHORITY:   Uniform Jury Instructions For Patent Cases in the United States District Court for the District of Delaware, March 1993, Instruction 7.4.

### 3.7   Additional Instructions Of Law During Deliberations (If Applicable)

At this point I will give you a further instruction. By giving a further instruction at this time, I do not mean to emphasize this instruction over any other instruction. You are not to attach undue importance to the fact that this was read separately to you. You shall consider this instruction together with all of the other instructions that were given to you.

[Insert text of new instruction.]

You will now retire to the jury room and continue your deliberations.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 3.4.

### 3.8   Deadlocked Jury During Deliberations (If Applicable)

Members of the jury, you have advised that you have been unable to agree upon a verdict in this case. I have decided to suggest a few thoughts to you.

As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict if each of you can do so without violating your individual judgment and conscience. Each of you must decide the case for yourself, but only after you consider the evidence impartially with your fellow jurors. During your deliberations, you should not hesitate to reexamine your own views and change your opinion if you become persuaded that it is wrong. However, you should not change an honest belief as to the weight or effect of the

evidence solely because of the opinions of your fellow jurors or for the mere purpose of returning a verdict.

All of you are equally honest and conscientious jurors who have heard the same evidence. All of you share an equal desire to arrive at a verdict. Each of you should ask yourself whether you should question the correctness of your present position.

I remind you that in your deliberations you are to consider the instructions I have given you as a whole. You should not single out any part of any instruction, including this one, and ignore others. They are all equally important.

You may now retire and continue your deliberations.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 3.5.

## 4.       INSTRUCTIONS CONCERNING APPLICABLE LAW

I will now instruct you as to the issues that you are to consider, and as to the law which is applicable to your deliberations.

### 4.1       Preliminary Instructions

As you have heard, the Plaintiffs have brought patent infringement claims, and claims of federal and state trademark infringement and unfair competition.

As I will explain in more detail shortly, on the trademark infringement and unfair competition causes of action, it will be for you to determine whether or not the Defendants have infringed Plaintiffs' rights, and if so, the appropriate damages.

With respect to the patent claims, as I explained at the start of the trial, it was already determined in prior proceedings that the Defendants' shower curtains infringe three patents owned by the Plaintiffs.  As a result, you must now determine the amount of damages to be

awarded to the Plaintiffs for Defendants' patent infringement. You must also determine whether the Defendants willfully infringed those patents.

Plaintiffs have the burden of proof on their claims by a preponderance of evidence, i.e., by a showing that their claims are more likely than not.  Defendants have the burden of proof on any of their defenses by a preponderance of the evidence, i.e. by a showing that their defenses are more likely than not.

> [Note:  Should Defendants attempt to challenge the validity of the EZ-ON® mark, and should such challenge be allowed by the Court, such a defense requires a showing by clear and convincing evidence.]

I will next explain the legal requirements of each of your determinations.

### 4.2    Trademark Infringement and Unfair Competition – Definition of Trademarks and Trade Dress

The Plaintiffs have asserted that the Defendants have infringed the Plaintiffs' trademark rights, including their trade dress rights, and that the Defendants have engaged in acts violating the federal and state laws of unfair competition.  The Defendants have denied infringing any valid trademark rights or unfairly competing.  I will review the meaning of these legal terms that you have heard during the trial.

A trademark is a word, name, symbol, or device, or any combination of these items that indicates the source of goods.

There is also a type of trademark which is known as trade dress.  Trade dress is a trademark in the visual appearance of a product and/or its packaging.  It is the overall design and appearance that make the product and/or its packaging identifiable to consumers.  It involves the total image of a product and may include features such as size, shape, color or color combinations, texture, or graphics.

24

The owner or licensee of a trademark has the right to exclude others from using its trademark or trade dress, or using a similar mark that is likely to cause confusion in the marketplace.  The main function of a trademark is to identify and distinguish goods or services as the product of a particular manufacturer or merchant and to protect its goodwill.

A trademark may be registered with the U.S. Patent and Trademark Office, but it does not have to be registered for a party to have trademark rights.  Rights in a trademark are obtained only through commercial use of the mark.  A person acquires the right to exclude others from using the same mark, or a similar mark, that is likely to cause confusion in the marketplace, by the person being the first to use it in the marketplace, or by using it before the alleged infringer.

The mark can be used in commerce by the party directly, or by its licensees, i.e., by parties that it licenses the mark to.  Here, the Plaintiffs base their claim of trademark and trade dress rights on their own direct use, and on use by their licensees, such as Carnation.

<u>Facts and Contentions Regarding Infringement and Unfair Competition Claims</u>

Plaintiffs own numerous trademarks to the brand HOOKLESS®.  In prior proceedings, it has already been determined that the Plaintiffs own rights to the HOOKLESS® trademark and that the trademark is valid.  Because HOOKLESS® is a trademark of the Plaintiffs, it may only be used with the Plaintiffs' authorization.

Plaintiffs claim that they own trade dress rights to the visual appearance of the shower curtains that they and their licensees have sold.  These include shower curtains that have been sold under the HOOKLESS® brand, and under related brands, such as the EZ-ON® brand used by their licensee Carnation.  Plaintiffs' shower curtains include rings that the Plaintiffs have designed.  Defendants claim that the Plaintiffs do not own trade dress rights to the design of their shower curtains or rings.

Plaintiffs also claim that the Defendants have engaged in trademark infringement and unfair infringed by selling shower curtains sufficiently similar to Plaintiffs' trade dress and trademarks to pose a likelihood of confusion in the marketplace. Plaintiffs license one of the versions of their shower curtain rings to Carnation; and Carnation sells the licensed products under the HOOKLESS® trademark and under the EZ-ON® trademark, with Plaintiffs' permission and approval. Plaintiffs claim that Kartri has engaged in trademark infringement and unfair competition by the following acts individually and in combination. (1) Kartri's sales of products similar to Plaintiffs' shower curtain trade dress. (2) Kartri's representations to customers that Kartri has a HOOKLESS® product or a version of the HOOKLESS® product. And, (3) Kartri's use of the name EZ-HANG on Kartri's product, which Plaintiffs alleges is meant to cause confusion with the registered EZ-ON® trademark used by Plaintiffs' licensee Carnation on Plaintiffs' licensed products. Plaintiffs also claim that Defendant Marquis has engaged in trademark infringement and unfair competition by supplying the accused product to Kartri.

Defendants deny these allegations of trademark infringement and unfair competition. They claim that the Plaintiffs do not have any valid trade dress rights to the appearance of Plaintiffs' HOOKLESS® products. They claim that any use by Kartri of the trademark HOOKLESS® is not an infringement of Plaintiffs' rights. And they claim that Kartri's use of the EZ-HANG mark does not cause any likelihood of confusion with the products sold by Plaintiffs' licensee Carnation under the EZ-ON® mark.

<u>Federal Infringement and Unfair Competition Claims</u>

On the federal trademark infringement and unfair competition causes of action, it will be for you to determine four things: (1) whether or not Plaintiffs' possess valid rights to their

asserted trade dress, i.e. whether Plaintiffs' trade dress has secondary meaning or is generic; (2) whether or not Defendants have infringed any of Plaintiffs trademark or trade dress rights, or otherwise engaged in unfair competition, by (a) using Plaintiffs' shower curtain trade dress, and/or (b) using Plaintiffs' HOOKLESS® trademark, and/or (c) using a mark similar to the EZ-ON® trademark; (3) the amount of Plaintiffs' damages if Defendants have infringed or engaged in unfair competition of Plaintiffs; and, (4) whether or not Defendants have engaged in infringement and/or unfair competition that was willful.

New York State Law of Unfair Competition

Plaintiffs also claim that Defendants' actions violate the New York law of unfair competition, which is similar to, but not the same as federal law.  They claim that Defendants have unlawfully used Plaintiffs' shower curtain trade dress.  They also claim that they have unlawfully referred to their products using Plaintiffs' registered HOOKLESS® trademark. They also claim that Defendants have used the mark EZ-HANG, a mark similar to Plaintiffs' licensee Carnation's EZ-ON® mark, to further confuse purchasers between the parties' products, and/or mislead consumers into believing that there is an affiliation or connection or sponsorship between Plaintiffs and their licensees' products and Defendants' products.  They claim that Defendants' actions pose a likelihood of confusion with Plaintiffs' products and their licensees' products.

Defendants deny these allegations.  They claim that Plaintiffs do not own trade dress rights, and that there is no likelihood of confusion between Plaintiffs' and their licensee's products and Defendants' products.  Defendants also claim that their actions do not pose any likelihood of confusion with the HOOKLESS® mark, and that there is no likelihood of confusion between the EZY-HANG and EZ-ON® marks.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 15.1.  See also, 15 U.S.C. §1055 (use of a mark by related companies shall inure to the benefit of the registrant or application); *Haw.-Pacific Apparel Grp., Inc. v. Cleveland Browns Football Co. LLC*, 418 F. Supp. 2d 501, 506 (S.D.N.Y. 2006) ("Use of the mark by a licensee to identify or distinguish goods is sufficient to create enforceable rights in favor of the licensor.  See, 2 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 18.46 (4th ed. 2004) ("Ownership rights in a trademark . . . can be acquired and maintained through the use of the mark by a controlled licensee even when the first and only use of the mark was made . . . by the licensee.")); *Rosehoff, Ltd. v. Truscott Terrace Holdings LLC*, No. 14-CV-277S, 2020 U.S. Dist. LEXIS 54064, at *20 (W.D.N.Y. Mar. 27, 2020) ("The use-in-commerce requirement can be met by a licensee using a mark on behalf of a licensor.")

### 4.3    Trademark Infringement and Unfair Competition – Trademarks in Suit

In prior proceedings it was already determined that the Plaintiffs have provided a precise description of their trade dress.  Specifically, Plaintiffs' claimed trade dress is to the combination and arrangement of the following elements:

(a)    a shower curtain wherein the curtain lacks any hooks protruding above the upper edge of the curtain, so that Plaintiffs' shower curtain provides the visual appearance of an essentially "neat" and "orderly" upper edge;

(b)    and wherein the shower curtain has a row of rings along the upper portion of the shower curtain, those rings being attached to the material of the shower curtain such that the bottom surface of each ring (on one or both sides of the shower curtain) is essentially coplanar with the material of the shower curtain, also providing an essentially "neat" and "orderly" appearance;

(c)    wherein each ring includes a slit or gap in the ring;

(d)    and wherein the shower curtain's rings or pairs of rings, and the associated slits or gaps, are each fixed in place on the shower curtain and provide an organized and symmetrical repeating visual pattern along the top width of the shower curtain.

Plaintiffs claim that they have rights in this trade dress via their own sales of products incorporating this description of trade dress, and via the sales of their licensees, including Carnation.  Defendants contend that the Plaintiffs do not own such trade dress rights.

AUTHORITY:  *Cartier, Inc. v. Sardell Jewelry, Inc.,* 294 F. App'x 615, 617 (2d Cir. 2008) (summary order) (A product's trade dress encompasses the overall design and

appearance that make the product identifiable to consumers."). *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 75 (2d Cir. 1985) (It "involves the total image of a product and may include features such as size, shape, color or color combinations, texture, [or] graphics.").

### 4.4    Trademark Claims – Federal Elements and Burden of Proof (15 U.S.C. § 1114(1)) – HOOKLESS® Mark

On the Plaintiffs' claim for trademark infringement of the HOOKLESS® mark, it has

already been determined that the Plaintiffs own a valid mark.  Thus, Plaintiffs now have the

burden of proving the following element against Kartri by a preponderance of the evidence:

> 1.    that Defendant Kartri used the HOOKLESS® mark without the consent of Plaintiffs in a manner that was likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods.

If you find that this element has been proved, your verdict should be for the Plaintiffs on

infringement of the HOOKLESS® mark.  If, on the other hand, you find that the Plaintiffs have

not proven this element, your verdict should be for Kartri.

This cause of action is only against Kartri; it is not asserted against Defendant Marquis.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020),

Instruction No. 15.6.

### 4.5    Trademark Claims – Federal Elements and Burden of Proof (15 U.S.C. § 1114(1)) – EZ-ON® Mark

On the Plaintiffs' claim for trademark infringement with respect to the EZ-ON® mark,

the Plaintiffs have the burden of proving each of the following elements by a preponderance of

the evidence:

> 1.    that EZ-ON® is a valid, protectable trademark;

> 2.    that the plaintiff or its licensee owns rights to the EZ-ON® as a trademark; and,

> 3.    that Kartri's used EZY-HANG, a mark similar to EZ-ON®, without the consent of the plaintiff or its licensee, in a manner that is likely to cause

confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of Defendants' goods, such as by suggesting that Kartri's products are the same as the Carnation products, or that Kartri's products were also licensed by Plaintiffs.

If you find that Plaintiffs have proven each of these elements, your verdict should be for the Plaintiffs. If, on the other hand, you find that the Plaintiffs have not proven these elements, your verdict should be for Kartri.

This cause of action is only against Kartri; it is not asserted against Defendant Marquis.

AUTHORITY: Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 15.6.

### 4.6   Trademark Claims—Federal Elements and Burden of Proof (15 U.S.C. § 1125(a)(1)) -- Plaintiffs' Trade Dress

Plaintiffs' claim for trade dress infringement is against both Defendants.

On this claim, the Plaintiffs have the burden of proving each of the following elements by a preponderance of the evidence:

1. That the Plaintiffs' shower curtain trade dress has acquired distinctiveness, i.e. that it has secondary meaning;

2. That the plaintiff owns the shower curtain trade dress from engaging in its own sales and/or its licensees' sales of products bearing the trade dress;

3. That the Defendants sold shower curtains similar to Plaintiffs' shower curtain trade dress, without the consent of the Plaintiffs, in a manner that was likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the Defendants' goods.

If you find that Plaintiffs have proven each of these elements, your verdict should be for the Plaintiffs. If, on the other hand, you find that the Plaintiffs have not proven these elements, your verdict should be for Defendants.

**4.7     Infringement—Elements—Presumed Validity And Ownership—Registered Trademark (15 U.S.C. §§ 1057, 1065 and 1115)**

A moment ago, I gave you instruction number 4.5 that requires the Plaintiffs prove by a preponderance of the evidence that the EZ-ON® trademark is valid and protectable, and that the Plaintiffs or their licensee Carnation owns the trademark.

One way for the Plaintiffs to prove this is to show that the trademark is registered.  An owner of a trademark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectability of the trademark.

Exhibit __ is a certificate of registration from the United States Patent and Trademark Office, and was submitted by the Plaintiffs as proof of the validity and protectability of the trademark.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 15.8.

**4.8     Trademark Claims – State Law Standard for Violation**

You should also consider whether Plaintiffs have shown that Defendants violated the New York law of unfair competition.  The New York law of unfair competition encompasses a broad range of conduct and typically protects the misappropriation of the results of the labor, skill, and expenditures of another.

New York law is similar to federal law, but it has a broader standard for proving secondary meaning than the federal standards.  Also, it has a requirement of showing bad faith, which is not a requirement for the federal claims.

In summary, it requires a showing of the following elements here:

1)     That the Plaintiffs own rights to a registered trademark, and/or have shown that their trade dress has acquired distinctiveness (secondary meaning);

31

2)      that the Defendants have used Plaintiffs trademark and/or Plaintiffs' trade dress, in a manner that was likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the Defendants' goods; and,

3)      that the Defendants' actions were in bad faith.

If you find that Plaintiffs have proven each of these elements, your verdict should be for the Plaintiffs.  If, on the other hand, you find that the Plaintiffs have not proven these elements, your verdict should be for Defendants.

AUTHORITY:  *Dardashtian v. David Gitman*, No. 17-CV-4327 (LLS) (RWL), 2021 U.S. Dist. LEXIS 29764, at *67-68 (S.D.N.Y. Feb. 16, 2021).

### 4.9    Trade Dress – Secondary Meaning – Federal Law

For the trade dress aspect of Plaintiffs' claims, you must consider whether Plaintiffs' trade dress has acquired distinctiveness, or market recognition among prospective purchasers. This market recognition or acquired distinctiveness of the trade dress is also called "secondary meaning."

Secondary meaning refers to the fact that that in the minds of the public, the primary significance of the mark is to identify the source of the product rather than the product itself. Another way of saying this is that the primary significance of the mark in the minds of the consuming public is not the product but the producer.  This may be an anonymous producer, since consumers often buy goods without knowing the personal identity or actual name of the manufacturer.  Secondary meaning is also referred to as acquired distinctiveness.

There are six factors that are considered under federal law to determine whether secondary meaning has attached to a product's trade dress.  They are as follows: (1) advertising expenditures; (2) consumer studies linking the mark to a source; (3) unsolicited media coverage

of the product; (4) sales success; (5) attempts to plagiarize the mark; and, (6) length and exclusivity of the mark's use.

The first factor, advertising expenditures, relates to the amounts paid by Plaintiffs, and their licensees, to advertise and promote their trademarks and trade dress, and any efforts by Plaintiffs to advertise and popularize their trademarks and trade dress.  It can also include expenditures by others on Plaintiffs' behalf, such as rebates given by the Plaintiffs to customers, for the customers to engage in advertising or promotion.

The second factor relates to whether any consumer studies or surveys have been conducted, such a survey linking the trademark or trade dress to recognition of its source.  A survey can be conducted by a Plaintiff but is not mandatory.

The third factor is whether the Plaintiffs' products have been the subject of unsolicited media coverage, such as news articles, magazine articles, or so forth, whether in print and/or online.

The fourth factor, sales success, looks at how commercially successful the products have been.

The fifth factor, attempts to plagiarize, looks at whether the Defendants and/or third parties have tried to copy or imitate the Plaintiffs' trade dress.  A showing of copying is not required for there to be secondary meaning.  However, a finding that the Defendants or others had intentionally copied the plaintiff's trade dress can be persuasive, if not conclusive, evidence of consumer recognition and good will, i.e. that there was secondary meaning and that others tried to benefit from it.

The sixth factor, length and exclusivity of the mark's use looks at how long the trade dress has been in use.  It also looks at whether it has been exclusively used by Plaintiffs and their

licensees.  For example, enforcement actions to stop others from using the appearance set forth

in the trade dress tends to show that there is exclusivity of use, while use by others without

protest or action by the Plaintiffs tends to show a lack of exclusivity.

These factors are all assessed as of the date that the Defendants commenced their

infringement.

In assessing the existence of secondary meaning, no single factor is determinative, and

every element need not be proved.  Rather, you should assess the totality of the evidence.

AUTHORITY:  *Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 F. App'x 615, 618 (2d Cir.
2008) (summary order). *Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208, 217 (2d Cir. 1985)
(""In assessing the existence of secondary meaning, no 'single factor is  determinative,' and
every element need not be proved."); *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 78 (2d Cir.
1985).  Surveys not mandatory for a finding of secondary meaning:  *See e.g., Centaur
Communs., Ltd. v. A/S/M Communs., Inc.*, 830 F.2d 1217, 1224 (2d Cir. 1987) (survey evidence
inconclusive, but secondary meaning still found without it); *LeSportsac, Inc. v. K Mart Corp.*,
754 F.2d 71, 78 (2d Cir. 1985) (sufficient evidence of secondary meaning for a preliminary
injunction even without a survey).  *See also, PAF S.r.l. v. Lisa Lighting Co.*, 712 F. Supp. 394,
406 (S.D.N.Y. 1989); *Shen Mfg. Co. v. Suncrest Mills, Inc.*, 673 F. Supp. 1199, 1204 (S.D.N.Y.
1987) (both finding secondary meaning without surveys).  Plagiarism:  *20th Century Wear,* 815
F.2d 8, 10 (2d Cir. 1987) ("A finding that [the defendant] had intentionally copied [the
plaintiff's] mark could also be persuasive, if not conclusive, evidence of consumer recognition
and good will."); *Centaur Communs., Ltd. v. A/S/M Communs., Inc.*, 830 F.2d 1217, 1224 (2d
Cir. 1987).  *20th Century Wear, Inc. v. Sanmark-Stardust, Inc.*, 815 F.2d 8, 10 (2d Cir. 1987)
(citation and quotations omitted) (emphasis added) ("to establish secondary meaning it must be
shown that the primary significance of the term in the minds of the consuming public is not the
product but the producer … this may be an anonymous producer, since consumers often buy
goods without knowing the personal identity or actual name of the manufacturer.")

### 4.10   Trade Dress – Secondary Meaning – State Law

Under New York state law, any of those six factors can be used as evidence of secondary

meaning.  However, state law is a broader analysis, and does not have any specific list of factors.

For example, some of the factors that have been considered under state law include:  (1)

evidence the defendant intentionally associated its goods with those of the plaintiff in the minds

of the public, such as public statements or advertising stating or implying a connection with the

plaintiff; (2) direct evidence, such as consumer surveys, that consumers of defendant's goods

believe them to be associated with the plaintiff; or (3) evidence of actual overlap between customers of the defendant and the plaintiff.  These are all possible factors, but none are required or exclusive.  Secondary meaning under New York law is determined by the totality of the evidence as to market recognition of Plaintiffs' trade dress.

AUTHORITY:  *ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 479-80 (2007) ("Whether consumers of a defendant's goods or services primarily associate such goods or services with those provided by a [] plaintiff is an inquiry that will, of necessity, vary with the facts of each case.  Accordingly, we cannot – and do not – provide an exhaustive list of the factors relevant to such an inquiry"; and listing some non-exhaustive factors under state law).

### 4.11    Trademark Claims – Genericism of Trade Dress

In contrast to Plaintiffs' claim that their trade dress has secondary meaning, the Defendants have asserted that the Plaintiffs' trade dress is generic.  Generic trademarks are not entitled to protection.

A generic mark is one that refers to the genus of which the particular product is a species. Essentially, a mark is generic if, in the mind of the purchasing public, it does not distinguish products on the basis of source but rather refers to the type of product.

Any determination of whether or not Plaintiffs' trade dress was generic must be made based on evidence as of the date that Defendants introduced their accused infringement into the market.

Based on evidence as of that date, you should assess whether the consuming public understood and commonly used the trade dress to denote a particular source or origin, even if that source is unknown (in which case the mark is descriptive and protectable), as opposed to the nature or class of the product (in which case the mark is generic and not protectable).  Thus, genericism refers to whether or not the design was likely understood as an indicator of the product's source at the time of commencement of the accused infringement.

There are various sources that can be considered to make this determination, including consumer surveys, testimony of consumers or trade professionals, uncontested usage of the mark by competitors, generic usage in newspaper and magazine articles, and generic usage by the proponent of the trademark.

Whether prospective purchasers are likely to perceive a trade dress as a design that identifies goods or services produced or sponsored by a particular party must also be assessed in the context in which it is used.  The context in which it is used can include packaging and labels, if that influences the question of how the purchasing public views the mark.

 In addition, the assessment must be made of the trade dress as a whole, not individual elements.   Although each element of a trade dress individually might not be inherently distinctive, it is the combination of elements that should be the focus of the distinctiveness inquiry.  Thus, if the overall dress is arbitrary, fanciful, or suggestive, it is distinctive despite its incorporation of generic elements.

In addition, genericism must be assessed on a market-by-market basis, i.e. in the market in which the product competes.

AUTHORITY:  *Grout Shield Distribs., LLC v. Elio E. Salvo, Inc.*, 824 F. Supp. 2d 389, 405 (E.D.N.Y. 2011) (collecting cites);  *Abercrombie & Fitch*, 537 F.2d at 9; *see also Genesee Brewing Co., Inc. v. Stroh Brewing Co*., 124 F.3d 137, 143 (2d Cir. 1997) ("A generic mark is generally a common description of goods, one that refers, or has come to be understood as referring, to the genus of which the particular product is a species." (internal quotation marks omitted)); *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 377-78 (2d Cir. 1997) (question is "whether 'because of the nature of the [design] *and the context in which it is used*, prospective purchasers are likely to perceive it as a [design] that . . . identifies goods or services produced or sponsored by" a particular party'); *Nora Bevs., Inc. v. Perrier Grp. of Am. Inc.*, 164 F.3d 736, 744-45 (2d Cir. 1998) (Any determination of whether Plaintiffs' trade dress had become generic must be made as of the date that Defendants introduced its infringement into the market); *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 32 (2d Cir. 1995) ("Although each element of a trade dress individually might not be inherently distinctive, it is the combination of elements that should be the focus of the distinctiveness inquiry.  Thus, if the overall dress is arbitrary, fanciful, or suggestive, it is distinctive despite its incorporation of generic elements."); *Landscape Forms,* 113 F.3d at 379 ("analysis will always require a look at

36

the product and the market in which it competes"); *Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*, 874 F.2d 95, 102 (2d Cir. 1989) (noting the scenario wherein "a generic term already in public use later acquires secondary meaning by virtue of a product developer's unique use, thus warranting trademark protection.").

### 4.12   Trademark Claims – Standard for Likelihood of Confusion

To determine whether there is likelihood of confusion with a trademark or trade dress, you should consider eight factors known as the *Polaroid* factors.

These factors are: (1) the strength of the plaintiff's mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will 'bridge the gap' ; (5) actual confusion; (6) the defendant's good faith in adopting its mark; (7) the quality of the Defendants' product; and (8) the sophistication of the buyers.

The first factor, the strength of the Plaintiffs' mark, refers to a mark's tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source.  Thus, whether or not there was recognition of the Plaintiffs' trade dress in the marketplace is relevant to this factor, including, the parties' respective evidence on whether there was secondary meaning or genericism of the mark.

The second factor, the degree of similarity between the two marks, compares the similarity of the Defendants' accused products to the Plaintiffs' trade dress.

The third factor, the proximity of the products, refers to whether the parties compete or do not compete in the same market.

The fourth factor, the likelihood that the Plaintiffs will 'bridge the gap' refers to the situation where the parties' products do not compete in the same market.  In that case, an assessment is made of the likelihood whether the Plaintiffs will enter into the market in the future such that its product would compete with Defendants.  An assessment is also made whether a potential purchaser would potentially believe that the Defendants' product corresponds to the

Plaintiffs, out of the belief that the Plaintiffs have already bridged the gap by bringing Plaintiffs' product from another market into the market where Defendants sell.

The fifth factor, actual confusion, assesses whether potential purchasers have confused the Defendants' products with the Plaintiffs' trade dress, or were otherwise mistaken that Defendants were a source of supply for Plaintiffs' trade dress, or affiliated with or licensed by Plaintiffs.

The sixth factor is the Defendants' good faith in adopting its mark. This factor concerns whether the Defendants adopted their mark in good faith or in bad faith, i.e. with or without the intention of capitalizing on the plaintiff's reputation and goodwill, or on any confusion between their and Plaintiffs' product. If there was intentional copying, the Defendant is presumed to have intended to create a confusing similarity of appearance, and is presumed to have succeeded.

The seventh factor is the quality of the Defendants' product. This assesses whether the Plaintiffs' reputation could be tarnished by inferior merchandise of the Defendants.

The eighth factor is the sophistication of the buyers. This factor recognizes that the likelihood of confusion can depend in part on the sophistication of the relevant purchasers. It looks at whether the sophistication of the buyers, or lack thereof, will affect the likelihood of confusion of potential purchasers. It also looks at whether, if they are sophisticated, they may or may not believe that the Defendants' product is affiliated with the Plaintiffs, or is licensed by the Plaintiffs, or so forth. However, when there is a high degree of similarity between the parties goods or marks, sophistication of buyers cannot be relied on to prevent confusion.

For there to be likelihood of confusion, every factor does not have to be proven. You should consider the totality of the evidence in determining whether, overall, there is a likelihood

of confusion between Defendants' products and activities, and Plaintiffs' trademark or trade dress.

AUTHORITY: *Cadbury Bevs., Inc. v. Cott Corp.,* 73 F.3d 474, 478 (2d Cir. 1996); *Morningside Grp., Ltd. v. Morningside Capital Grp., L.L.C.*, 182 F.3d 133, 142-43 (2d Cir. 1999) ("It is clear in all events that when, as here, there is a high degree of similarity between the parties' services and marks, the sophistication of the buyers cannot be relied on to prevent confusion."); *Perfect Fit Industries, Inc., v. Acme Quilting Co., Inc*., 618 F.2d 950, 954 (2nd Cir. 1980) ("In assessing the likelihood of confusion to the public, an important factor is whether or not the second comer created the similar trade dress intentionally. If there was intentional copying the second comer will be presumed to have intended to create a confusing similarity of appearance and will be presumed to have succeeded.")

### 4.13    Trademark Claims – Damages – Generally

If you determine that either or both of the Defendants have violated Plaintiffs' federal or state law rights, then you must go on to an assessment of Plaintiffs' damages.  I will explain that shortly.

### 4.14    Patent Damages – Generally

I will now turn to patent damages.  As I previously indicated to you, in prior proceedings the Defendants have been found to infringe three of the Plaintiffs' patents.  As a result, you must award damages to the Plaintiffs for the Defendants' patent infringement.  You must also determine whether the Defendants' patent infringement was willful.

The damages awarded to the Plaintiffs for Defendants' patent infringement must be in an amount adequate to compensate the Plaintiffs for the Defendants' infringement.  The purpose of a damages award is to put the Plaintiffs in about the same financial position they would have been in if the Defendants' infringement had not happened.

The Plaintiffs must prove their patent damages by a preponderance of the evidence, which means more likely than not.

AUTHORITY:  35 U.S.C. § 284 (2004); *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2137 (2018); *Bigelow v. R.K.O. Pictures, Inc.*, 327 U.S. 251, 264 (1946); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 868–69 (Fed. Cir. 2010); *DSU Med. Corp. v.*

*JMS Co., Ltd.*, 471 F.3d 1293, 1309 (Fed. Cir. 2006); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381–82 (Fed. Cir. 2003); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544–45 (Fed. Cir. 1995); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

### 4.15   Patent Damages—Kinds of Damages That May Be Recovered

There are several kinds of damages that are available for patent infringement.

One kind of damages is lost profits, that is, the profits that Sure-Fit or Focus would have made if the Defendants had not infringed.  You may hear this referred to as the "but for" test—which means, "What profits would the Plaintiffs have made 'but for' the alleged infringement?"

Lost profits can include not only the profits the Plaintiffs' would have made on sales lost due to the infringement, but also, under certain circumstances, profits that the patentee lost from being unable to sell related or collateral products along with those lost sales or from being forced to reduce its price for its product or related or collateral products to compete.

Another kind of patent damages is a reasonable royalty. A reasonable royalty is the amount that someone wanting to use the patented inventions would have agreed to pay to the Plaintiffs, and that the Plaintiffs would have accepted to allow sales of the Defendants' shower curtains.  A reasonable royalty is the minimum amount of damages that a plaintiff can receive for an infringement.

AUTHORITY:  35 U.S.C. § 284; *Rude v. Westcott*, 130 U.S. 152, 165 (1889); *Seymour v. McCormick,* 57 U.S. 480, 490–91 (1854); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1333 (Fed. Cir. 2009); *Monsanto Co. v. McFarling,* 488 F.3d 973, 978 (Fed. Cir. 2007); *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc).

### 4.16   Lost Profits—Panduit Factors

To get lost profits as actual damages, the patent owner must demonstrate that there was a reasonable probability that, but for the infringement, it would have made the infringer's sales.

But the patent holder does not need to negate *all* possibilities that a purchaser might have bought a different product or might have foregone the purchase altogether.

The Plaintiffs have proven their lost profits if you find that the Plaintiffs have proven each of the following factors by the more likely than not standard:

1. That there was customer demand for the patented product in the market;

2. That the Plaintiffs had market share in the market, or that there was an absence of acceptable non-infringing substitutes in that market;

3. That the Plaintiffs had the manufacturing and marketing ability to make all or a part of the infringing sales actually made by the Defendants; and,

4. The amount of profit that Plaintiffs Sure Fit or Focus would have made if it were not for the Defendants' infringement.

I will now explain each of these factors.

AUTHORITY:  *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989) ("To get lost profits as actual damages, the patent owner must demonstrate that there was a reasonable probability that, but for the infringement, it would have made the infringer's sales. *Water Technologies Corp. v. Calco Ltd.*, 850 F.2d 660, 671, 7 U.S.P.Q.2D (BNA) 1097, 1106 (Fed.Cir. 1988); *Del Mar*, 836 F.2d at 1326, 5 USPQ2d at 1260; *see also Bio-Rad Laboratories v. Nicolet Instrument Corp.*, 739 F.2d 604, 616, 222 U.S.P.Q. (BNA) 654, 664 (Fed.Cir. 1984) (amount of lost profits may not be speculative). But 'the patent holder does not need to negate *all* possibilities that a purchaser might have bought a different product or might have foregone the purchase altogether.' *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 21, 223 U.S.P.Q. (BNA) 591, 598 (Fed.Cir. 1984).").  *Mor-Flo*, 883 F2d at 1587 ("we think that in these circumstances the presence or absence of acceptable noninfringing alternatives does not matter. The question then becomes whether an established market share combined with the other *Panduit* factors is sufficient to show State's loss to a reasonable probability") and at 1580 ("the foregoing discussion compels the conclusion that the district court acted well within its discretion when it awarded damages for Mor-Flo's infringing activity based on State's share of the market.").  *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1284–85 (Fed. Cir. 2017); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).

### 4.17    Lost Profits—Panduit Factors—Demand

The first factor asks whether there was demand for Plaintiffs' patented product in the market.  The Plaintiffs can prove demand for the patented product by showing significant sales of the Plaintiffs' own products in the market.

The Plaintiff also can prove demand for the patented product by showing significant sales of the Defendants' products in that market.  To use sales of the Defendants' products as proof of this demand, the Plaintiffs' products and the Defendants' products must be sufficiently similar to compete against each other in the same market or market segment.

AUTHORITY:  *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218–19 (Fed. Cir. 1993).

### 4.18    Lost Profits—Panduit Factors—Market Share

The second factor asks whether the Plaintiffs had a market share in the relevant market. If so, then the Plaintiffs may be entitled to lost profits on a portion of the Defendants' infringing sales in that market.  The burden is on the Plaintiffs to prove that it is more likely than not that their products competed in the market with the Defendants' infringing products, and that the Plaintiffs would have made a portion of the infringing sales equal to at least the Plaintiffs' share of the market but for the Defendants' infringement.

It is not necessary for the Plaintiffs to prove that the Plaintiffs and the Defendants were the only two suppliers in the market for the Plaintiffs to demonstrate entitlement to lost profits.

AUTHORITY:  *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009); *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377–78 (Fed. Cir. 2003); *Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353–57 (Fed. Cir. 2001); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214 (Fed. Cir. 1993); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577–78 (Fed. Cir. 1989).

### 4.19    Lost Profits—Panduit Factors—Acceptable Non-Infringing Substitutes

For the second factor, instead of showing market share, the Plaintiffs may show an

absence of acceptable non-infringing substitutes for the Plaintiffs' products in the marketplace.

AUTHORITY:  *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1331–32 (Fed. Cir. 2009); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Standard Havens Prods., Inc. v. Gencor Indus.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991); *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 926 F.2d 1161, 1166 (Fed. Cir. 1991).

### 4.20    Lost Profits—Panduit Factors—Capacity

The third factor is called capacity.  It asks whether Plaintiffs had the ability to

manufacture and sell the additional products needed to cover the number of sales made by the

Defendants.  The Plaintiffs can do this by showing that they, or someone working with them,

could have supplied the number of products sold by Defendants to customers.

AUTHORITY:  *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1293 (Fed. Cir. 2007); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997); *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 825 (Fed. Cir. 1989); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 554 (Fed. Cir. 1984).

### 4.21    Lost Profits—Panduit Factors—Amount of Profit—Incremental Income Approach

The fourth factor is a calculation of Plaintiffs' profits.  Plaintiffs may calculate the

amount of their lost profits by calculating the revenues that they would have made on the sales

lost to the Defendants, and subtracting from that amount any costs or expenses that the Plaintiffs

would have had to pay to make the lost sales.  The amount of Plaintiffs' lost profits cannot be

speculative, but Plaintiffs need not prove them with unerring certainty.

AUTHORITY:  *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1482–83 (Fed. Cir. 1990); *King Instrument Corp. v. Otari*, 767 F.2d 853, 863–64 (Fed. Cir. 1985); *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22 (Fed. Cir. 1984); *Bio-Rad Labs., Inc. v. Nicolet Inst. Corp.*, 739 F.2d 604, 616–17 (Fed. Cir. 1984); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

### 4.22   Reasonable Royalty — Generally

Another measure of damages is called a reasonable royalty.  This is a percentage of the Defendants' revenues.  The percentage is often called the royalty rate.

If you find that the Plaintiffs have not proven its claim for lost profits, then you must, at a minimum, award the Plaintiffs a reasonable royalty on each of the sales made by the Defendants.

In addition, even if you find that the Plaintiffs have proven that they had lost profits corresponding the amount of their market share, then you must still award the Plaintiffs a reasonable royalty for any additional sales by the Defendants beyond the amount of Plaintiffs' market share.

In other words, you must award the Plaintiffs a reasonable royalty on any and all infringing sales for which you have not already awarded lost-profit damages.

AUTHORITY:  35 U.S.C. § 284; *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977–79 (Fed. Cir. 2018); *Exmark Mfg. Co., v. Briggs & Stratton Power Group*, 879 F.3d 1332, 1347–49 (Fed. Cir. 2018); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014); *Apple Inc. v. Motorola Inc.*, 757 F.3d 1286 (Fed. Cir. 2014); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1312 (Fed. Cir. 2011); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324–25 (Fed. Cir. 2009); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc).

### 4.23   Reasonable Royalty Definition—Using the "Hypothetical Negotiation" Method

A reasonable royalty is the royalty that would have resulted from a hypothetical license negotiation between the Plaintiffs and the Defendants.  Of course, we know that they did not agree to a license and royalty payment.  But, to decide on the amount of reasonable royalty damages, you should consider what would have happened if the parties did negotiate a license just before the infringement began.  This is why it is called a "hypothetical" license negotiation.

You should assume that both parties to the hypothetical negotiation understood that the patent was valid and infringed.  You should also presume that the parties had full knowledge of the facts and circumstances surrounding the infringement at the time of the hypothetical negotiation.

AUTHORITY:  *Apple Inc. v. Motorola Inc.*, 757 F.3d 1286 (Fed. Cir. 2014); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012); *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1311 (Fed. Cir. 2011); *Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1372 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324–25 (Fed. Cir. 2009); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1109–10 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993).

### 4.24   Reasonable Royalty—Relevant Factors Using the Hypothetical Negotiation Method

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent:

[LIST ONLY THOSE FACTORS RELEVANT IN THE CASE AND PROPERLY SUPPORTED BY ADMITTED EVIDENCE.]

1.   Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2.   The rates paid by the Defendants to license other patents comparable to the Plaintiffs' patents.

3.   The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4.   The Plaintiffs' established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5.   The commercial relationship between the Plaintiffs' and the Defendants, such as whether or not they are competitors in the same territory in the same line of business.

6.      The effect of selling the patented products in promoting other sales of the Defendants; the existing value of the invention to the Plaintiffs as a generator of sales of the Plaintiffs' non-patented items; and the extent of such collateral sales.

7.      The duration of the patents-in-suit and the term of the license.

8.      The established profitability of the products made under the patents-in-suit; their commercial success; and their popularity.

9.      The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10.     The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by or for the licensor; and the benefits to those who have used the invention.

11.     The extent to which the Defendants have made use of the invention; and any evidence that shows the value of that use.

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.     The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14.     The opinion testimony of qualified experts.

15.     The amount that a licensor and a licensee (such as the Plaintiffs and the Defendants) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16.     Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

AUTHORITY: *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 60 (Fed. Cir. 2012); *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1319 (Fed. Cir.

2010); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869–73 (Fed. Cir. 2010); *Monsanto Co. v. McFarling*, 488 F.3d 973 (Fed. Cir. 2007); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108–10 (Fed. Cir. 1996); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 898–900 (Fed. Cir. 1986); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).

### 4.25    Reasonable Royalty—Timing

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon. Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, license agreements entered into by the parties shortly after the date of the hypothetical negotiation, profits earned by the infringer, and non-infringing alternatives.

AUTHORITY:  35 U.S.C. § 284; *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770–73 (Fed. Cir. 2014); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324–25, 1333 (Fed. Cir. 2009); *Studiengesellschaft Kohle, mbH v. Dart Indus., Inc.,* 862 F.2d 1564, 1571–72 (Fed. Cir. 1988); *Sinclair Ref. Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 698 (1933).

### 4.26    Reasonable Royalty—Use of Comparable License Agreements

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the patents in question, or for rights to similar technologies.  However, if you choose to rely upon evidence from any license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between the Plaintiffs and the Defendants, in terms of the economic circumstances of the contracting parties, and the technologies in those licenses, when you make your reasonable royalty determination.

AUTHORITY:  *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227–28 (Fed. Cir. 2014); *Apple Inc. v. Motorola Inc.*, 757 F.3d 1286, 1325–26 (Fed. Cir. 2014); *LaserDynamics,*

*Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77–81 (Fed. Cir. 2012); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869–70 (Fed. Cir. 2010); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1329, 1336 (Fed. Cir. 2009).

### 4.27   Reasonable Royalty—Multiple Patents

Since the Defendants infringed multiple patents, you may award separate royalties to the Plaintiffs for each patent that was infringed.  You also may consider evidence of the number of patent licenses that are needed for the allegedly infringing product and the effect on the hypothetical negotiation of having to pay a royalty for each of those licenses.

AUTHORITY:  *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1234 (Fed. Cir. 2014); *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1324 (Fed. Cir. 2014); *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310 (Fed. Cir. 2007); *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1561 n.8 (Fed. Cir. 1983).

### 4.28   Reasonable Royalty—Royalty Base

Based on the prior factors, you should determine the appropriate royalty rate for each of the patents, or a royalty rate for the three patents together.  As I explained previously, the royalty rate is a percentage number that is applied to revenues.  The revenues from each of Defendants' sales of products is known as the royalty base.

If you arrive at a single royalty rate for all of the patents together, you should multiply the royalty rate times the royalty base, for each Defendant, to arrive at the royalty for that Defendant.

The following is the calculation for this:

**<u>Kartri</u>**:

Royalty Rate (percentage) x Royalty Base (Kartri's revenues) = Reasonable Royalty

**<u>Marquis</u>**:

Royalty Rate (percentage) x Royalty Base (Marquis' revenues) = Reasonable Royalty

If you decide that there should be a separate royalty rate for each patent, then you should multiply the royalty rate for that patent times the royalty base, and add up all the royalties. The calculation of this is as follows:

**<u>Kartri</u>**:

Royalty Rate Patent 1 (percentage) x Royalty Base (Kartri's revenues) = Royalty 1

Royalty Rate Patent 2 (percentage) x Royalty Base (Kartri's revenues) = Royalty 2

Royalty Rate Patent 3 (percentage) x Royalty Base (Kartri's revenues) = Royalty 3

Reasonable Royalty  = Reasonable Royalty 1 + Reasonable Royalty 2 + Reasonable Royalty 3

**<u>Marquis</u>**:

Royalty Rate Patent 1 (percentage) x Royalty Base (Marquis' revenues) = Royalty 1

Royalty Rate Patent 2 (percentage) x Royalty Base (Marquis' revenues) = Royalty 2

Royalty Rate Patent 3 (percentage) x Royalty Base (Marquis' revenues) = Royalty 3

Reasonable Royalty  = Reasonable Royalty 1 + Reasonable Royalty 2 + Reasonable Royalty 3

**[<u>NOTE TO THE COURT</u>**:

The claims of Plaintiffs' patents-in-suit cover the entire product sold by each of the Defendants. Namely, Plaintiffs' patent claims cover an entire shower curtain, or an entire shower curtain header. *See e.g.,* Dkt. 148-2 ('248 patent) at 13, claim 6 ("A product as claimed in claim 1, wherein said item is a curtain), claim 7 ("shower curtains"); Dkt. 148-3 ('609 patent) at 15, claim 6 ("wherein said curtain is a shower curtain"); Dkt 148-4 ('088 patent) at 15, claim 1 (A product, said product comprising:  a shower curtain"). As a result, the royalty base is the revenue from the entire sale of that curtain, or header, as a matter of law.

Defendants' expert Graham Rogers, however, has contended that the royalty base is the "smallest salable patent practicing unit" of the product.  At the same time, he has admitted in his deposition that he does not know what the "smallest salable patent practicing unit" is here.

The "smallest salable patent practicing unit" doctrine applies to a complex device with multiple components, wherein only a small part is patented.  *See e.g., GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885-LHK, 2014 U.S. Dist. LEXIS 53234, at *43-44 (N.D. Cal. Apr. 16, 2014) ("Where small elements of multi-component products are accused of infringement, calculating a royalty on the entire product carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product.").  For example, if a complicated electronic device has 100 components, and only one is patented, the doctrine is used to restrict compensation to just the small patented component.  *Id.* at *42 (N.D. Cal. Apr. 16, 2014) (patent case over Apple iPads including dispute whether the price of the baseband processor chips that Apple purchases and install in its iPads should be used as the royalty base).

None of this is the case in this action.  The accused products are not complex multicomponent electronic devices, which are mainly unpatented, with a small patented component. This is a simple product with essentially two components (the ring and fabric), and the whole product is patented.

Similarly, even in cases of patented and unpatented components, the "entire market value rule" applies when the patented and unpatented components "together constituted a functional unit."  *Juicy Whip, Inc. v. Orange Bang, Inc.*, 382 F.3d 1367, 1371 (Fed. Cir. 2004), citing *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995) (en banc).  Here, it not disputable that the curtain ring and curtain fabric function together as a single functional unit – the ring holds up the curtain on the shower curtain rod.

Accordingly, in view of the facts and law, and the lack of a position as to "smallest salable patent practicing unit" by Defendants' expert, it is submitted that the royalty base here is the entire curtain.  However, for the avoidance of doubt, and subject to the Court's ruling on this issue, proposed instructions are provided below regarding the issue of apportionment and smallest salable patent practicing unit.]

### 4.29   Reasonable Royalty—Smallest Salable Patent Practicing Unit and Entire Market Value Rule

**[Alternate Instruction (*see,* note to Court above)]**

A multi-component product may have both infringing and non-infringing components. In such products, the royalty base should not be the entire product, but instead should be the "smallest salable unit" that practices the patent and has close relation to the claimed invention.  If the smallest salable unit is a multi-component product containing one or more non-infringing features with no relation to the patented feature(s), damages must only be based on the portion of the value of that product attributable to the patented technology.

There is, however, an exception to this, known as the entire market value rule.   Under the entire market value rule, the Plaintiffs can nonetheless recover damages on the royalty on the entire product.  Plaintiffs can recover based on the revenues of the entire product if they establish that it is more likely than not that the patented-related feature creates the basis for customer demand for the product, or substantially creates the value of the product.

Plaintiffs can also recover based on the revenues of the entire product if they establish that it is more likely than not that the patented and unpatented components constitute a functional unit, i.e., that they function together.

AUTHORITY:  *Juicy Whip, Inc. v. Orange Bang, Inc.*, 382 F.3d 1367, 1371 (Fed. Cir. 2004) (the "entire market value rule" applies when the patented and unpatented components "together constituted a functional unit"), citing *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1550

51

(Fed. Cir. 1995) (en banc). *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) (entire market value rule); *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326–29 (Fed. Cir. 2014); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336–37 (Fed. Cir. 2009); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549–51 (Fed. Cir. 1995) (en banc).

### 4.30    Doubts Resolved Against Infringer

Any doubts that you may have on the issue of damages due to the Defendants' failure to keep proper records should be decided in favor of the Plaintiffs.  For example, any confusion or difficulties caused by the Defendants' records, or by Defendants' provision of inconsistent information, or by Defendants' failure to provide accurate, timely, and/or complete information during discovery, should be held against the Defendants.

AUTHORITY:  *Bigelow v. R.K.O. Pictures, Inc.*, 327 U.S. 251, 264–65 (1946); *Story Parchment Co. v. Patterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1118 (Fed. Cir. 1996); *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572–73 (Fed. Cir. 1996); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

### 4.31    Trademark, Trade Dress, and Unfair Competition Damages – Proof

It is also the duty of the Court to instruct you about the measure of damages regarding the trademark, trade dress, and unfair competition claims. The fact that I have instructed you regarding damages on these claims, should not be construed as intimating any view of the Court as to which party is entitled to prevail on those claims.

Instructions regarding damages are given for your guidance in the event that the evidence leads you to find in favor of Plaintiffs on these claims.

If so, it is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence, and not upon speculation, guesswork, or conjecture.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instructions No. 5.1, 15.25, 15.26; Uniform Jury Instructions For Patent Cases in the United States District Court for the District of Delaware, March, 1993, Instruction 6.13

### 4.32     Trademark Damages—Plaintiff's Actual Damages (15 U.S.C. § 1117(A))

If you find for the Plaintiffs on their infringement or unfair competition claim, then you must determine the Plaintiffs' actual damages for those violations by the Defendants.

The Plaintiffs have the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate the Plaintiffs for any injury you find was caused by the Defendants' infringement of the Plaintiffs' trademark or trade dress.

You should consider the following in determining Plaintiffs' actual damages:

(1)     The lost profits that the Plaintiffs would have earned but for the Defendants' infringement.  Profit is determined by deducting all expenses from gross revenue;

(2)     The injury to or loss of the Plaintiffs' reputation; and,

(3)     The injury to or loss of Plaintiff's goodwill, including injury to the Plaintiff's general business reputation.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 15.27.

### 4.33     Trademark Damages—Defendants' Profits (15 U.S.C. § 1117(a))

In addition to actual damages, the Plaintiffs are entitled to any profits earned by the Defendants that are attributable to the infringement, which the Plaintiffs prove by a preponderance of the evidence.  You may not, however, include in any award of Defendants' profits any amount that you took into account in determining actual damages.

Profit is determined by deducting expenses from gross revenue.

Gross revenue is all of defendant's receipts from the sales of the shower curtain products. The Plaintiffs have the burden of proving the Defendants' gross revenue by a preponderance of the evidence.

Expenses are all production costs incurred in producing the gross revenue. The Defendants have the burden of proving the expenses by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of the shower curtains using the trademark or trade dress is attributable to factors other than use of the trademark or trade dress, you should find that the total profit is attributable to the infringement.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 15.29.

### 4.34    Willful Infringement

Since it has been determined that the Defendants have infringed the patents-in-suit, you must determine whether or not the Defendants' patent infringement was willful.

In addition, if you determine that Defendants have engaged in federal or state trademark or trade dress infringement or unfair competition, you should determine whether those violations were willful as well.

Willful infringement can mean, for example, that the Defendants' behavior was wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

To show that the Defendants' patent infringement was willful, the Plaintiffs must prove by a preponderance of the evidence that the Defendants knew of one or more of the Plaintiffs' patents, and intentionally infringed at least one asserted claim of those patents.

 To show that the Defendants' trademark or trade dress infringement or unfair competition was willful, the Plaintiffs must prove by a preponderance of the evidence that the

Defendants knew or should have known of the Plaintiffs' rights, but nonetheless intentionally infringed those rights.

Willfulness also includes recklessness.  A person is reckless if they act knowing, or having reason to know, of facts which would lead a reasonable person to realize that their actions are unreasonably risky, i.e. that they unreasonably risk a violation of law.  Willfulness also includes indifferent behavior.

Willful infringement does not require direct evidence; rather, circumstantial evidence may suffice.

In assessing whether the Defendants acted willfully, you may consider as one factor whether the Defendants relied on a competent legal opinion, and whether or not that reliance was reasonable.  That an opinion is "incompetent" must be shown by objective evidence.  For example, an attorney may not have looked into the necessary facts, and, thus, there would be no foundation for his or her opinion.  An opinion may also be incompetent on its face by reason of its containing merely conclusory statements without discussion of facts or obviously presenting only a superficial or off-the-cuff analysis.

In determining whether the Plaintiffs have proven that the Defendants' infringement was willful, you must consider all of the circumstances, and must assess the Defendants' knowledge during the time that the Defendants' conduct occurred.

AUTHORITY:  Willfulness:  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016) ("The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate.") and at 1933 ("we stated that a person is reckless if he acts '*knowing* or *having reason to know* of facts which would lead a reasonable man to realize' his actions are unreasonably risky," citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57, 127 S. Ct. 2201, 2208 (2007)); *Safeco*, 551 U.S. at 57, 127 S. Ct. at 2208 (2007) ("willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well"); *Romag Fasteners, Inc. v. Fossil Grp., Inc.*, 140 S. Ct. 1492, 1498 (2020) (Sotomayor, J., concurring), citing 5 McCarthy on Trademarks and

Unfair Competition § 30:62 (5th ed. 2019) (explaining that "willfulness" ranged from fraudulent and knowing to reckless and indifferent behavior).  Intent:  *Lucent Techs., Inc., v. Gateway, Inc.*, 580 F.3d 1301, 1322 (Fed. Cir. 2009) ("A plaintiff may . . . prove the intent element through circumstantial evidence, just as with direct infringement . . . ."); *Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. v. Calco, Ltd*, 850 F.2d at 669 ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").
Opinion Evidence:  *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 829 (Fed. Cir. 1992) ("That an opinion is "incompetent" must be shown by objective evidence.  For example, an attorney may not have looked into the necessary facts, and, thus, there would be no foundation for his opinion. A written opinion may be incompetent on its face by reason of its containing merely conclusory statements without discussion of facts or obviously presenting only a superficial or off-the-cuff analysis) (citations omitted).

### 4.35   Punitive Damages

If you find for the Plaintiffs on their claim for unfair competition under New York law you must consider whether or not to award punitive damages to the Plaintiffs.

You may, but are not required to, award punitive damages.

Initially, I want to advise you that the purposes of punitive damages are different from the purposes of compensatory damages. Compensatory damages are intended to compensate the plaintiff for the actual injury or loss the Plaintiffs suffered as a result of the Defendants' misconduct.  In contrast, punitive damages are intended to punish a wrongdoer and to deter the wrongdoer from similar wrongful conduct in the future.  Punitive damages are designed to require the wrongdoer to pay an amount of money that is sufficient to punish the defendant for particular conduct, and to deter that defendant from misconduct in the future. Punitive damages are also designed to serve as an example to discourage anyone else from committing similar acts.

The plaintiff has the burden of proving by a preponderance of the evidence that punitive damages should be awarded.

You may award punitive damages if you find that Plaintiffs have proved by a preponderance of the evidence that Kartri and/or Marquis acted willfully, intentionally, or

knowingly, or in bad faith, or that the Defendants' conduct that harmed the Plaintiffs was malicious, oppressive, or in reckless disregard of the Plaintiffs' rights.

Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the Plaintiffs.

Conduct is in reckless disregard of the Plaintiffs' rights if, under the circumstances, it reflects complete indifference to the Plaintiffs' rights, or if one or both of the Defendants acted in the face of a perceived risk that their actions would violate the Plaintiffs' rights.

An act or omission is oppressive if a Defendant injures or damages or otherwise violates the rights of the Plaintiffs with unnecessary harshness or severity, such as by taking advantage of some weakness or disability or misfortune of the Plaintiffs.

If you find that punitive damages are appropriate, you must use reason in setting the amount.  Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice, or sympathy toward any party.  In considering the amount of any punitive damages, consider the degree of reprehensibility of the Defendants' conduct, including whether the conduct that harmed the Plaintiffs was particularly reprehensible because it also caused actual harm or posed a substantial risk of harm to people who are not parties to this case.  You may not, however, set the amount of any punitive damages in order to punish the Defendants for harm to anyone other than the Plaintiffs in this case.

If you decide to award punitive damages, then you should determine the appropriate amount for the award in view of the Defendants' conduct.

You may impose punitive damages against one or both of the Defendants, and may award different amounts against different Defendants.  Punitive damages may be awarded regardless of your other award or awards of damages.

AUTHORITY:  Ninth Circuit Manual of Model Jury Instructions, Civil (2020), Instruction No. 5.5; *Getty Petroleum Corp. v. Island Transp. Corp.,* 878 F.2d 650, 657 (2nd Cir. 1989); *24/7 Records v. Sony Music Entertainment, Inc.*, 566 F.Supp.2d 305, 320 (2d. Cir. 2008); *Am. Safety Table Co. v. Schreiber,* 415 F.2d 373, 381 (2d Cir. 1969); *Suburban Graphics Supply Corp. v. Nagle,* 5 A.D.3d 663, 666, 774 N.Y.S.2d 160  (2d Dep't 2004); *Hertz Corp. v. Avis, Inc.,* 106 A.D.2d 246, 251, 485 N.Y.S.2d 51 (1st Dep't 1985); *Rose v. Brown & Williamson Tobacco Corp.,* 809 N.Y.S.2d. 784, 709 (N.Y. Sup. Ct.  2005).

Dated:  April 15, 2021                             */s/ Morris E. Cohen*

                                                          _____
                                                          Morris E. Cohen
                                                          Lee A. Goldberg
                                                          Limor Wigder
                                                          GOLDBERG COHEN LLP
                                                          1350 Avenue of the America, 3rd Floor
                                                          New York, New York 10019
                                                          (646) 380-2084 (phone)
                                                          (646) 514-2123 (fax)
                                                          MCohen@goldbergcohen.com
                                                          LGoldberg@goldbergcohen.com
                                                          LWigder@goldbergcohen.com

                                                          Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document is being served electronically on April 15, 2021 via the Court's CM-ECF system on counsel of record for Defendants.

Dated: April 15, 2021                                         */s/ Morris E. Cohen*

                                                            _____

                                                            Morris E. Cohen