## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Focus Products Group International, LLC; Zahner Design Group, Ltd; Hookless Systems of North America, Inc.; SF Home Decor, LLC; Sure Fit Home Decor Holdings Corp.; and Sure Fit Home Products, LLC | ) ) ) ) ) ) | |
| Plaintiffs, | ) | 1:15-CV-10154 |
| v. | ) ) | (PAE/SDA) |
| Kartri Sales Company, Inc., and Marquis Mills, International, Inc. | ) ) ) | |
| Defendants. | ) | |

## DEFENDANT KARTRI'S AND MARQUIS'S
## JURY INSTRUCTIONS FOR TRADEMARK AND TRADE DRESS

# INSTRUCTION NO. 1

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you as to the law of the case.

A copy of these instructions will be sent with you to the jury room when you deliberate.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

## INSTRUCTION NO. 2

When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of whichparty presented it.

## INSTRUCTION NO. 3

When a party has the burden of proving any claim by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable. This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

**INSTRUCTION  NO. 4**

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness;

2.      the exhibits which are received into evidence; and

3.      any facts to which the lawyers have agreed.

# INSTRUCTION NO. 5

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

## INSTRUCTION  NO.  6

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally  saw or heard or did. Circumstantial evidence  is proof  of one or  more facts  from  which you could find another fact. You should consider both kinds of evidence. The lawmakes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

## INSTRUCTION NO. 7

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know thethings testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias orprejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on thenumber of witnesses who testify about it.

## INSTRUCTION NO. 8

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may askquestions. The questions and answers are recorded.

You should consider deposition testimony, presented to you in court in lieuof live testimony, insofar as possible, in the same way as if the witness had been present to testify.

## INSTRUCTION NO. 9

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

## INSTRUCTION NO. 10

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party. In these instructions, the word "person" also refers to a corporation.

## INSTRUCTION NO. 11

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

# INSTRUCTION  NO. 12

In this case, Focus Products Group International, LLC; Zahner Design Group, Ltd; Hookless Systems of North America, Inc.; SF Home Decor, LLC; Sure Fit Home Decor Holdings Corp.; and Sure Fit Home Products, LLC (collectively, "Plaintiffs"), contend that Kartri Sales Company, Inc.; and Marquis Mills, International, Inc. (collectively, "Defendants"), have committed trademark infringement, and have engaged in unfair competition and unfair and deceptive trade practices arising from Defendants use of Ezy-Hang brand shower curtains. Plaintiffs further contend that Defendants have committed trade dress infringement, and have engaged in unfair competition and unfair and deceptive trade practices arising from Defendants' sale of certain shower curtains that, Plaintiffs allege, are confusingly similar to Plaintiffs' HOOKLESS Trade Dress. Defendants deny these allegations.

Although for various reasons these claims have different names, some of them require Plaintiffs to prove the same elements to the jury. The first section of these instructions is based on the federal statutory trademark and trade dress infringement claims. I will apply your verdict on these claims to Plaintiffs' claims for unfair competition under state and federal law and to Plaintiffs' state law claims for common law trademark and trade dress infringement.

You will also be instructed and will return a verdict on unfair and deceptive trade practices claims.

## INSTRUCTION NO. 13

You have heard testimony about a settlement agreement. I instruct you that this settlement agreement does not prohibit Plaintiffs from asserting the claims in this case. You should consider the settlement agreement only as evidence related to Defendants' intent and understanding of the agreement.

# INSTRUCTION NO. 14

## Trademarks and Trade Dress Generally

A trademark is any word, symbol, device, or any combination thereof, usedby a person to identify and distinguish that person's goods from those of others and to indicate the source of the goods.

Trade dress is the non-functional physical detail and design of a product or its packaging, which indicates or identifies the product's source and distinguishes it from the products of others.

Trade dress is the product's total image and overall appearance, and mayinclude features such as size, shape, color, color combinations, texture, or graphics. In other words, trade dress is the form in which a person presents aproduct or service to the market, its manner of display.

# INSTRUCTION NO. 15

## Trademarks and Trade Dress Generally

A person acquires the right to exclude others from using a trademark or trade dress by being the first to use it in the marketplace. Rights in a trademark or trade dress are obtained only through commercial use of the mark or trade dress. The owner of a trademark or trade dress has the right to exclude others unless the trademark or trade dress has been abandoned.

A trademark or trade dress owner may enforce the right to exclude others in an action for infringement, unfair competition, or unfair and deceptive trade practices.

Once the owner of a trademark has obtained the right to exclude others from using the trademark, the owner may obtain a certificate of registration issued by the United States Patent and Trademark Office. Thereafter, when the owner brings an action for infringement, the owner may rely solely on the registration certificate to prove that the owner has the right to exclude others from using the trademark in connection with the type of goods specified in the certificate.

# INSTRUCTION NO. 16

## Trademarks and Trade Dress Generally

In this case, the Plaintiffs contend that the Defendant have infringed the plaintiffs trademark and trade dress. The plaintiffs have the burden of proving by a preponderance of the evidence that the plaintiffs are the owner of a valid trademark/trade dress and that the defendants infringed that trademark/trade dress. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the defendant infringed the plaintiffs trademarks.

# INSTRUCTION NO. 17

## Trademarks and Trade Dress Generally

The trademark laws balance three often-conflicting goals: (1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; (2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and (3) protecting the public interest in fair competition in the market.

The balance of these policy objectives varies from case to case, because they may often conflict. Accordingly, each case must be decided by examining its specific facts and circumstances, which you are to evaluate.

In my instructions, I will identify types of facts you are to consider in deciding if Defendants are liable to Plaintiffs for violating trademark law. These facts are relevant to whether Defendants are liable for:

**(1)** infringing Plaintiffs registered trademark rights in the Mark, by using a trademark in a manner likely to cause confusion among consumers;

**(2)** infringing Plaintiffs rights in the Hookless Trade Dress by using a trade dress in a manner likely to cause confusion among consumers;

**(3)**    diluting Plaintiffs' Hookless® and EZ-ON™ Mark by eroding the public's exclusive identification of that mark with Plaintiffs; and

**(4)**    diluting Plaintiffs' HOOKLESS Trade Dress by eroding the public's exclusive identification of that trade dress with Plaintiffs.

# INSTRUCTION NO. 19

**Trademarks and Trade Dress Generally**

The term "use" as it is used in these instructions relating to a trademark or trade dress means selling, offering for sale, distributing or advertising.

# INSTRUCTION NO. 20

## Trademark Infringement

On Plaintiffs claims for infringement of its "Hookless® and EZ-ON™" trademark, Plaintiffs have the burden of proving each of the following elements by a preponderance of the evidence that:

1.    the Hookless® and EZ-ON™ mark is a valid, protectable trademark;

2.    Plaintiffs owns the Hookless® and EZ-ON™ mark as a trademark;

3.    Defendants used design features similar to the Hookless® and EZ-ON™ mark without consent of Plaintiffs in a manner that is likely to cause confusion among ordinary consumers as to the source, affiliation, connection,or association of the goods; and

4.    Plaintiffs was damaged by Defendants' infringement.

If you find that each of the elements on which Plaintiffs have the burden of proof has been proved, your verdict should be for Plaintiffs.  If, on the other hand, Plaintiffs have failed to prove any of these elements, your verdict should be for Defendants.

I will instruct you on how to apply each of these elements to the evidence before you.

## INSTRUCTION NO. 21

**Trademark Infringement**

As stated in instruction number <u>19</u>, in order to find for Plaintiffs on its claims for trademark infringement, Plaintiffs must prove by a preponderance of the evidence that the Hookless® and EZ-ON™ Mark is valid and protectable and that Plaintiffs owns the trademark.

The parties have no dispute on these issues. Therefore, I instruct you that for purposes of instruction number <u>19</u>, it is agreed and therefore you must find that Plaintiffs owns the Hookless® and EZ-ON™ Mark and that the trademark is valid and protectable.

## INSTRUCTION NO. 21

**Trade Dress Infringement**

On Plaintiffs' claim for infringement of its HOOKLESS Trade Dress, Plaintiffs have the burden of proving by a preponderance of the evidence each of the following elements:

**1)**     The HOOKLESS Trade Dress is distinctive;

**2)**     Plaintiffs own the HOOKLESS Trade Dress, which consists of:

a. a shower curtain wherein the curtain lacks any hooks protruding above the upper edge of the curtain, so that Plaintiffs' shower curtain provides the visual appearance of an essentially "neat" and "orderly" upper edge;

b. and wherein the shower curtain has a row of rings along the upper portion of the shower curtain, those rings being attached to the material of the shower curtain such that the bottom surface of each ring (on one or both sides of the shower curtain) is essentially co- planar with the material of the shower curtain, also providing an essentially "neat" and "orderly" appearance;

c. wherein each ring includes a slit or gap in the ring;

d. and wherein the shower curtain's rings or pairs of rings, and the associated slits or gaps, are each fixed in place on the shower curtain and provide an organized and symmetrical repeating visual pattern along the top width of the shower curtain.;

**3)**     The HOOKLESS Trade Dress is nonfunctional;

**4)**     Defendants used design features similar to Plaintiffs' HOOKLESS Trade Dress without the consent of Plaintiffs in a manner that is likely to cause confusion

among ordinary purchasers as to the source of the Defendants goods; and

**5)**       Plaintiffs were damaged by Defendants' infringement.

If you find that each of the elements on which Plaintiffs have the burden of proof have been proved, your verdict should be for Plaintiffs. If, on the other hand,Plaintiffs have failed to prove any of these elements, your verdict should be for Defendants.

Plaintiffs claims Defendants infringed on the HOOKLESS trade dress only.

There are no trade dress claims asserted by Plaintiffs beyond the HOOKLESS Trade Dress claim

I just defined.

**INSTRUCTION NO. 22**

**Trade Dress Infringement**

I gave you instruction number _21_ that requires Plaintiffs to prove by a preponderance of the evidence that the HOOKLESS Trade Dress is non- functional. I have already found as a matter of law that the HOOKLESS Trade Dress is non-functional. Therefore, I instruct you that for purposes of instruction number _21_, you must find that the HOOKLESS Trade Dress is non-functional.

Instruction number _21_ also requires Plaintiffs to prove by a preponderance of the evidence that the HOOKLESS Trade Dress is distinctive. To prove distinctiveness, Plaintiffs must show that the HOOKLESS Trade Dress has "secondary meaning." Secondary meaning is the recognition that the trade dress has among prospective purchasers.

A trade dress acquires secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective purchasers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what that source is. Thus, in order to find that the HOOKLESS Trade Dress has acquired secondary meaning, you must find that the preponderance of the evidence shows that a significant number of the consuming public associates the HOOKLESS Trade Dress with a single source.

You may consider the following factors when you determine whether the HOOKLESS Trade Dress has acquired a secondary meaning:

1) Purchaser Perception. Whether the people who purchase products that bear the HOOKLESS Trade Dress associate the trade dress withPlaintiffs.

2) Advertisement. The degree and manner in which Plaintiffs' advertisements included the HOOKLESS Trade Dress.

3) Demonstrated Utility. Whether Plaintiffs successfully have used the HOOKLESS Trade Dress to increase sales of its shower curtains.

4) Extent of Use. The length of time and manner in which Plaintiffs have used the HOOKLESS Trade Dress.

5) Exclusivity. Whether Plaintiffs' use of the HOOKLESS Trade Dress has been exclusive.

6) Copying. Whether Defendants intentionally copied Plaintiffs' trade dress.

7) Actual Confusion. Whether Defendants' use of design features similar to Plaintiffs' trade dress has led to actual confusion.

Trade dress is protectable only to the extent you find it has acquired distinctiveness by the public coming to associate the trade dress with Plaintiffs. Trade dress is entitled to protection only as broad as the secondary meaning it hasacquired, if any. If the trade dress has not acquired a secondary meaning, it is

entitled to no protection and cannot be considered a valid trade dress.

The mere fact that Plaintiffs is using the HOOKLESS Trade Dress, or that Plaintiffs began using it before Defendants used similar design features, does not meanthat the trade dress has acquired secondary meaning. There is no particular length of time that a trade dress must be used before it acquires a secondary meaning.

# INSTRUCTION NO. 28

**Trade Dress Infringement**

While in appropriate circumstances deliberate copying may suffice to support an inference of secondary meaning, in order to make this finding, thedeliberate copying must be an intentional attempt to capitalize on a company's reputation or good will. Copying to exploit a particularly desirable feature, as opposed to copying to confuse the consumers about the source of the product,does not support an inference of secondary meaning.

## INSTRUCTION NO. 29

**Likelihood of Confusion**

Confusion in the marketplace can occur at three distinct times: before the purchase (called "initial-interest" confusion), at the moment of purchase (called "point-of-sale" confusion), and after the purchase (called "post-sale" confusion). Plaintiffs' claims are not based on point-of-sale confusion, but are based on initial- interest and post-sale confusion. I will now explain each of these concepts to you.

Initial interest confusion occurs when someone uses a confusingly similar imitation of another's trademark in a manner calculated to capture initial consumerattention. Even though no actual sale is finally completed as a result of the confusion, there still may be infringement.

Post-sale confusion can occur when someone other than the purchaser seesthe item after it has been purchased and the confusion influences a later purchasing decision.

## INSTRUCTION NO. 30

**Likelihood of Confusion**

Because evidence of actual confusion is often not available, a consumer survey conducted according to accepted survey principles is often used as a proxy for evidence of actual confusion. These surveys measure the subjective mental associations and reactions of prospective consumers to the goods at issue. While survey evidence may be probative of whether there is a likelihood of confusion, survey evidence differs from evidence of actual confusion because survey evidence is not necessarily generated in real world settings. The results of a consumer survey are entitled to the weight you decide to give them.

# INSTRUCTION NO. 31

**Likelihood of Confusion**

You must consider whether Defendants' use of design features is likely to cause confusion about the source of Plaintiffs' or Defendants' goods. This test applies to both the trademark and trade dress infringement claims.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider allrelevant evidence in determining this. A likelihood of confusion requires you to find that confusion is probable and not merely a possibility. As you consider the likelihood of confusion you should examine the following:

I.  Strength or Weakness of Plaintiffs' Trademark or Trade Dress. The more the consuming public recognizes Plaintiffs' Hookless® and EZ-ON™ trademark or HOOKLESS Trade Dress as an indication of origin of Plaintiffs' goods, the more likely it is that consumers would be confused about the source of Defendants' goods if Defendants uses similar design features.

2.  Defendants' Use of the Trade Mark or Trade Dress.
If Plaintiffs used its trademark or trade dress and Defendants used its similar design features on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

3.      Similarity of Plaintiffs' Trade Mark and Trade Dress and Defendants'
Design Features. If the overall impression  created  by Plaintiffs' Hookless® and EZ-ON™
Mark or HOOKLESS Trade Dress in the marketplace is similar to that created by
Defendants' design features in appearance,  there is a greater chance  that consumers are
likely to be confused by Defendants' use of its design features. Similarities in appearance
weigh more heavily than differences in finding that the Plaintiffs trademark or trade dress
and Defendants' design features are similar.

4.      Actual Confusion. If  use by Defendants of a design feature similar to Plaintiffs'
Hookless® and EZ-ON™ Mark or HOOKLESS Trade Dress has led to instances of actual
confusion, this strongly suggests a likelihood of confusion. However actual confusion is not
required for a finding of likelihood of confusion. Even if actual confusion did not occur,
Defendants' use of the similar design features  may still be likely to cause confusion. As you
consider whether the design features used by Defendants creates for consumers a likelihood
of confusion with Plaintiffs' trademark or trade dress, you should weigh any instances of
actual confusion against the opportunities for such confusion. If the instances of actual
confusion have been relatively frequent, you may find that there  has been  substantial  actual
confusion. If, by contrast, there is a very large volume of sales, but only a few isolated
instances of actual confusion you may find that there has not been substantial actual
confusion.

5.      Defendants' Intent.  Knowing use by Defendants of design features similar to Plaintiffs' Hookless® and EZ-ON™ trademark or HOOKLESS Trade Dress to identify similargoods may strongly show an intent to derive benefit from the reputation of Plaintiffs' mark, suggesting an intent to cause a likelihood of confusion. On the other hand, even in the absence of proof that Defendants acted knowingly, the use of design features similar to Plaintiffs' trademark or trade dress to identify similar goods may indicate a likelihood of confusion.

6.      Marketing/Advertising Channels. If Plaintiffs' and Defendants' goods are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

7.      Purchaser's Degree of Care.  The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be. They may be less likely to be confused by similarities in Plaintiffs' trademark ortrade dress and Defendants' design features.

## INSTRUCTION NO. 34

**Likelihood of Confusion**

In the last instruction, I instructed you as to factors you should consider in evaluating the likelihood of confusion  as to the source of Plaintiffs'  or Defendants' shower curtains. In evaluating the likelihood of confusion as to the source of Plaintiffs' or Defendants' shower curtains, you should not consider a side-by-side comparison  of the Plaintiffs and Defendants shower curtains, but only should consider the shower curtains as they are likely to be seen by consumers in the circumstances alleged to lead to initial interest and post-sale confusion.

# INSTRUCTION NO. 35

**Unfair and Deceptive Trade Practices**

Plaintiffs have asserted two claims that fall under a set of statutes that prohibit unfair and deceptive trade practices. These claims are very similar to a claim for trademark or trade dress infringement.

In its unfair and deceptive trade practices claims, Plaintiffs alleges that Defendants have engaged in deceptive trade practices with respect to the Hookless® and EZ-ON™ Mark and the HOOKLESS Trade Dress, and that Plaintiffs have been injured by Defendants' conduct.

## INSTRUCTION NO. 36

## Unfair and Deceptive Trade Practices

For Plaintiffs to recover from Defendants on its claims for unfair and deceptive trade practices, you must find that each of the following have been proved by Plaintiffs by a preponderance of the evidence:

1)     Defendants knowingly engaged in a deceptive trade practice;

2)     The deceptive trade practice occurred in the course of Defendants' business;

3)     Plaintiffs were injured in the course of its business as a result of the deceptive trade practice; and

4)     The deceptive trade practice has caused actual damages or losses to Plaintiffs.

# INSTRUCTION NO. 37

## Unfair and Deceptive Trade Practices

Defendants have engaged in a deceptive trade practice if, in the course of its business, it engaged in one or more of the following:

I)     Defendants knowingly passed off any of its goods as those of Plaintiffs. That is, Defendants intended to make the consumer believe that any of its products are those of Plaintiffs.

2)     Causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of any of Defendants' goods.

3)     Causing a likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, Plaintiffs.

I refer you to the instructions I gave you earlier on likelihood of confusion, which are instructions number ___24___ through ___27___ .

On each unfair and deceptive trade practices claim, if you find it is more likely than not that any of the above occurred, you should find for Plaintiffs. If you find it is more likely than not that none of these occurred, you should find for Defendants.

## INSTRUCTION NO. 38

**Damages**

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiffs on any of its claims, you must determine the plaintiffs damages.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

# INSTRUCTION NO. 39

**Damages**

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiffs on any of its claims, you must determine the plaintiffs damages.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

## INSTRUCTION NO. 40

**Damages**

If you find for Plaintiffs on its federal trademark infringement or trade dress

infringement claims, you may award to Plaintiffs:

    1)      Actual damages; and

    2)      Defendant's profits.

I will instruct you as to the requirements for each award and provide guidance as to

how to calculate those awards.

# INSTRUCTION NO. 41

**Damages**

If you find for Plaintiffs on their trademark infringement claim with respect to the Plaintiff's trademark HOOKLESS or EZ ON, or if you find for Plaintiffs on their trade dress infringement claim with respect to the HOOKLESS Trade Dress, you must determine their actual damages.

Plaintiffs have the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate Plaintiffs for any injury you find was caused by either Defendants' infringement of Plaintiffs' HOOKLESS Trade Dress. It is not necessary for Plaintiffs to prove that Defendants acted willfully in order to recover actual damages.

In determining the amount of Plaintiff's actual damages, you should consider the following:

1)    The injury to Plaintiffs' reputation

2)    The injury to Plaintiffs' goodwill, including injury to Plaintiff's general business reputation; and

3)    Whether the evidence would support a reasonable royalty.

To recover damages for trademark infringement or trade dress infringement, it is not necessary for Plaintiffs to prove they have actually lost any sales to Defendants

## INSTRUCTION  NO.  42

**Damages**

Plaintiffs are seeking actual damages in the form of a reasonable royalty.  I want to give you some idea of what a reasonable royalty is, and how one is calculated.

A royalty is a payment made to the owner of a trademark or trade dress by a non-owner in exchange  for rights to use the trademark or trade dress.   A reasonable royalty is the royalty that would have resulted from a hypothetical negotiation between the trademark or trade dress owner and a company in the position of Defendants taking place just before the infringement or unfair competition began. You should also assume that both parties to that negotiation understood the trademark or trade dress to be valid. Although the relevant date for the hypothetical negotiation is just  before the infringement  began,  you may consider in your determination of Plaintiffs' reasonable royalty-based damages  any profits made by Defendants from sales of the infringing curtains after that time and any of defendants commercial  success of the trademark  or trade dress in the form  of sales of items bearing the mark or trade dress after that time. You may consider this information, however, only if it was foreseeable at the time that the infringement began.

In addition to the actual damages I just discussed, Plaintiffs also seek to recover Defendant's profits.

In order for Plaintiffs to be entitled to recover Defendants' profits from the sales of the infringing shower curtains, Plaintiffs have the burden of proving by a preponderance of the evidence that Defendants acted willfully or in bad faith when they infringed the Plaintiffs' Trade Marks and/or Trade Dress.

Willful infringement refers to a deliberate intent to cause consumer confusion. If you find that Defendants infringed Plaintiffs' trademark or trade dress, you must also determine if Defendants used the design features intentionally, knowing it was an infringement. If you find Defendants acted in this way, you may find that Defendants acted willfully.

# INSTRUCTION NO. 44

**Damages**

As a defense to Plaintiff's allegations of willfulness, Defendants have asserted that it relied on the advice of its legal counsel. To prevail on this defense, Defendants must prove by a preponderance of the evidence that the legal advice was competent such that Defendant was reasonable in relying on the advice. To prevail on this defense, Defendant does not need to prove that the advice was ultimately correct. In making this determination, you should consider the totality of the circumstances at the time.

# INSTRUCTION NO. 45

**Damages**

On any trademark or trade dress infringement, claim on which you find forPlaintiffs and you find that Defendant acted willfully, Defendants is entitled to any profits earned by Defendants that are attributed to Defendants' infringement. You may not include in any award of profits any amount that you took into account in determining actual damages.

Profit is determined by deducting all expenses from gross revenue.

Gross revenue consists of all money derived by Defendants from the sale of any shower curtains found to have infringed EZ On Mark and/or Hookless Trade Dress, or from the sale of any curtains found to have unfairly competed with Plaintiffs. Plaintiffs have the burden of proving Defendant's gross revenue by a preponderance of the evidence.

Expenses are all costs that Defendants incurred in the production, distribution, or sale of the infringing products. Plaintiffs have the burden of proving the expenses by a preponderance of the evidence.

# INSTRUCTION NO. 46

**Damages**

In determining the amount of Plaintiffs' actual damages, you should consider the following:

1)      The injury to Plaintiffs' reputation;

2)      The injury to Plaintiffs' goodwill, including injury to Plaintiffs' general

business reputation; and

3)      Whether the evidence would support a reasonable royalty.

This instruction concerns Plaintiffs' state law claims for unfair and deceptivetrade

practices, common law trademark and trade dress infringement, and unfair competition.

For those claims, if you award a monetary recovery to Plaintiffs, you must also

determine whether Plaintiffs is entitled to punitive damages. Plaintiffs is entitled to punitive

damages only if Plaintiffs prove that Defendants have acted with malice, or in wanton and

reckless disregard of the rights of Plaintiffs, or if deterrence is called for and Defendant's

conduct is particularly aggravated. You may consider the importance to society in

deterring similar misconduct in the future.

You must find these facts by clear and convincing evidence. Clear and convincing

evidence means that the truth of the asserted evidence is highly probable.

If you decide to award punitive damages, you may consider the following

items in fixing the amount:

I)      The character of the defendant's conduct;

2)      The defendant's motive; and

3)      The sum of money that would be required to discourage the defendantand

## INSTRUCTION NO. 47

**Damages**

others from engaging in such conduct in the future.

# INSTRUCTION NO. 48

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations andspeak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so onlyafter you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

## INSTRUCTION NO. 49

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone-including me-how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

## INSTRUCTION NO. 50

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready toreturn to the courtroom.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Focus Products Group International, LLC; )
Zahner Design Group, Ltd; Hookless Systems of )
North America, Inc.; SF Home Decor, LLC; Sure )
Fit Home Decor Holdings Corp.; and Sure Fit )
Home Products, LLC )
                                     )

                          Plaintiffs, )     1:15-CV-10154
              v. )
                                     )     (PAE/SDA)
Kartri Sales Company, Inc., and )
Marquis Mills, International, Inc. )
                                     )
                      Defendants. )

# DEFENDANT KARTRI'S AND MARQUIS'S
# JURY INSTRUCTIONS FOR PATENT DAMAGES

**1. Date Damages Begin** —

**1.1 When the Date of the Start of the Damages Period Is Disputed**

The date that Plaintiffs first notified Defendants of its claim for patent infringement is the date for the start of damages. The parties do not agree on that date, and it is up to you to determine what that date is. Plaintiffs must prove that it is more likely than not that the Defendants were put on notice of the claim for patent infringement as of the date alleged by Plaintiffs.

The date that Plaintiffs first notified the Defendants of their claim for patent infringement is the date for the start of damages. The parties do not agree on that date, and it is up to you to determine what that date is. Plaintiffs must prove that it is more likely than not that the Defendants was put on notice of the claim for patent infringement as of the date alleged by Plaintiffs. Plaintiffs can give notice in either of two ways. The first way is to give notice to the public in general. Plaintiffs can do this by marking substantially all products it sold which included the patented invention, or by including on the labeling of substantially all products the word "patent" or the abbreviation "PAT" with the number of the patent. Plaintiffs also may give notice by marking substantially all products with "Patent" or "Pat" and a free internet address where there is a posting that connects the product with the patent number. Licensees of the '078 patent who use the patented invention must also mark substantially all their products that include the patented invention with the '248, '609 and '088 patents. This type of notice to the public in general starts from the date Plaintiffs and its licensees began to mark substantially all its products that use the invention with the patent number. If Plaintiffs and its licensees did not mark substantially all those products with the patent number, then Plaintiffs did not provide notice in this way. A second way Plaintiffs can give notice of its patents is to directly notify Defendants

with a specific claim that the allegedly infringing shower curtain infringed the '248, '609 and '088 patents. This type of notice starts from the date Defendants received the notice.

If you find that Plaintiffs, before filing this lawsuit, did not provide an effective public notice by properly marking its products to, and did not properly provide direct notice to Defendants with a specific charge that the allegedly infringing shower curtain infringed, then Plaintiffs can only recover damages for infringement that occurred after it sued Defendants on [lawsuit filing date].

## 2. Damages—

### 2.1 Kinds of Damages That May Be Recovered

There are several kinds of damages that are available for patent infringement. One kind of damages is lost profits, that is, the additional profits that the patentee would have made if the defendant had not infringed. You may hear this referred to as the "but for" test—which means, "what profits would the patent owner have made 'but for' the alleged infringement?" Lost profits can include not only the profits the patentee would have made on sales lost due to the infringement, but also, under certain circumstances, profits that the patentee lost from being unable to sell related products with those lost sales or from being forced to reduce its price for its product or other related products to compete. Another kind of patent damages are an established royalty, namely an amount that the patentee has agreed to accept for licensing the patented invention to either the accused infringer or to other parties through a consistent licensing practice outside of litigation. Another kind of patent damages are a reasonable royalty. A reasonable royalty is the amount that someone wanting to use the patented invention would have agreed to pay to the patent owner and the patent owner would have accepted. A reasonable royalty is the minimum amount of damages that a patent owner can receive for an infringement.

### 3. Lost Profits

### 3.1 Lost Profits—"But-For" Test

Plaintiffs are seeking lost profits damages in this case. To prove lost profits, Plaintiffs must show that, but for Defendants' infringement, Plaintiffs would have made additional profits through the sale of all or a portion of the sales of the allegedly infringing shower curtains made by Defendants. Plaintiff must prove this by a preponderance of the evidence, more likely than not. Part of your job is to determine what the parties who purchased the allegedly infringing shower curtains from Defendants would have done if the alleged infringement had not occurred. It is important to remember that the profits I have been referring to are the profits allegedly lost by Plaintiffs, not the profits, if any, made by Defendants on the allegedly infringing sales.

### 3.2 Lost Profits—Panduit Factors

Plaintiffs has proven its lost profits if you find that Plaintiffs has proven each of the following factors by the more likely than not standard:

1.the demand for the patented product;

2.absence of acceptable non-infringing substitutes;

3.that Plaintiffs had the manufacturing and marketing ability to make all or a part of the infringing sales actually made by Defendants; and

4.the amount of profit that Plaintiffs would have made if it were not for Defendants' infringement. I will now explain each of these factors.

### 3.3 Lost Profits—Panduit Factors—Demand

The first factor asks whether there was demand for the patented product in the relevant market. Plaintiffs can prove demand for the patented product by showing significant sales of Plaintiffs' own patented product. Plaintiffs also can prove demand for the patented product by showing significant sales of Defendants' product that are covered by one or more of the asserted claims of the patent-in-suit. To use sales of Defendants' product as proof of this demand, however, Plaintiffs' and Defendants' product must be sufficiently similar to compete against each other in the same market or market segment.

### 3.4 Lost Profits—Panduit Factors—Acceptable Non- Infringing Substitutes

The second factor asks whether there was non-infringing, acceptable substitutes for the Plaintiffs' product that competed with Defendants' infringing product in the marketplace and the impact of such substitutes on the marketplace absent the sale of Defendants' product. If the realities of the marketplace are that competitors other than Plaintiffs would likely have captured some or all the sales made by Defendants, even despite a difference in the products, then Plaintiffs are not entitled to lost profits on those sales.

To be an acceptable substitute, the product must have had one or more of the advantages of the patented invention that were important to the actual buyers of the infringing products, not the public in general. The acceptable substitutes also must not infringe the patent because they were licensed under the patent or they did not include all the features required by the patent. A non-infringing substitute may be one that involved the modification of the infringing product to avoid infringement or the removal of at least one feature of the invention from the product. The acceptable substitutes, in addition to being either licensed or non-infringing, must have been available during the damages period. The acceptable substitute need not have actually been sold at that time. But, if the acceptable substitute was not sold during the damages period, then

Defendants must show by a preponderance of the evidence that, during the damages period, a competitor or Defendants had all the necessary equipment, materials, know-how, and experience to design and manufacture the acceptable substitute. If you determine that some of Defendants' customers would just as likely have purchased an acceptable non-infringing substitute, then Plaintiffs have not shown it lost those sales but for Defendants' sales.

Even if you find that Plaintiffs' and Defendants' products were the only ones with the advantages of the patented invention, Plaintiffs are nonetheless required to prove to you that it, in fact, would have made Defendants' infringing sales.

## 3.5 Lost Profits—Market Share

If you find that there were other acceptable non-infringing substitutes in the market, then Plaintiffs may be entitled to lost profits on a portion of Defendants' infringing sales. The burden is on Plaintiffs to prove that it is more likely than not that its product competed in the same market as Defendants' infringing product, and that Plaintiffs would have made a portion of the infringing sales equal to at least Plaintiffs' share of that market but for Defendants' infringement. It is not necessary for Plaintiffs so prove that Plaintiffs and Defendants were the only two suppliers in the market for Plaintiffs to demonstrate entitlement to lost profits. The burden is on Plaintiffs, however, to show that it is more likely than not that it would have sold that portion had Defendants' product never existed.

## 3.6 Lost Profits—Panduit Factors—Capacity

The third factor asks whether Plaintiffs had the manufacturing and marketing ability to actually make the sales it allegedly lost due to Defendants' infringement. Plaintiffs must prove that it could have supplied the additional products needed to make the sales Plaintiffs said it lost, or that

someone working with Plaintiffs could have supplied the additional products. The Plaintiffs also must prove that it more likely than not had the ability to market and sell these additional products.

**3.7 Lost Profits—Panduit Factors—Amount of Profit—Incremental Income Approach**

Plaintiffs may calculate the amount of its lost profits by calculating its lost sales and subtracting from that amount any additional costs or expenses that Plaintiffs would have had to pay to make the lost sales. This might include additional costs for making the products, additional sales costs, additional packaging costs, additional shipping costs, etc. Any costs that do not change when more products are made, such as taxes, insurance, rent, and administrative overhead, should not be subtracted from the lost sales amount. The amount of lost profits cannot be speculative, but it need not be proven with unerring certainty.

**3.8 Price Erosion**

Plaintiffs are entitled to recover additional damages if it can show that it is more likely than not that, but for Defendants' infringement, Plaintiffs would have been able to charge higher prices. If you find that Plaintiffs have met its burden of proof, then you may award as additional damages an amount equal to the difference between the profits that Plaintiffs would have made at the higher price and the profits Plaintiffs actually made selling its products at the lower price that Plaintiffs charged. This type of damage is referred to as "price erosion damages." If you find that Plaintiffs suffered price erosion damages, then you also may use the higher price that Plaintiffs would have charged in determining Plaintiffs' lost sales and lost profits due to Defendants' infringement. However, if you calculate price erosion damages using the higher price for the patented product, then you also must take into account any decrease in Plaintiffs' sales that might

have occurred due to the higher price for the products. To award damages based on price erosion, it is not required that Plaintiffs knew that Defendants' competing product infringed the patent if Plaintiffs reduced its price to meet Defendants' prices.

## 3.9 Cost Escalation

Plaintiffs can recover additional damages if it can show that it also lost profits because its costs—such as additional marketing costs—went up as a result of Defendants infringement of Plaintiffs' patent. Plaintiffs must prove that it was more likely than not that its costs went up because of [the Defendant]'s actions, and not for some other reason.

## 4. Reasonable Royalty

## 4.1 Reasonable Royalty—

If you find that Plaintiffs have not proven its claim for lost profits, or if you find that Plaintiffs have proven its claim for lost profits for only a portion of the infringing sales, then you must consider the issue of a reasonable royalty. The amount of damages that Defendants pays Plaintiffs for infringing Plaintiffs' patent must be enough to compensate for the infringement but may not be less than a reasonable royalty for the use of Plaintiffs' invention.

You must award Plaintiffs a reasonable royalty in the amount that Plaintiffs have proven it could have earned on any infringing sales for which you have not already awarded lost profit damages. A royalty is a payment made to a patent owner by someone else in exchange for the rights to make, use, sell, or import a patented product. The reasonable royalty award must be based on the incremental value that the patented invention adds to the end product. When the infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by the patented features. The ultimate combination of royalty

base and royalty rate must reflect the value attributable to the infringing features of the product, and no more.

## 4.2 Reasonable Royalty Definition—Using the "Hypothetical Negotiation"

Method A reasonable royalty is the royalty that would have resulted from a hypothetical license negotiation between Plaintiffs and Defendants. Of course, we know that they did not agree to a license and royalty payment. But, to decide on the amount of reasonable royalty damages, you should assume that the parties did negotiate a license just before the infringement began. Therefore, it is called a "hypothetical" license negotiation. You should assume that both parties to the hypothetical negotiation understood that the patent was valid and infringed and both were willing to enter into a license just before the infringement began. You should also presume that the parties had full knowledge of the facts and circumstances surrounding the infringement at the time of the hypothetical negotiation.

## 4.3 Reasonable Royalty—Relevant Factors - If Using the Hypothetical Negotiation Method

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent: [LIST ONLY THOSE FACTORS RELEVANT IN THE CASE AND PROPERLY SUPPORTED BY ADMITTED EVIDENCE.]

1.Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

 2.The rates paid by Defendants to license other patents comparable to the '248, '609 and '088 patents.

3. The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5. The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6. The effect of selling the patented product in promoting other sales of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

7. The duration of the '248, '609 and '088 patents and the term of the license.

8. The established profitability of the product made under the '248, 609, '088 patents; its commercial success; and its popularity.

9. The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by or for the licensor; and the benefits to those who have used the invention.

11. The extent to which Defendants has made use of the invention; and any evidence that shows the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor and a licensee (such as Defendants) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16. Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

## 4.4 Reasonable Royalty— Attribution/Apportionment

The amount you find as damages must be based on the value attributable to the patented technology, as distinct from other, unpatented features of the accused product, or other factors such as marketing or advertising, or Defendants' size or market position. In determining the appropriate royalty base and the appropriate royalty rate, the ultimate combination of both the royalty rate and the royalty base must reflect the value attributable to the patented technology. In

other words, the royalty base must be closely tied to the invention. It is not sufficient to use a royalty base that is too high and then adjust the damages downward by applying a lower royalty rate. Similarly, it is not appropriate to select a royalty base that is too low and then adjust it upward by applying a higher royalty rate. Rather, you must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone.

## 4.5 Reasonable Royalty—Entire Market Value Rule

A multi-component product may have both infringing and non-infringing components. In such products, royalties should be based not on the entire product, but instead on the "smallest salable unit" that practices the patent and has close relation to the claimed invention. Where the smallest salable unit is, in fact, a multi-component product containing several non-infringing features with no relation to the patented feature, damages must only be based on the portion of the value of that product attributable to the patented technology. This may involve estimating the value of a feature that may not have ever been individually sold. The entire market value rule is a narrow exception to this general rule. To recover damages as a percentage of revenues or profits attributable to the entire product, Patentee must establish that it is more likely than not that the patented feature drives the demand for an entire multi-component product such that it creates the basis for customer demand or 'substantially creates the value of the product.

## 4.6 Reasonable Royalty—Multiple Patents

If you find that [the Defendant] infringed multiple patents, even by a single infringing act, and if you award a reasonable royalty for the infringement, then you may award separate royalties to Plaintiffs for each patent that was infringed. You also may consider evidence of the number of

patent licenses that are needed for the allegedly infringing product and the effect on the hypothetical negotiation of having to pay a royalty for each of those licenses.

## 4.7 Reasonable Royalty—Timing

Damages are not based on a hindsight evaluation of what happened, but on what the parties to the hypothetical license negotiations would have agreed upon. Nevertheless, evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. You may also consider information the parties would have foreseen or estimated during the hypothetical negotiation, which may under certain circumstances include evidence of usage after infringement started, license agreements entered into by the parties shortly after the date of the hypothetical negotiation, profits earned by the infringer, and non-infringing alternatives.

## 4.8 Reasonable Royalty—Availability of Non- Infringing Substitutes

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of acceptable non-infringing substitutes to the patented invention. An acceptable substitute must be a product that is licensed under the patent or that does not infringe the patent.

## 4.9 Reasonable Royalty—Use of Comparable License Agreements

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the patents in question, or for rights to similar technologies. A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between Plaintiffs and Defendants, for you to consider it. However, if you choose to rely upon evidence from any other license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between Plaintiffs and

Defendants, in terms of the technologies and economic circumstances of the contracting parties, when you make your reasonable royalty determination.

## 4.10 Doubts Resolved Against Infringer

Any doubts that you may have on the issue of damages due to Defendants' failure to keep proper records should be decided in favor of Plaintiffs. Any confusion or difficulties caused by Defendants' records also should be held against Defendants not Plaintiffs.

## 5. Willful Infringement

## 5.1 Willful Infringement—Generally

If you find that it is more likely than not that Defendants infringed a valid claim of Plaintiffs' patent, either literally or under the doctrine of equivalents, then you must also determine whether or not Defendants' infringement was willful. To show that Defendants' infringement was willful, Plaintiffs' must prove by a preponderance of the evidence that Defendants knew of Plaintiffs' patent and intentionally infringed at least one asserted claim of the patent. For example, you may consider whether Defendants' behavior was malicious, wanton, deliberate, consciously wrongful, flagrant, or in bad faith. However, you may not find that [the Defendant]'s infringement was willful merely because Defendants knew about the patent, without more. In determining whether Plaintiffs has proven that Defendants' infringement was willful, you must consider all the circumstances and assess Defendants' knowledge at the time the challenged conduct occurred.

If you determine that any infringement was willful, you may not allow that decision to affect the amount of any damages award you give for infringement.