# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Focus Products Group International, LLC; Zahner Design Group, Ltd; Hookless Systems of North America, Inc.; SF Home Decor, LLC; Sure Fit Home Decor Holdings Corp.; and Sure Fit Home Products, LLC<br><br>                Plaintiffs,<br>v.<br><br>Kartri Sales Company, Inc., and Marquis Mills, International, Inc.<br><br>                Defendants. | 1:15-CV-10154<br><br>(PAE/SDA) |

## DEFENDANTS' REPLACEMENT TO DAUBERT MOTION (DKT 337) TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT JAMES A. ROBERTS ON THE ISSUE(S) OF TRADEMARK AND TRADE DRESS INFRINGEMENT

This Replacement motion was invited by the Court (dkt 360) to supplement Defendants' original motion (dkt 337) filed on April 15, 221. A footnote concerning Mr. James Roberts' expert witness appearance in another case (*Bobcar Media LLC v. Aardvark Event Logistics, Inc.*, 1:16-cv-885-JPO) has been inserted on page 3. This affected the pagination, i.e., page breaks on subsequent pages. Two other comments appear on page 6 and page 7, respectively, that refer back to footnote 2. No other arguments have been made or changed. The April 15 signature and filing date has been retained.

For the convenience of the Court, Defendants are also enclosing a copy of the Opinion and Order in the *Bobcar* matter, dkt 159 as it appears in that action.

Defendants Kartri Sales Company, Inc. and Marquis Mills by their respective counsel, hereby move this Honorable Court pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert*[1]. Rule 702 permits the admission of expert testimony where "scientific, technical or other specialized knowledge will assist the trier of fact to understand evidence or to determine a fact in issue. Fed. R. Evid. 702. Rule 702 requires that the court act as "gatekeeper" who determines whether proffered expert testimony is reliable and relevant before accepting an expert as a witness. *Kumho Tire Co., Ltd v. Carmichael*, 526 U.S. 137 (1999).

In assessing a motion to exclude expert testimony under Rule 702, the Court must consider whether the proposed witness: (1) is qualified to offer opinion testimony under Rule 702; (2) has employed a reliable methodology; (3) proposes to offer opinions that follow rationally from the application of his "knowledge, skill, experience, training, or education"; and (4) presents testimony on a matter that is relevant to the case at hand, and thus helpful to the trier of fact. *Coml. Tire, supra*, at 151 - 153. Also, the proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* requirements.

**Mr. Roberts Qualifications do not match with the Hospitality Market**

Mr. Roberts' special area of expertise appears to be the purchasing habits of consumers, which we understand to be individuals who purchase items for their own personal use, rather than professional buyers who purchase goods regularly, usually in quantity, for the use of their customers, or in the case of the hospitality trade, for hotel guests, and for installation, laundering, and replacing by the hotel housekeeping staff. Mr Roberts lists his expert qualifications on pages 2 - 3 of his report, and his professional CV is at page 26 and following (See Exhibit D-C-

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) provides the proper framework for the admissibility of expert testimony.

1). As a Professor of Marketing at Baylor, his focus has been *consumer* behavior courses, and his publications all concern consumers and marketing to consumers. His featured publications include leading consumer behavior textbooks. It is against his background in consumer behavior research that he bases his opinion(s) on questions of likelihood of confusion in the hotels and hospitality trade, and apparently on other conclusions he is making about trademark and trade dress issues. (Para 14, page 3) Mr. Roberts' CV (attached to his report) makes many mentions of consumer behavior, but none at all about business-to-business selling, and certainly nothing relevant to sales of merchandise to professional buyers, like Kartri's customers. The same concentration only on consumer behavior is repeated in his listing of teaching interests, research interests, and publications (pages 28, 29).

**Mr Roberts Techniques are Faulty**

In most trademark cases where expert testimony is presented, the parties employ an expert to conduct and report on a customer survey. That was not done by Mr. Roberts. No such survey is in his report. Rather, Mr. Roberts is opining that from his own experience and education, he can conclude that the relevant customers ("consumers" in his words) would see similarity between Defendant's accused product(s) and the Plaintiffs' alleged Trade Dress, and be confused, misled or deceived by it. That technique would not have repeatable results for anyone other than him.[2]

---

[2] Mr. Roberts' expert report and proposed testimony are very similar to what he prepared for another trademark and trade dress civil action in the Southern District, namely *Bobcar Media LLC v. Aardvark Event Logistics, Inc.* (*Bobcar*) 1:16-cv-885-JPO; his report being presented March 18, 2019, just a few months after his expert report in this matter. See Opinion and Order (dkt 159 in that action). The *Bobcar* court precluded admission of his expert report and expert testimony for reasons that track with arguments made by defendants here, e.g., "Roberts offers no analysis beyond highlighting aspects of the record that he finds important" (dkt 159 at 6).

As for methodology, Roberts' report mentions only "consumers" and sales vehicles for selling [shower curtains] to consumers, such as QVC (television shopping channel) where sales are made in small quantities at retail directly to end users such as homemakers (paragraphs 31 - 35, page 9). While Mr. Roberts does mention several hotel chains in terms of "their trade dress and trademark hav[ing] been adopted", Roberts does not in any way differentiate the sort of purchase decisions that many consumers make where impulse purchases and "shiny objects" play a major role, with the careful, deliberate purchase decisions that seasoned professional purchasers make.

In short, Mr. Roberts does not list or offer any expertise relevant to the impact of business-to-business sales relationships and how that affects trade dress and trademark perceptions, even though those are precisely the sort of sales space that Defendnt Kartri occupies.

Mr. Roberts discusses trade dress issues (Exh. D-C-1, pages 7 - 9) repeating the plaintiffs' overbroad description of its tradedress as found in the 4th Amended Complaint. In paragraph 24 he mis-states a quote taken from *Cartier, Inc. v. Scardell* [sic., *Sardell*] 294 F. Appx 615, 620 (2d Cir. 2008), to wit, that "trade dress is functional and thus not protectable, when it is essential to the purpose of the article." However, that quoted passage from *Scardell* is misstated: the decision actually states "a product *feature* is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." [emphasis added]

Mr. Roberts does not consider the use or purpose of such product features as completely circular round rings (which allow the curtain to hand from a curtain rod and reinforce the fabric around the round openings) or the slits (which allow the curtain to be installed onto the rod and

4

removed from the rod without having to remove one end of the rod from the wall). Mr. Roberts does not consider whether any of the product features, such as the ring or the slit, are features that are dictated by the functions they perform. Notably, Roberts copies from Plaintiffs' pleadings exactly the mis-spelling of Scardell in that legal opinion, just as he mis-states (i.e., omits "product feature") exactly as had Plaintiffs' pleadings. Consequently, it is clear Roberts did not actually read or consider *Cartier v Scardell* himself.

**Mr. Roberts' Opinion does not flow from his "knowledge, skill, experience, training, or education**

Mr. Roberts does not seem to see any difference between the significant product features which are a necessary component of the alleged trade dress, and the entire trade dress. Nor does Mr. Roberts appear to have any acquaintance with Competitive Necessity, or with the basic holdings of the leading Supreme Court cases in this area such as *Traffix*[3] and *Inwood Laboratories*[4] on the issue of the functionality of the components of either Plaintiffs' or Defendants' product. (Note that *Traffix* held that if a product design component is found to be functional, then it doesn't matter whether there are other possible designs for that component.) Se also *Qualitex Co. v. Jacobson Products Co., Inc.*, 514 U.S. 159 (1995); *Valu Engineering Inc. v. Rexnord Corp.*, 278 F.3d 1268 (Fed. Cir. 2002). He clearly has no real background, training, or expertise for the activities in this particular market.

**Mr. Roberts proposed testimony does not fit the case at hand here, and would not be helpful to a jury**

In Mr. Roberts' testimony taken at his deposition on February 25, 2019 (relevant pages of

---

[3] *Traffix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23 (2001)
[4] *Inwood Labs, Inc. v. Ives Labs, Inc.*, 456 U.S. 844 (1982)

5

which appear as Exhibit D-C-2), Mr. Roberts states he has never given expert testimony earlier relating to Trade Dress or at least did not recall any (Exh. D-C-2, page 9, line 1 to 10, line 2), and did not recall which, if any US trademark registrations he had reviewed related to Trade Dress (id., page 17, line 3 to 19, line 19).

As evidence of secondary meaning of Trade Dress, Mr. Roberts relied on the secondary meaning of the word mark "HOOKLESS" (id., page 36, line 18 to page 38, line 10), explaining that because the word mark HOOKLESS had acquired secondary meaning, then so must have the product configuration trade dress, even though Mr. Roberts could provide no further explanation of why that would be the case. (id., page 37 lines 5 - 8). See also, n. 2 *Bobcar* (dkt 159) id., 8:8-9, "Roberts does not provide any support for this [secondary meaning] opinion."

At page 41, line 2 to 44, line 6, Mr. Roberts admits he had been informed by Plaintiffs' attorneys of evidence of the trade dress, but apparently he had not inspected it himself. He simply concluded that since "HOOKLESS" had acquired secondary meaning then the look itself would have acquired secondary meaning, blithely stating that "Hookless" describes the trade dress. Mr. Roberts' report stated that the evidence produced for the HOOKLESS word mark supports secondary meaning in the trade dress, but when asked about this in his deposition (id., p. 37, lines 5 to 8) he replies that the question is somewhat outside his area.

When asked to point out the Design Elements of Plaintiffs' Trade Dress and state what is meant by "design element" in a trade dress context, his answer was simply "the total package" (id., page 63, line 18 to page 64, line 20) of everything listed.

When asked how he would, in his own words, define what is meant by "design element", he said he did not see how that was relevant. (id., p. 64, lines 5 to 18). Also, although Mr.

Roberts has said the trade dress rights go back more than 20 years, he has no knowledge of what Plaintiffs' product looked like 20 years ago (id, p. 108, lines 2 to 8).

When asked what is the *genus* word for the genus or type of shower curtain to which the HOOKLESS shower curtains belong, Mr. Roberts could not be made to understand the question. (id. p. 108, line 14 to 110, line 2).

The Witness's output, i.e., his report and deposition testimony, do not exhibit the skill and understanding of either what product configuration Trade Dress is or how the (Hotels and Hospitality) market functions where Defendant Kartri operates, nor does Mr. Roberts exhibit any understanding about how information is to be gathered and analyzed reliably and scientifically. "Roberts's expert report is pervaded with impermissible legal conclusions and his opinions are not based on any evident reliable methodology" *n.2 Bobcar*, id., 9:5-6.

**Conclusion**

Accordingly, all or parts of the Plaintiffs' expert witness Roberts' report and testimony should be precluded, especially any testimony or evidence as to the relevant market in which Defendant's accused product is sold, how trademarks and trade dress are perceived in business-to-business sales, or any testimony on the impact of such business-to-business sales where sales are made to regular professional buyers who are not themselves "consumers" of that product. This proposed witness clearly lacks an understanding of the market and the product, and there are serious flaws in the methodology he used to arrive at his report.

Defendants therefore seek an Order that Mr. Roberts be precluded from testifying about:

    a. What hospitality trade professional buyers would perceive the Plaintiff's trade dress to be;

b. Which design features of defendant's accused shower curtain buckles are functional and which are non-functional;

c. Whether the Plaintiffs' alleged trade dress has acquired secondary meaning within the hospitality market, and what evidence there is to suggest that there is secondary meaning for their product within the hospitality market; and

d. Whether professional buyers in the hospitality market are likely to be confused, misled or mistaken about the source or sponsorship of Defendant's accused product.

e. Whether the Plaintiffs' HOOKLESS brand shower curtain has attained the required secondary meaning.

Respectfully submitted

This April 15, 2021

By: /s/Bernhard P Molldrem, Jr (BM1960)
Law Office of Bernhard Molldrem
224 Harrison Street
Syracuse, NY 13202
(315) 422-4323

Counsel for Defendant
Kartri Sales Company, Inc.

By: /s/Donald J. Cox, Jr. (Pro Hac Vice)
Law Offices of Donald Cox
103 Carnegie Center, Suite 300
Princeton, NJ 08540
(609) 921-0477

Attorney for Defendant Marquis Mills International, Inc.

By:/s/ Angela Foster (3911534)
Law Office of Angela Foster
2906 Birchwood Court
North Brunswick, NJ 08902
(732) 821-9363
Attorney for Defendant
Kartri Sales Company, Inc.

**Certificate of Service**

I hereby certify that true and correct copy of the foregoing motion and accompanying exhibits and affirmation has been filed and served on all parties through the Court's ECF system

Dated May 6, 2021    By: /s/B Molldrem
            Bernhard P Molldrem, Jr., Counsel for Defendant Kartri Sales Company, Inc.

Contrary to defendants' claim, the Court did not grant defendants leave to file this motion. The court merely acknowledged receipt of defendants' letter. Dkt 360. The deadline to file motions in limine expired on April 15, 2021. This motion is thus uninvited and untimely. The Court therefore will disregard it. SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge
5/7/2021

9