UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FOCUS PRODUCTS GROUP INTERNATIONAL, LLC, ZAHNER DESIGN GROUP, LTD., HOOKLESS SYSTEMS OF NORTH AMERICA, INC., SURE FIT HOME PRODUCTS, LLC, SURE FIT HOME DÉCOR HOLDINGS CORP., *and* SF HOME DÉCOR, LLC,<br><br>Plaintiffs,<br><br>-v-<br><br>KARTRI SALES COMPANY, INC., *and* MARQUIS MILLS, INTERNATIONAL, INC.,<br><br>Defendants. | 15 Civ. 10154 (PAE)<br><br><u>OPINION & ORDER</u> |

PAUL A. ENGELMAYER, District Judge:

This case is on remand from the Federal Circuit. In brief, the plaintiff companies (collectively, "Focus") and their predecessors invented and obtained patents on a type of "hookless" shower curtain—one which attaches to curtain rods using embedded rings instead of hooks. Focus today manufactures, sells, and distributes such curtains. Defendant Kartri Sales Company, Inc. ("Kartri") and defendant Marquis Mills, International, Inc. ("Marquis"), working together, have manufactured and supplied similar shower curtains. In this litigation, Focus has claimed that defendants' shower curtains infringed its patent, trademark, and trade dress rights. The Court, first on motions for summary judgment, and later after a bench trial, has resolved these claims. On defendants' appeals, however, the Federal Circuit, while affirming as to certain claims, reversed or vacated others.

This decision resolves issues relating to the patent-infringement claims in this case that were left open by the Circuit's remand. A separate decision today addresses open issues relating to the trademark and trade dress claims.

# I. Relevant Background[1]

## A. District Court Proceedings

Three patents are centrally at issue: the parent patent, U.S. Patent No. 6,494,248 (the "'248 patent"), and two continuation patents, Patent No. 7,296,609 (the "'609 patent"), and Patent No. 8,235,088 (the "'088 patent") (collectively, the "Asserted Patents"). The '248 and '609 patents are related utility patents covering "grommet-style" shower curtains that attach to rods without the use of any hooks. *Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*, 156 F.4th 1259, 1274–76 (Fed. Cir. 2025) ("*Focus Fed. Cir. Dec.*"). Both cover rings without a flat upper edge. *See id.* The '088 patent, in contrast, expressly contemplates a flat upper edge. *Id.* at 1278. The '088 patent also requires a "projecting edge"—that is, an element that projects off of the ring's "outer circumference"—and a slit that exits the inner circumference at a position offset from 12 o'clock. *Id.* at 1269. The accused products in this case, manufactured by Marquis and sold by Kartri under the name "Ezy Hang," similarly use hook-free rings. These bear a "D-shaped ring," which Focus contended falls within the scope of its patents' claims. *Id.* at 1286.

On August 9, 2018, after a *Markman* hearing, the Court construed several disputed terms of the three patents. *Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*, No. 15 Civ. 10154 (PAE), 2018 WL 3773986, at *1 (S.D.N.Y. Aug. 9, 2018) ("*Markman* Ruling"). Among the contested patent terms the Court construed relating to the shower curtains and their rings are "ring," "inner circumference," "outer circumference," and "projecting edge." *Id.* at *3–11.

[1] The Court assumes familiarity with this case, the factual background to which is set out in its earlier decisions. In rendering this summary, the Court has drawn upon these decisions and the overall case record, as well as the parties' motions on remand, to wit, plaintiffs' memorandum of law in support of summary judgment on grounds of patent construction and infringement, Dkt. 575 ("Ps' Opening Br."), defendants' opposition, Dkt. 579 ("Opp'n"), and plaintiffs' reply, Dkt. 580 ("Reply"). For exhibits and briefs with both internal and Bates-stamped numbering, the Court cites the Bates-stamped page numbers. Acronyms used here are as used in the Court's prior decisions.

On April 16, 2020, based on these constructions and after discovery, the Court granted plaintiffs' motion for partial summary judgment, finding that defendants infringed various claims of all three patents. *Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*, 454 F. Supp. 3d 229, 253 (S.D.N.Y. 2020) ("*Focus I*").

On December 22, 2022, after a six-day bench trial, the Court found that Kartri had infringed Focus's HOOKLESS® trademark ("HOOKLESS® mark") and that both defendants had infringed Focus's EZ ON trademark ("EZ ON mark") and its shower curtain trade dress. *Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*, 647 F. Supp. 3d 145, 271 (S.D.N.Y. 2022) ("*Focus II*"). The Court also determined that defendants' infringement of the Asserted Patents and trade dress had been willful. *Id.* The Court awarded Focus lost profits, reasonable royalties, and attorneys' fees. *Id.*

**B. The Federal Circuit's Decision**

On September 30, 2025, on defendants' appeals, the Federal Circuit affirmed in part, reversed in part, vacated in part, and remanded for further proceedings. *Focus Fed. Cir. Dec.*, 156 F.4th at 1289.

Relevant to the patent claims, as to the '248 and '609 patents, the Circuit reversed an aspect of the Court's claim construction, specifically, its construction of the patent term "ring" (referring to the "shower ring") to include "rings with 'flat upper edges.'" *Id.* at 1273–76. That construction had been the basis of the Court's patent-infringement holdings. *Id.* Accordingly, the Circuit reversed—as to Marquis, which had appealed the Court's patent-infringement holdings—the holdings that the accused products had infringed those two patents. *Id.* at 1276. As to the '088 patent, the Circuit, although affirming the Court's claim construction, including as to the disputed term "projecting edge," vacated and remanded—again, as to Marquis—with instructions for the Court to amplify on its infringement analysis. *Id.* at 1277–79.

The Circuit affirmed the patent-infringement holdings against Kartri. *Id.* at 1286. It found that Kartri had deliberately forgone, and thus waived, any appellate challenge to those judgments. *Id.* The Circuit, however, vacated the finding that Kartri's infringement had been willful, directing the Court to reassess that finding in light of its reversal or vacatur of the infringement determinations as to Marquis, based on the same allegedly infringing products. *Id.* at 1287–88.

### C. Submissions on Remand

On November 24, 2025, the Federal Circuit's mandate issued. Dkt. 557. On December 4, 2025, the Court directed the parties to submit a joint letter with their views as to next steps. Dkt. 558. After extensions to take into account a possible petition for certiorari, Dkts. 559–63, the Court, on January 23, 2026, directed the parties to jointly enumerate the claims in the case that were unresolved following the Circuit's decision, and to set out as to each "whether the factual record is complete with respect to the claim and whether additional fact-finding is necessary for the Court to resolve that claim (both as to liability and, if liability is found, damages)." Dkt. 566 at 2. In letters in February and March, the parties did so. Dkts. 567–69.

On April 2, 2026, the Court, guided by the parties' letters, identified two categories of open issues for briefing. Dkt. 570. The first set to be briefed—and the subject of this decision—involved "issues of patent construction and infringement." *Id.* at 1. The second involved open issues of trade dress and trademark infringement. *Id.* at 3.

On April 24, 2026, Focus filed its opening brief on the patent issues. Dkt. 575. On May 7, 2026, defendants opposed. Dkt. 577. On May 14, 2026, Focus replied. Dkt. 580.

## II. Discussion

The parties have helpfully identified the issues left open by the Federal Circuit. There are three such issues relevant to the patent infringement claims.

The first involves the infringement claims against Kartri as to the ’248 and ’609 patents. The Circuit, although reversing the infringement holdings as to Marquis based on the same products, found that Kartri had on appeal waived its right to challenge those holdings as to it. *Focus Fed. Cir. Dec.*, 156 F.4th at 1286. Focus and Kartri disagree whether the remand establishes, or leaves unresolved, Kartri’s infringement.

The second involves the claim that Marquis infringed the ’088 patent. In vacating, the Circuit directed the Court to determine whether Marquis had infringed, with attention to the interplay between the patent terms “outer circumference” and “projecting edge.” *Id.* at 1279.

The third issue involves Focus’s claim of willful infringement, in particular, whether, in light of the Circuit’s reversal and vacatur of the Court’s infringement findings, the Court’s finding that Kartri willfully infringed should stand.

**A. Patent Infringement as to Kartri**

Focus argues that the Court does not have authority to revisit Kartri’s liability for infringing the ’248, ’609, and ’088 patents. It notes that the Circuit warned Kartri that filing non-compliant appellate briefs would result in waiver of its right to appeal the findings of infringement against it; that Kartri’s non-compliance persisted; and that the Circuit thereupon expressly affirmed these findings, even while reversing (as to the ’248 and ’609 patents) and vacating (as to the ’088 patent) the same findings as to Marquis. Kartri opposes, arguing that the Circuit’s affirmance left the Court free to revisit the issue. It terms this Court’s summary judgment rulings on this point mere “interlocutory order[s].” Opp’n at 9–10. It urges the Court to enter a judgment of non-infringement for it. *Id.* at 12.

**1. Did Kartri Waive its Non-Infringement Claims Before the Circuit?**

The Court considers first whether Kartri, before the Circuit, waived its right to challenge the judgments against it for patent infringement. Kartri clearly did so. The record reflects with

clarity that, on appeal, Kartri was warned of the consequences of its non-compliant briefing as to non-infringement, was given an opportunity to correct, and chose not to do so.

The issue crystallized at the May 5, 2025 oral argument. The Circuit chastised the two defendants for filing "non-compliant briefs [in which] [they] attempted to incorporate by reference each other's briefs, dividing up the arguments," with Marquis alone addressing patent infringement. Ps' Opening Br., Ex. 1 at 3. Chief Judge Moore stated:

> One of you took on the patent arguments. The other took off trade—on the trademark and trade dress arguments. And you attempted to incorporate each other's briefs by reference, which would have literally doubled your word count, leaving potentially Focus at quite a disadvantage. Our Court struck your briefs as improperly filed by virtue of your attempt to incorporate them by reference and instructed you to refile. Is that correct?

*Id.* After Kartri's counsel admitted that was accurate, Chief Judge Moore noted that defendants' refiled briefs had "continue[d] the identical error." *Id.* at 4. These briefs, she stated, were:

> . . . almost like an in your face to the Court. We don't see this very often. One brief spans 40-plus pages addressing patent infringement, covering three patents, multiple different claim terms. And the other brief spends one page on patent infringement.

*Id.* As a result, the Circuit, after argument, issued an order to show cause, in which it directed the defendants to explain why sanctions were not appropriate for violating the Circuit's order and whether such could include "forfeiture of . . . all the arguments that you failed to properly develop and address in your briefs." *Id.*

On May 15, 2025, Kartri filed its response. It represented:

- It "revised its opening brief so as to eliminate the sections identified by the [Circuit as including incorporated material]—and ensure[d] that it did not refer to *any* material from Marquis's brief." Ps' Opening Br., Ex. 2 at 4 (emphasis in original).

- "[Its] brief is complete on its face, and does not incorporate or rely on any other brief. . . . Kartri understood that by eliminating references to Marquis's brief it would *no longer be 'seek[ing] the benefit of' the material contained in those portions*." *Id.* at 5 (emphasis added).

- "Kartri believes that if the [Circuit] ever were to reach patent infringement issues in this matter—which Kartri believes it should not—it is possible to vacate the findings of patent infringement based solely on Kartri's concise argument and record citations. *Kartri recognizes that the* [Circuit] *might decline to do so based on the argument's brevity* (*e.g.*, *Trading Tech. Int'l v. IBG LLC*, 921 F.3d 1084, 1095 (Fed. Cir. 2019)), *and has accepted that risk.* No incorporation of the Marquis brief was requested or expected." *Id.* at 7 (emphasis added).

Kartri argued that the Circuit should "consider the arguments set out in its Corrected Opening Brief," without incorporating any of Marquis's arguments, but not impose a further sanction. *Id.* at 8. Kartri did not propose "what an appropriate sanction would be," as the Circuit had requested. *Id.* at 10 n.3.[2]

The Circuit found that Kartri had waived its non-infringement arguments. *Focus Fed. Cir. Dec.*, 156 F.4th at 1285. It stated:

> Kartri and Marquis filed noncompliant briefs that divided the issues on appeal and attempted to incorporate by reference each other's briefs. Kartri's brief focused on the trademark and trade dress issues, while Marquis's brief concentrated on the patent claim construction and infringement issues. After Appellees objected to Appellants' filings, we struck the non-compliant briefs and ordered Appellants to file corrected opening briefs, which did little more than delete their respective incorporation-by-reference statements. When it appeared that Kartri and Marquis were continuing to seek the benefit from any successful argument made only by the co-appellant, we issued a show cause order directing Appellants to explain why their briefing strategy did not constitute another violation of our word count limit.
>
> Both Kartri and Marquis filed separate responses, stating that their individual opening briefs were designed to stand on their own and not incorporate any material from the other Appellant's brief, nor did they seek to benefit from successful arguments made by the other that they themselves did not adequately raise. In so doing, Appellants accepted the risk that they might have waived some of their underdeveloped arguments.

---

[2] On May 16, 2025, Focus filed an opposition to Kartri and Marquis's motions, *Focus Fed. Cir. Dec.*, No. 23-1446, Dkt. 96. It recounted defendants' attempt, by incorporating each other's briefs by reference, to exceed the governing page limits and argued that it was "fair and commensurate" for Kartri to forfeit its right to pursue unbriefed arguments, including the challenge to the patent infringement findings, because defendants' stratagem to exceed the page limits had prejudiced it. *Id.* at 5–6. On May 26, 2025, Kartri opposed Focus's response, on the ground that the Circuit had not solicited it. *Focus Fed. Cir. Dec.*, No. 23-1446, Dkt. 98.

*Id*. at 1285–86 (citations omitted).

The Circuit then specifically added, as to Kartri, that, based on a "close review" of its briefs, it had "waive[d] its patent non-infringement arguments." *Id*. at 1286. It noted that Kartri had spent less than one page on all patent issues; that it had made its non-infringement arguments in a "conclusory" fashion; and that it had relied on string cites to "portions of the joint appendix," without any "clarification or explication" as to the relevance of these citations. *Id*. The Circuit thus held that Kartri's non-infringement arguments were foreclosed—and that Kartri had accepted and invited that risk. It stated: "For Kartri alone, we . . . affirm the '248, '609, and '088 patent infringement findings." *Id*. at 1287.

### 2. Can the Court Revisit Kartri's Non-Infringement Claims on Remand?

The Court next considers the effect of the Circuit's ruling on remand.

Under the mandate rule, a district court is obliged, on remand, to follow the decision of the appellate court "where issues have been explicitly or implicitly decided on appeal." *Burrell v. United States*, 467 F.3d 160, 165 (2d Cir. 2006) (Sotomayor, J.) (quoting *United States v. Minicone*, 994 F.2d 86, 89 (2d Cir. 1993)); *see also United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) ("The mandate rule compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." (emphasis omitted)). "In other words, the trial court is barred from reconsidering or modifying any of its prior decisions that have been ruled on by the court of appeals." *Minicone*, 994 F.2d at 89. Put differently, "[w]hen an appellate court has once decided an issue, the trial court, at a later stage in the litigation, is under a duty to follow the appellate court's ruling on that issue." *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir. 1977); *see also Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 175 (2d Cir. 2014) ("[W]here the mandate limits the issues open for consideration on remand, the district court ordinarily may not . . . consider[] additional

issues on remand."); *Puricelli v. Argentina*, 797 F.3d 213, 218 (2d Cir. 2015) ("[W]here a mandate directs a district court to conduct specific proceedings and decide certain questions, generally the district court must conduct those proceedings and decide those questions.").

To determine whether an issue remains "open" for reconsideration on remand, a district court looks at the "specific dictates of the remand order as well as the broader 'spirit of the mandate.'" *Ben Zvi*, 242 F.3d at 95; *United States v. Quintieri*, 306 F.3d 1217, 1229 (2d Cir. 2002) ("[W]here an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, it is considered waived and the law of the case doctrine bars the district court on remand and an appellate court in a subsequent appeal from reopening such issues unless the mandate can reasonably be understood as permitting it to do so." (internal quotation marks omitted)); *In re Coudert Bros. LLP*, 809 F.3d 94, 98 (2d Cir. 2015) ("When the mandate leaves issues open, the lower court may dispose of the case on grounds not dealt with by the remanding appellate court.").

Here, both the "specific dictates" and the "spirit" of the Federal Circuit's mandate make crystal clear that this Court is not at liberty to disturb its findings of patent infringement by Kartri. The Circuit's decision is conclusive on that point. It stated: "For Kartri alone, we . . . affirm the '248, '609, and '088 patent infringement findings." *Focus Fed. Cir. Dec.*, 156 F.4th at 1287. It cabined to Marquis its non-infringement analysis as to the '248, '609, and '088 patents. *Id.* at 1273. And to the extent it reversed or vacated portions of the Court's summary judgment rulings as to patent infringement, it did so for Marquis only. *See id.* at 1273–80.

The "spirit" of the mandate is in accord. The Circuit's discussion in finding a waiver by Kartri of any challenge to the infringement findings makes evident that the Circuit viewed with stern disfavor Kartri's attempt to end-run its order directing the parties to file independent briefs.

*See id.* at 1285–87. Kartri's bid for solicitude on remand is foreclosed by the Circuit's emphatic rebuke and explicit finding of waiver. *See id.* at 1286 ("A close review of Appellants' briefings reveal that Kartri did waive its patent non-infringement arguments."); *see also Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 671 F.3d 261, 270–71 (2d Cir. 2012) (per curiam) ("The argument was not raised on the initial appeal, and we issued a mandate that focused specifically and exclusively on [a] question [unrelated to that argument]."). Indeed, as the Circuit noted, Kartri, in its response to the order to show cause, acknowledged and assumed the risk of waiving such challenges. *Focus Fed. Cir. Dec.*, 156 F.4th at 1286 (citing Kartri's statement that it had "accepted the risk of waiver").

Accordingly, the scope, dictates, and spirit of the Circuit's mandate preclude revisiting the findings the Circuit affirmed of infringement by Kartri of the three patents. *See, e.g.*, *United States v. E.I. du Pont de Nemours & Co.*, 366 U.S. 316, 325 (1961) (mandate must be "scrupulously and fully carried out"); *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895) ("[A lower] court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded.").

Kartri's arguments to the contrary are unavailing.

First, Kartri argues that the mandate rule is "discretionary" and permits a court to revisit its prior decisions. Opp'n at 11. Kartri is incorrect. And the case on which it relies states only that such "discretion[]" exists "prior to a *final judgment*." *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001) (emphasis added).[3] Here, as Kartri acknowledged to the Circuit,

[3] Kartri misleadingly truncates the operative quote from *Aramony*. Kartri writes: "application of that doctrine 'is discretionary and does not limit a court's power to reconsider its own decisions.' *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001)." Opp'n at 11. In fact, the

"[f]inal judgment on the case was entered on June 15, 2023." *Focus Fed. Cir. Dec.*, No. 23-1446, Dkt. 46 at 2. The Circuit's unconditional affirmance of the infringement judgments against Kartri leaves the Court without discretion to revisit those. *See* 1B MOORE'S FEDERAL PRACTICE ¶ 0.402[1] (2d ed. 1987) ("[D]istrict courts in a circuit owe obedience to a decision of the court of appeals and must follow it until the court of appeals sees fit to overrule it."); *Ginett v. Comput. Task Grp., Inc.*, 11 F.3d 359, 360–61 (2d Cir. 1993) ("In following a mandate, the lower court must carry out its duty to give the mandate 'full effect.'" (citing *In re Sanford Fork & Tool Co.*, 160 U.S. at 255)). The caselaw does not afford daylight to do otherwise.

Second, Kartri terms the Court's "findings of infringement" an "interlocutory order." Opp'n at 10. That is just wrong. There of course are circumstances in which an appellate court may possess jurisdiction over a non-final judgment: under Federal Rule of Civil Procedure 54(b), from the entry of a partial final judgment, or under 28 U.S.C. § 1292(a)(1), from the denial or grant of injunctive relief. *See Zivkovic v. Laura Christy LLC*, 137 F.4th 73, 78 (2d Cir. 2025). Kartri invokes both, Opp'n at 10, but neither applies. Kartri did not move, under Rule 54(b), for entry of a partial final judgment with respect to *Focus I*'s patent infringement holdings; nor did the Court enter such relief. Kartri's invocation of § 1292(a)(1) also errs. Jurisdiction under § 1292(a)(1) is limited to requests for injunctive relief. *Barboni v. Republic of Argentina*, 672 F. App'x 112, 113 (2d Cir. 2016) (summary order). The Court's entry of summary judgment in *Focus I* was not that. *See Weight Watchers of Phila., Inc. v. Weight Watchers Int'l, Inc.*, 455 F.2d 770, 774 (2d Cir. 1972) (§ 1292(a)(1) applies only to "injunctions which give or aid in giving some or all of the substantive relief sought by a complaint . . . and not [to] restraints or

---

quote in full reads: "Application of the law of the case doctrine is discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." 254 F.3d at 410 (quoting *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 164 n.5 (2d Cir. 2000)).

directions in orders concerning the conduct of the parties or their counsel, unrelated to the substantive issues in the action, while awaiting trial" (internal quotation marks omitted)). The only aspect of the appeal here concerning injunctive relief was from a portion of *Focus II*, as to which Kartri represented, in its eventual appellate brief, that the Circuit had "jurisdiction under § 1292(a)(1)." *See Focus Fed. Cir. Dec.*, No. 23-1446, Dkt. 46 at 2. But that decision did not concern utility patent infringement. *Focus II*, 647 F. Supp. 3d at 202 ("There are no live issues at liability for patent infringement."). It involved trademark claims and awarded injunctive relief under the Lanham Act based on the HOOKLESS® and EZ ON trademarks and trade dress. *Id.* at 203–06. Kartri's appeal of *Focus I* is in no respect interlocutory. *See Alart Assocs., Inc. v. Aptaker*, 402 F.2d 779, 780 (2d Cir. 1968) (summary judgment motion denial not appealable under 28 U.S.C. § 1292(a)(1)); *Sheridan v. Liquor Salesmen's Union, Loc. 2*, 444 F.2d 393, 394 (2d Cir. 1971) (per curiam) (§ 1292(a) jurisdiction limited to "interlocutory injunctive relief").

Third, Kartri argues that Focus cannot equitably argue that "vacatur of an affirmed opinion is impossible" because it purportedly took the opposite position in this litigation. Opp'n at 10–11 (citing Focus's initial letter brief on remand). This, too, is wrong. For one thing, it is far from clear that Focus ever took the "opposite position" on Kartri's present bid. More important, "judicial estoppel," the doctrine Kartri invokes, applies only where a court rules in a party's favor in reliance on an argument the party has advanced, and that party later seeks to benefit from advancing a directly contrary position. *De La Rosa Martinez v. Harbor Express, LLC*, No. 15 Civ. 7458, 2020 WL 7249499, at *6 (S.D.N.Y. Oct. 19, 2020); *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) ("the party against whom the estoppel is asserted [must have] t[aken] an inconsistent position in a prior proceeding," and that position must have been "adopted by the first tribunal in some manner"). Nothing of the sort

happened here. No "decision" issued based on Focus's letter briefs here. There is no basis to find that the Court "adopted" Focus's position, let alone in a manner precluding it from arguing that the Court is bound by the Circuit's affirmance of the patent infringement verdict against Kartri. *See Clark v. All Acquisition, LLC*, 886 F.3d 261, 266–67 (2d Cir. 2018) (judicial adoption of party's earlier position is "necessary" condition for judicial estoppel).

The Court accordingly sustains the patent infringement judgments against Kartri.

### B. Patent Infringement as to Marquis ('088 Patent)

In vacating the finding of infringement by Marquis of the '088 patent, the Circuit directed the Court, on remand, as follows:

> [F]irst identify, for the accused products, the outer circumference of the ring. That is, it must identify the ring's outer edge "that is curved[,] at least in part[,] and that generally encloses and reinforces an opening." *Markman Order*, 2018 WL 3773986, at *4 (footnote omitted). After identifying the complete outer circumference of the accused ring, the court should then identify what, if any, "projecting edge" projects from, i.e., off of that outer circumference of the accused ring. . . . In other words, the district court must fully explain how it found a projecting edge in the accused products and identify and explain where the "outer circumference" ends and the "projecting edge" begins.

*Focus Fed. Cir. Dec.*, 156 F.4th at 1279. The Court's analysis heeds that directive.

#### 1. Step 1: What is the "Outer Circumference" of the "Ring"?

The parties have competing views as to the term "outer circumference." These differ as to whether the "outer circumference" includes the "entire periphery" of the ring or only a portion of it. Focus contends that the outer circumference need not encompass the entire perimeter so as to circumscribe the entire ring. Ps' Opening Br. at 9. Citing the Court's *Markman* Ruling, it urges that "[i]nstead of continuing in a circle like the inner circumference, the outer circumference stops turning at [certain] end points." *Id.* at 11. Marquis contends that the outer circumference includes "both the curved portions of the ring and the flat upper portion," which "[t]ogether . . . form the outer edge of the ring." Opp'n at 18. In other words, it argues, "[t]he

outer circumference is the complete outer edge of the ring, not a subset of that boundary." *Id.* at 15.





Ex. A: Focus's Proposed Outer Circumference (in red)

Ex. B: Marquis's Proposed Outer Circumference (in green)

The Court's analysis proceeds in three parts. First, the Court identifies the outer boundary of the "ring" structure. Second, the Court considers whether the non-circular portion of the ring is part of its "outer circumference." Third, the Court, again heeding the Circuit's direction, considers how the figures considered during patent prosecution bear on the outer circumference. These factors together clearly favor Marquis's position.

In identifying the outer boundary of the "ring," the Court identifies an outer edge that is "curved at least in part," and that "generally encloses and reinforces an opening." *Focus Fed. Cir. Dec.*, 156 F.4th at 1279 (citing *Markman* Ruling, 2018 WL 3773986, at *4). That outer circumference, the Court finds, must take in the entire outer edge of the ring—including both the bottom hemispherical portion, which is curved, and the top portion, which "encloses and reinforces an opening." *Id.* The outer circumference, so defined, is thus a continuous boundary that encompasses the inner circumference.

Focus's contrary proposal is at odds with the Circuit's rejection of its position that the "outer" circumference could begin and arbitrarily end at some portion of the outer edge. Focus

broached this position at argument: that the "outer circumference" of the accused ring reflects only the "curved perimeter edge." The Circuit, however, brushed it aside, writing: "Focus did not articulate any principled reason for carving up the accused ring's perimeter edge in that way." *Id*. at 1279 n.10.

Nor has Focus advanced a coherent such reason here. It argues that the "patent" does not treat the entire outer edge as an outer circumference and that such an edge would "normally" curve "inward." Ps' Opening Br. at 12. But a close reading of the claims of the '088 patent—which referenced "outer circumference" only insofar as the patent described "a flat upper edge, an inner circumference, and an outer circumference"—does not contain language to that effect. Nor is there a basis, as discussed below, to presume that the outer circumference must be restricted to those portions that are curved.

With the complete outer perimeter traced as Marquis advocates, the Court next takes up whether a non-circular shape (like a U-shape or a flat top) can permissibly form part of an "outer circumference." The relevant part of this Court's *Markman* Ruling, upheld on appeal, answers that question affirmatively. That ruling "decline[d] . . . to import a circularity restriction into the construction of 'outer circumference.'" *Markman* Ruling, 2018 WL 3773986, at *6. A circumference therefore may permissibly be U-shaped or D-shaped. Put differently, the flat top is not a "departure" from the circumference. It merely continues the circumference with a non-circular element. Focus declares in a one-sentence *ipse dixit* that the outer circumference "ends" where the ring stops turning in a circle, *e.g.*, curving inward. Ps' Opening Br. at 13. But as the Circuit noted, Focus's conception of the outer circumference is "especially problematic" in light of this Court's rejection of Focus's invitation to impose a "circularity restriction" as part of the construction of outer circumference. *Focus Fed. Cir. Dec.*, 156 F.4th at 1279 n.10.

Accordingly, as the Circuit pointedly observed, it is “far from clear” as to why any portion of the accused ring’s “U-shaped perimeter edge . . . is something other than the ring’s ‘outer circumference.’” *Id.*

Finally, as directed, the Court evaluates this outer circumference in light of the boundary defined in the Figure 21 benchmark. *See id.* at 1279.




Ex. C: Figures 18, 19, 20, 21, and 31B of the ’088 Patent.

As the Circuit noted, Figures 18–20 and 31B illustrate ring structures in which a projection “extension or finger” is “off of” the ring itself, whereas Figure 21 is directed to rings with “a flat upper edge” that “provide[] support over a length equal to approximately the outer diameter of the ring.” *Id.* at 1274. It found the prosecution history of the ’088 patent to confirm that “the patentee amended the claims to distinguish them from claims of the prior patents by including, among other things, a ring with a ‘flat upper edge,’ thereby showing that it understood that its prior patents did not encompass a ring having a ‘flat upper edge.’” *Id.* at 1276 (citation omitted). That the patentee did so, contemplating a flat upper edge as part of the “ring,” supports that the outer circumference included the flat upper portion.

This, too, favors Marquis's position as to the outer circumference. It treats the flat top as a "continuation of the ring's 'outer circumference,'" not, as Focus urges, an independent structural element. *Id*. at 1279. Analysis of the Figure 21 baseline supports finding that the entire exterior forms a single contiguous perimeter, constituting the outer circumference.

### 2. What, if Any, Projecting Edge Projects from the Outer Circumference?

The Court next identifies what, if any, "projecting edge" projects from, *i.e*., "off of," the outer circumference of the accused ring. This analysis, too, proceeds in three steps. First, the Court examines whether any element projects from the traced outer boundary. *Id*. at 1277. Second, it compares the accused product with the designs in Figures 18–21 and 31B, to identify the necessary features of a projecting edge. *Id*. at 1279. Finally, it addresses whether the slit edge, as identified by Focus, could constitute a distinctive structural member or whether, as Marquis argues, it is part of the outer circumference, on the ground that its removal would destroy the ring. *Id*. Each step of the analysis again favors Marquis's reading.

First: As to whether a "projecting edge" exists consistent with the construction of that claim, the Circuit upheld the Court's *Markman* construction as consistent with the specification, such that "projecting edge" was "an edge that projects from the outer circumference of the ring." *Id*. at 1277 (citing *Markman* Ruling, 2018 WL 3773986, at *10, 11). Under this construction, the projecting edge cannot be a segment of the perimeter, but must be an "edge" that projects "*off of*" or "*from*" the ring's outer circumference. *Id*. at 1277, 1279 (emphasis added). Accordingly, the construction requires: (1) a distinct element from the outer circumference of the ring, such as, for example, "a flange, extension, or finger," that (2) is directed *away* from the integrated boundary. *Id*. at 1277.

In gauging infringement, the Court's task is thus to assess whether the accused product contains a secondary element, projecting outward and away from the outer circumference as construed. No such element appears evident on the accused product:



Ex. D: Defendants' Design

*Id*. at 1278. To the extent Focus identifies any "edge," it is integrated into the continuous boundary—there is no separate element. Certainly, no separate element emanates from the outer perimeter the Court identified above, in Step 1. This Court declined to require that an edge "protrude" or "jut out," but the claim construction requires at least *some* form of projection rather than a complete integration with the ring. It does not permit the ring itself at once to be part of the boundary (forming part of the outer circumference) and also the projection from it. An edge that is coextensive with the outer circumference is not distinct from the ring. The absence of such a separate element here supports finding the absence of an edge that projects "off of" the ring's outer circumference. *Id*. at 1279.

Second: Figures 18–20 and 31B supply the benchmark for gauging a "projecting edge." *See id*. at 1277–79. The Circuit identified these four figures as "exemplary projecting edges," *id*. at 1277, and Figure 31B as a "clear example[] of such a projecting edge." *Id*. at 1279. These figures, again depicted below, are indeed revealing. Figure 18 achieves a projecting edge (elements 207 and 206) with two rounded angled extensions that point out and away from the ring (element 200); Figure 19 achieves a projecting edge (elements 217 and 216) through the

narrowed, pointed extension that also emerges off of the ring (element 210); Figure 20 analogously achieves a projecting edge with the two angled elements (elements 224a and 224b) that extend off the ring (element 220); and Figure 31B also features a distinct element which, next to the diagonal slit, appends a structural finger (element 408) shooting "off" the ring (element 400).




Ex. C: Figures 18, 19, 20, 21, and 31B of the '088 Patent.

Each of these figures, thus, is characterized by a distinct departure between the outer circumference of the ring and the "projecting edge." By contrast, there is no like projection in Marquis's accused product. It is bounded *entirely* by its continuous perimeter. To the extent any "projection" is identified, it is integrated within the ring itself. There is, in other words, no projecting edge in Marquis's product that projects from the outer circumference of the ring. The accused product lacks a necessary characteristic of the patented species. *See id.* at 1278–79.

Third: Marquis's absurdity argument, which the Circuit directed the Court to consider, reinforces this conclusion. *See id.* at 1279 (directing this Court to "address Marquis's argument that its construction produces nonsensical results, *i.e.*, if we remove the 'projecting edge'

allegedly found in Appellants' product, the ring would be destroyed"). Focus claims there is a "projection from the side edge." Reply at 7. But removal of the "projecting edge" identified by Focus would alter the ring structure. It would destroy the ring itself. The incision within the ring, identified by Focus, cannot constitute a "projecting edge." In contrast, in Figures 18–20 and 31B, the elements that project from a ring, if removed, would not affect the ring itself.

Analogously here, removing the flat top or slit corner—which Focus terms the "projecting edge"—from Marquis's Ezy Hang curtain would destroy the ring structure. To eliminate this "finger" component of the Ezy Hang product would obliterate the core structural boundary that "reinforces the opening." *See Focus Fed. Cir. Dec.*, 156 F.4th at 1279. That supports the conclusion that the slit element is integral to the ring (*i.e.*, part of the outer circumference and not a projection from it). And because the disputed element is structurally integral to the ring itself, it resembles a continuation of the outer circumference (Step 1), not a projecting edge (Step 2).

In sum, the Court holds, Marquis's accused product did not infringe the '088 patent.

**C. Willfulness**

The Court, finally, reassesses its findings of willful infringement.

Under *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 579 U.S. 93 (2016), an infringer's conduct outstrips the "typical infringement case" and is willful when it is "wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* at 103–04. A willfulness finding turns on the totality of the circumstances. It requires a showing that the infringer acted in disregard of the patent and lacked a reasonable basis to believe it had a right to engage in the infringing acts. *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1056 (Fed. Cir. 1994). A plaintiff must establish willful infringement by a preponderance of the evidence. *Adrea, LLC v. Barnes & Noble, Inc.*, 227 F. Supp. 3d 303, 312 (S.D.N.Y. 2017)

(citing *Halo Elecs.*, 579 U.S. at 107). Culpability is measured based on "the knowledge of the actor at the time of the challenged conduct." *Halo Elecs.*, 579 U.S. at 105–06 (citing W. Keeton, D. Dobbs, R. Keeton, & D. Owen, PROSSER AND KEETON ON THE LAW OF TORTS § 34 at 212 (5th ed. 1984) (describing willful, wanton, and reckless as "look[ing] to the actor's real or supposed state of mind")). There is no basis, when assessing willfulness, to "look to facts that the defendant neither knew nor had reason to know at the time he acted." *Id.* at 106.

The Federal Circuit has not set forth "hard and fast rules" regarding willfulness. *Electro Med. Sys., S.A.*, 34 F.3d at 1056; *see also Rolls–Royce Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101, 1109 (Fed. Cir. 1986); *Studiengesellschaft Kohle, M.B.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1573 (Fed. Cir. 1988) ("The consequences of a finding of willful infringement being serious, such a finding . . . is to be made only after due consideration of the totality of the circumstances."). That said, "no adverse inference that an opinion of counsel was or would have been unfavorable flows from an alleged infringer's failure to obtain or produce an exculpatory opinion of counsel." *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1341 (Fed. Cir. 2004) (en banc); *Halo Elecs.*, 579 U.S. at 108–09 (citing 35 U.S.C. § 298 for proposition that "[t]he failure of an infringer to obtain the advice of counsel" or "the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed").

In considering the totality of circumstances, district courts are afforded discretion "to be guided by [the] sound legal principles" developed over nearly two centuries of application and interpretation of the Patent Act. *Halo Elecs.*, 579 U.S. at 110 (citing *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 139 (2005) (internal quotation marks omitted)). Those principles limit the

award of enhanced damages on grounds of willfulness "to egregious cases of misconduct beyond typical infringement." *Id.*

### 1. Application to Marquis

The Circuit reversed this Court's finding of willfulness as to Marquis with respect to the '248 and '609 patents, which it found not infringed, and it vacated the finding of willfulness with respect to the '088 patent, as to which it remanded for a determination as to infringement. *Focus Fed. Cir. Dec.*, 156 F.4th at 1287–88. It directed that, were the Court on remand to find Marquis had infringed the '088 patent, it then determine whether Marquis did so willfully.

With the Court's having found that Marquis did not infringe the '088 patent, the issue of willfulness is moot. *See, e.g.*, *Eastman Kodak Co. v. Agfa-Gevaert N.V.*, 560 F. Supp. 2d 227, 301 (W.D.N.Y. 2008) ("There can be no willful infringement where there is no infringement."), *aff'd*, 351 F. App'x 441 (Fed. Cir. 2009) (summary order); *Ethicon, Inc. v. U.S. Surgical Corp.*, 762 F. Supp. 480, 505 (D. Conn. 1991), *aff'd*, 965 F.2d 1065 (Fed. Cir. 1992).

### 2. Application to Kartri

This Court found willful patent infringement by Kartri, whose bad faith it had found based on Kartri's continuing to sell the purportedly infringing products for more than three months after the Court's claim construction. *Focus Fed. Cir. Dec.*, 156 F.4th at 1287. The Circuit vacated that finding, holding that the Court had not adequately considered Kartri's consistent conduct during this litigation. *Id.* at 1287–88. It directed that, on remand, the Court determine whether Kartri's belief had been reasonable, now taking into account the Circuit's validation—on Marquis's appeal—of defendants' position that there had been no infringement of the '248 and '609 patents and the Circuit's vacatur of the '088 infringement ruling.

On remand, Kartri emphasizes the non-infringement findings as to Marquis. Opp'n at 23–24. Focus opposes, arguing that Kartri's overall conduct bespoke unreasonableness. Ps' Opening Br. at 22–27; Reply at 9–14.

The Court applies the principles above to gauge Kartri's knowledge at the time of the challenged conduct. Whether Kartri marketed its curtains "knowing or having reason to know of facts which would lead a reasonable man to realize" they were infringing, *Halo Elecs.*, 579 U.S. at 106, presents issues distinct to two different periods.

***The 2015 cease-and-desist letter***: On February 27, 2015, Focus sent a cease-and-desist letter to Kartri, asserting that it infringed the '248, '609, and '088 patents. Kartri's CEO Karen Goskowski testified that, after receiving this letter, she contacted Marquis's president, David Middleberg, and "turned it all over to my lawyer. . . . I turned everything over to them as this wasn't my patent and I wanted a better explanation." Trial Tr. at 649–51; *see also id*. at 684 (email after receiving cease-and-desist letter stating: "Need to send this to David and he needs to handle it because it's not our product directly. Hope he has a patent, which I wanted to see"); *id.* at 714 (Patricia Kubus, Kartri's sales director, testifying that Kartri "took [the cease-and-desist letter] seriously to read over and look it over. And then at that point, we made sure that we made David [Middleberg] aware of it. We sent it to him, and I believe we sent it to our lawyer, . . . and notified him of what we were given.").

Kartri's intent at that point was not willful. This Court, as the Circuit recognized, credited Kartri for its prompt outreach to counsel. *See Focus Fed. Cir. Dec.*, 156 F.4th at 1288 ("The district court even acknowledged that Kartri conferred with its counsel following receipt of the cease-and-desist letter."). And Kartri's Goskowski testified that, after conferring with Marquis, she continued to believe Kartri's products were non-infringing. Trial Tr. at 665

(Goskowski, testifying she had "relied" on Marquis's Middleberg's view that the products did not infringe); *Focus Fed. Cir. Dec.*, 156 F.4th at 1288 (Kartri "came away with the understanding that it was complying with the law" (internal quotation marks omitted)).[4] Kartri reasonably believed that the cancellation during the prosecution of Focus's '248 patent of all claims directed to curtains with flat-topped rings meant that Kartri's products, which had flat-topped rings, did not infringe.

***The 2018* Markman *Ruling***: The Court's *Markman* Ruling arguably changed the equation. Upon notice of it, defendants thereafter appreciated that their earlier view as to the limited preclusion from Focus's patents had been held in error. *See, e.g.*, Trial Tr. at 588 (Middleberg, testifying that he was "informed" there had been an infringement finding resulting from the *Markman* hearing); *id.* at 587–88 (noting that the *Markman* Ruling rejected Middleberg's understanding of the claim construction); *id.* at 787 (Kartri's Kubus testifying that Kartri had continued to sell the accused products after the start of the litigation believing "[t]hat we were not infringing").

After learning of the *Markman* Ruling in August 2018, however, Kartri did not place any further orders. Kubus testified that the last order was placed "in early 2018 and was shipped November 12th of '18, which I believe was on the 12th, but November of '18." Trial Tr. at 787 ("Once the *Markman* hearing came out, we stopped cold."); *id.* at 654 (Kartri stopped selling the

[4] Middleberg, a non-lawyer, testified that, until the Court's *Markman* Ruling, he understood the asserted patent "was like a whole pizza . . . and that the patent office had ruled that each slice of the pizza with its own toppings or whatever had to be patented itself," which Focus had not done. However, "[a]fter the *Markman* hearing, the judge said no, that's too restrictive and you can patent the whole pizza, and that was the way I understood it. I know that sounds silly, but it's the way I remember that it was, not just all forms of self-hanging hooks, it was each hook, our grommet, our D-shaped grommet was its own individual thing that had not been patented." Trial Tr. at 587–88.

product in 2018 because "when *Markman* came out, we were pretty much almost finished"). That conduct supports the inference that Kartri had a genuine belief beforehand that its action was defensible. It also distinguishes this case from cases finding willfulness, in which an infringer did not conform its conduct to new data indicative of infringement. *See, e.g.*, *Adrea*, 227 F. Supp. 3d at 312 (court's rejection of defendant's proposed claim construction did not affect defendant's ensuing conduct); *cf. Broadcom Corp. v. Qualcomm Inc.*, No. 05 Civ. 467, 2007 WL 2326838, at *3 (C.D. Cal. Aug. 10, 2007) (two years of infringement before lawsuit, and continued infringement thereafter, favored increased damages).

Considering the record as a whole, the Court now finds that Kartri's actions fell short of being "wanton, malicious, [or] bad-faith," *Halo Elecs.*, 579 U.S. at 103–04, as necessary to support willful patent infringement. Importantly, although the Court's *Markman* Ruling had construed the patents more broadly, the Circuit's eventual construction was materially narrower. Although Kartri did not anticipate the Circuit's particular methodology in so concluding, it broadly prefigured it, such that Kartri's assessment, unavoidably, presents as more reasonable than it had earlier. (Indeed, had Kartri not waived its challenge to the infringement judgments on appeal, the infringement judgments that enable the finding of willfulness, like those against Marquis, would have been void today.) The Court can no longer say that Kartri had "no reasonable basis" for believing it had a right to engage in the acts claimed to be infringement. *Electro Med. Sys., S.A.*, 34 F.3d at 1056; *see also Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1222 (Fed. Cir. 1995) (declining to find willfulness where defendant continued to manufacture "some" goods three years into litigation); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1581 (Fed. Cir. 1989) (declining to find willfulness where material fact remained

as to whether defendant "relied in good faith on the erroneous advice of counsel that their method was not infringing").

Focus raises two counterarguments. Neither alters this outcome.

First, it terms Kartri's reliance on Middleberg's views "reckless" because Kartri "knew" that Middleberg "was not a patent attorney." Ps' Opening Br. at 22 (citing Trial Tr. at 665). Indeed, Middleberg testified that he had told Kartri's owners he was "not qualified to discuss the legal aspects of patents." Trial Tr. at 595. Focus also faults Kartri for putting weight on Middleberg's opinions, "from 2013 on, and in 2015 after receiving [Focus's] cease-and-desist letter." Ps' Opening Br. at 22; Reply at 10–11. There remains force to these arguments. But, as *Halo* makes clear, the failure of an infringer to present evidence of advice of counsel to a court "may not be used to prove that the accused infringer willfully infringed." *Halo Elecs*., 579 U.S. at 108–09. The current record suggests that Kartri viewed the accused products as "not our product directly," and therefore contacted Middleberg, the chief executive of its supplier. Trial Tr. at 684 (quoting email sent by Goskowski on February 27, 2015). And again, with the benefit today of the Circuit's construction of the patent, Middleberg's bottom-line conclusion proved more prophetic on the issue of patent infringement than did Focus's cease-and-desist letter. There is, indeed, a degree of audacity to Focus's present bid for a willfulness enhancement on the patent claims given that, but for Kartri's appellate forfeiture, the infringement verdict against Kartri would not stand.

Second, Focus argues that defendants' decision to stop selling the accused product after the *Markman* Ruling is irrelevant because it has no bearing on Kartri's state of mind *at the time* it received the cease-and-desist letter. Reply at 11. Focus, however, blinks (1) that its letter has now been exposed as wrong insofar as it claimed patent infringement (set aside the issue of

waiver) and (2) the instructions from the Circuit not to "ignore[] Kartri's consistent conduct during this litigation"—including after the cease-and-desist letter. *Focus Fed. Cir. Dec.*, 156 F.4th at 1287. The Circuit noted, in Kartri's favor, its counsel's reliance on the prosecution histories, and its "reasonabl[e] belie[f]" that flat-topped rings did not infringe the Asserted Patents, as militating against a finding of willfulness. *Id.*

Viewing Kartri's conduct in totality, as required, the Court can no longer find the recklessness required to establish willful infringement. Kartri's abandonment of infringing conduct after the *Markman* hearing bears weight, and distinguishes it from infringers who persisted after findings of infringement. *See Viacom Int'l Inc. v. Fanzine Int'l, Inc.*, No. 98 Civ. 7448, 2001 WL 930248, at *4 (S.D.N.Y. Aug. 16, 2001) (where defendant had been sued at least twice in previous year, with one suit resulting in a default judgment, finding defendant's later "strikingly similar conduct" to suggest it "knew or should have known that its actions constituted infringement."); *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 287 (2d Cir. 1999) (finding copyright infringement willful where defendant "chose to ignore the injunction [issued by Texas district court and upheld by Fifth Circuit] and continued to use the MPO program" that had been found to be infringing).

**CONCLUSION**

For the foregoing reasons, the Court holds the following, as to the open issues on the patent infringement claims: (1) the judgments against Kartri for patent infringement stand; (2) Marquis did not infringe the '088 patent, let alone willfully; and (3) Kartri's infringements of the patents at issue were not willful.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: November 5, 2026
New York, New York